UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE,

               Plaintiff,

   -against-

NEW YORK UNIVERSITY,

               Defendant.

Case No.

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION BY ORDER TO SHOW CAUSE FOR A
<u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

**BARTON LLP**
James E. Heavey, Esq. (JH1551)
Laura-Michelle Horgan, Esq. (LR7799)
Michael C. Ward, Esq. (MW4565)
711 Third Avenue, 14th Floor
New York, New York 10017
(212) 687-6262
jheavey@bartonesq.com
lmhorgan@bartonesq.com
mward@bartonesq.com

*Attorneys for Plaintiff John Doe*

January 24, 2019

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................2

PRELIMINARY STATEMENT ........................................................................................3

STATEMENT OF FACTS ................................................................................................8

STATEMENT OF LAW ...................................................................................................25

ARGUMENT.....................................................................................................................27

    I.    IN THE ABSENCE OF A COURT ORDER, JOHN DOE WILL SUFFER
        IRREPARABLE HARM .......................................................................................28

    II.   THE BALANCE OF HARMS WEIGHS IN FAVOR OF INJUNCTIVE RELIEF ......31

    III.  JOHN DOE IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS...........31

        A.  The Complaint Alleges "Articulable Doubt" As to Outcome of NYU's Hearing..........32

        B.  The Complaint Alleges Substantially More Than a "Minimal Plausible Inference" of
            Gender Discrimination.................................................................................33

        C.  John Doe is Also Likely to Succeed on the Merits of His Additional Claims................37

    CONCLUSION..................................................................................................39

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                    **<u>Page(s)</u>**

*Arthur Guinness & Sons, PLC v. Sterling Pub. Co.*,
   732 F.2d 1095 (2d Cir. 1984)............................................................................................21

*Doe v. Colgate Univ.*,
   No. 17-3594-cv, 2019 WL 190515 (2d Cir. Jan. 15, 2019)......................................23, 29, 30, 35

*Doe v. Columbia Univ,*
   831 F.3d 46 (2d Cir. 2016)................................................................................. passim

*Doe v. Rensselaer Polytectnic Institute,*
   No. 1:18-CV-1374, 2019 WL 181280 (N.D.N.Y. Jan. 11, 2019).......................................23, 27

*Doe v. Syracuse,*
   341 F. Supp.3d 125 (N.D.N.Y. 2018) ....................................................................29, 32

*Donohue v. Baker,*
   976 F. Supp. 136 (N.D.N.Y. 1997) .........................................................................27

*KF ex rel. CF v. Monroe Woodbury Central School District,*
   2012 WL 1521060 (S.D.N.Y. Apr. 30, 2012)................................................................22

*Lilly v. Virginia,*
   527 U.S. 116  (1999).......................................................................................27

*Littlejohn v. City of New York,*
   795 F.3d 297 (2d Cir. 2015)...............................................................................29

*Local 1814 Int'l Longshoreman's Assoc. AFL–CIO v. New York Shipping Assoc. Inc.,*
   965 F.2d 1224 (2d Cir.1992)..............................................................................22

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792 (1973).......................................................................................29

*Plaza Health Laboratories, Inc. v. Perales,*
   878 F.2d 577 (2d Cir. 1980)...............................................................................22

*Prasad v. Cornell University*, Civ. Action No. 5:15-cv-322,
   2106 WL 3212079 (N.D.N.Y. Feb. 24, 2016) ...............................................................30

*Reuters Ltd. v. United Press Int'l, Inc.,*
   903 F.2d 904 (2d Cir.1990)................................................................................22

*Rolph v. Hobart and William Smith Colleges,*
   271 F. Supp. 3d 386 (W.D.N.Y. 2017) ........................................................30, 33, 34, 35

*Towers Fin. Corp. v. Dun & Bradstreet, Inc.,*
   803 F. Supp. 820 (S.D.N.Y. 1992)..........................................................................22

*Yusuf v. Vassar Coll.,*
   35 F.3d 709 (2d Cir. 2016).........................................................................23, 29, 30

**<u>Statutes</u>**

20 U.S.C. §§ 1681-88 .........................................................................................1

20 U.S.C. § 1681(a) .........................................................................................23

**<u>Rules</u>**

Fed. R. Civ. P. 65 (b)(1)(A)...............................................................................1, 24

Fed. R. Civ. P. 65(a) ......................................................................................21

Fed. R. Civ. P. 65(b)(1) ...................................................................................22

Plaintiff John Doe, through his undersigned counsel, respectfully submits this Memorandum of Law, together with his Declaration, sworn to on January 23, 2019 (the "John Doe Declaration"), and the exhibits thereto, and the Emergency Declaration of Michael C. Ward, Esq., sworn to on January 24, 2019 (the "Ward Declaration"), and the exhibits thereto, in support of his application for a temporary restraining order against defendant New York University ("NYU") pursuant to Fed. R. Civ. P. 65 (b)(1)(A) to enjoin NYU from holding a "Sexual Misconduct Hearing" that it has scheduled for Monday, January 28, 2019, or any other administrative or disciplinary process on any other date arising from or related to John Doe's alleged potential violation of NYU's "Sexual Misconduct, Relationship Violence, and Stalking Policy" (the "NYU Policy") until John Doe's claims of gender discrimination under Title IX of the Education Amendments of 1972 (20 U.S.C. §§ 1681-88 ("Title IX"), and claims under New York State law are adjudicated by this Court.

John Doe also seeks a preliminary injunction against NYU: (i) enjoining NYU from taking any action with respect to adjudicating any determination of John Doe's responsibility for an alleged violation of NYU's Sexual Misconduct, Relationship Violence, and Stalking Policy pending the ultimate resolution of this action; (ii) granting him discovery before any hearing by this Court; and (iii) such other and further relief as the Court may deem just and proper.[1]

For the reasons set forth below, we respectfully submit that the Court should enter the requested order or John Doe will suffer immediate, irreparable harm.

## **PRELIMINARY STATEMENT**

Plaintiff John Doe, through his undersigned counsel, respectfully submits this Memorandum of Law, together with his Declaration, sworn to on January 23, 2019, and the

---

[1]   A Proposed Order to Show Cause is annexed to the Ward Declaration as **Exhibit 1.**

exhibits thereto, and the Emergency Declaration of Michael C. Ward, Esq., sworn to on January 24, 2019, and the exhibits thereto, in support of his application for a temporary restraining order and preliminary injunction against defendant New York University ("NYU") pursuant to Fed. R. Civ. P. 65 (b)(1)(A) to enjoin NYU's Office of Student Conduct & Community Standards (the "OSC") from holding a "Sexual Misconduct Hearing" scheduled for January 28, 2019 because the hearing will violate John Doe's Title IX right to be free from gender discrimination as well as his constitutional due process rights.

This case arises out of a single incident that was alleged to have occurred on the night of March 17 into 18, 2017.  The complainant, Jane Roe, first reported the incident to the NYU OSC almost a year later, on February 21, 2018.  Ms. Roe alleged that Mr. Doe had sexual intercourse with her while she was incapable of giving consent due to alleged incapacity.  At the time, NYU was under severe pressure from its students and financial supporters to aggressively punish sexual misconduct by males on campus.  Among other things, on August 15 – 16, 2018, approximately two weeks before NYU held a "Sexual Assault Hearing" regarding Mr. Doe's alleged conduct, a female student and alleged rape victim issued a series of social media posts alleging NYU had failed her as a victim of sexual misconduct by declining to sanction two male students for alleged nonconsensual sex.  The post was distributed to at least 1000 people with other women commenting, *inter alia*, that "I hope these protests and riots make NYU see that what they're pulling is detrimental to the entire female student body."[2]  Also, immediately prior to NYU's further investigation of the Alleged Incident after an appeal, on October 20, 2018, *The New York*

---

[2]        Other comments included: (i)"Absolutely horrifying.  NYU is likely in for a year of protests, it's been brewing for ages.  Women at our school are fed up"; and (ii) "NYU does not protect its female students . . . NYU has failed me and countless other girls, teaching us that standing up for ourselves is a complete waste of our time." Copies of these posts are annexed to the Ward Declaration as **Exhibit 13.**

*Post* published an article with the headline "Hundreds of sex misconduct incidents reported at Cornell, NYU" and reporting that 100 sexual misconduct complaints were made in the first five months of 2018 and quoted an NYU spokeswoman as stating that "our students feel more comfortable coming forward to file these kind of reports."[3]

As a result, NYU's Title IX Investigators conducted a fundamentally biased and flawed investigation with the intended result of issuing a report that concluded that there was sufficient evidence of misconduct by Mr. Doe in order to proceed with a "Sexual Misconduct Hearing" with the intended outcome of finding Mr. Doe, a male student, guilty of an alleged sexual assault on Ms. Roe, a female student.  Not surprisingly, the Hearing conducted by an NYU Adjudicator on August 22, 2018, at a time of immense public and internal pressure on the University to punish male sexual aggressors, indeed resulted in a finding that John Doe violated NYU's school policy by engaging in sexual intercourse with Ms. Roe while she was "incapacitated." Based on his finding, the Adjudicator imposed severe sanctions: John Doe was suspended for two and a half years, declared a *persona non grata*, and had a notation placed on his transcript that he violated NYU's Code of Conduct.

John Doe appealed, and the Adjudicator's decision was rejected by an Appeal Panel on multiple grounds.  First, the Panel found that there was not sufficient evidence that Jane Roe was "incapacitated" as defined by NYU policy.  Second, the Panel found that NYU Investigators failed to identify and interview key witnesses.  Third, the Panel determined that exculpatory evidence supporting that Jane Roe was not incapacitated was simply ignored by the Adjudicator.  Plainly, the OSC and NYU Investigators' decisions to accept an unsupported accusatory version of the alleged incident from Jane Roe and to not interview key witnesses who likely (and in fact, when

---

[3]    https://nypost.com/2018/10/20/hundreds-of-sex-misconduct-incidents-reported-at-cornell-nyu/.

later interviewed, did) have contradictory evidence demonstrates that they were motivated by bias against male students in discharging their responsibilities to fairly investigate and adjudicate the allegation against Mr. Doe.  Based upon its findings, the Appeal Panel sent the matter back to the OSC for "further investigation" and "further proceedings."

After the appeal, the NYU Investigators interviewed no less than seven new witnesses and issued a new investigation summary report in which it concluded, like its first report, that sexual misconduct had occurred despite evidence to the contrary. Incredibly, NYU reached this result even though the additional evidence collected by the NYU Investigators flatly contradicted Ms. Roe's version of events and precluded any possible finding of incapacitation.  Of the seven witness statements, three specifically support Mr. Doe's position (K.S., C.G., S.S.) and three claim to have no knowledge of the issues involved (N.W., R.A., A.M.).  The remaining witness, W.C. was unable to offer factual corroboration that Ms. Roe was incapacitated although he did offer that as his opinion that she was "intoxicated."  He also admitted that Ms. Doe contacted him during the investigation in March 2018 to remind him that he "saw me that night and how intoxicated I was" and that she would like him to be a witness in the disciplinary proceeded.

On January 2, 2019, in the face of even more exculpatory evidence, the OSC notified John Doe that it conducted this "further investigation" and that, yet again, they believed that there was sufficient evidence of misconduct to be considered by an Adjudicator as to whether Mr. Doe violated NYU policy and a second hearing will be held on January 28, 2019.  However, in violation of NYU's own Procedure and the Appeal Panel's Decision, and Mr. Doe's due process rights, NYU referred the matter to an "external adjudicator" for a "*de novo* determination" of the alleged violation by John Doe.  NYU is plainly not satisfied that its goal of punishing Mr. Doe was rejected on appeal and it now improperly is seeking to have a "do over" by referring the matter to a fellow

"College and University Title IX" adjudicator and former sex crimes prosecutor, Hon. Jane Cutler Greenspan. Not only is this a violation of the Policy, as detailed more fully below, but it continues to demonstrate NYU's bias and intention to do all that it can to ensure that Mr. Doe is found guilty. Although NYU claims that Hon. Greenspan, despite her professional background, is "neutral," it has done nothing to establish that she has no prior history with the University or has any conflict of interest that would call into question her ability to conduct the hearing fairly and impartially. Indeed, NYU has refused to disclose any information to John Doe, including any potential conflicts of interest that may exist, regarding its sudden appointment of Ms. Greenspan despite requests from John Doe's counsel.[4]

Unquestionably, John Doe faces the imminent harm of a fundamentally unfair, gender biased, and prejudicial hearing in just a matter of days on January 28, 2019 that violates his due process rights, his rights under Title IX, and which is being conducted in violation of NYU's own Procedure for alleged sexual misconduct. The hearing has been set up to achieve the result of affirming NYU's OSC's determination that he is guilty of sexual misconduct and to impose all of the sanctions that the school previously deemed fit as a result of that adverse finding to scapegoat him for NYU's prior shortcomings in addressing allegations of sexual abuse. The gap in his educational transcripts will require John Doe to explain his wrongful suspension for sexual misconduct when applying to any other undergraduate institution, for graduate school or future employment, creating a permanent impediment to his ability to obtain admission to school, obtain

---

[4]     Surely NYU is also aware of pending legislation that would dramatically alter the conduct of Title IX proceedings in a fashion that is intended to provide more balance and protection to the accused in these circumstances. *See* https://www.nytimes.com/2018/11/16/us/politics/betsy-devos-title-ix.html (*stating* "Education Secretary Betsy DeVos unveiled a highly anticipated overhaul on Friday of the rules governing campus sexual assault, reducing the liability of colleges and universities for investigating sexual misconduct claims and bolstering the due process rights of defendants, including the right to cross-examine their accusers . . . The regulations will now face a 60-day public comment period before they are final.")   The comment period for the new guidelines will expire in a matter of days, on January 28, 2019, and it is anticipated that the guidelines will be finalized shortly thereafter.

future employment and his reputation more generally.  Even if John Doe were able to transfer to another university, he will not have the benefit of having a degree from NYU and its prestigious Tisch School of the Arts in his desired area of employment, film.  Moreover, as a result of this ongoing arbitrary and biased process conducted in violation of his constitutional rights, Mr. Doe is suffering ongoing, severe emotional distress and his academic performance is, and will continue to, suffer.  Doe Decl., ¶¶ 15-17.  Mr. Doe should not be forced to endure the stress of a re-trial conducted by a former sex crimes prosecutor at NYU's latest whim at the start of a new school semester.

Accordingly, for the reasons set forth herein, John Doe respectfully requests that this Court issue a temporary restraining order to stop the scheduled "Sexual Misconduct Hearing" from occurring on January 28, 2019 as scheduled and a preliminary injunction against NYU enjoining it from, *inter alia*, making any determination of John Doe's guilt until his claims before this Court are adjudicated.

## STATEMENT OF FACTS

### A.  *The Alleged Incident*

John Doe and Jane Roe met during the fall semester of the freshman year of college while residing on the same floor of their dormitory.[5]  Thereafter, they would talk and message one another and occasionally hang out.  *Id.*, pp. 2, 5-6.  The Alleged Incident occurred during the night of March 17 - 18, 2017.  *Id.*  On March 17, 2017, Ms. Roe, who is an acting student at the Tisch School of Arts at NYU, participated in making a short film.  *Id.*, p. 2.  After filming, at around 9:00PM, Ms. Roe says that she and other Tisch students and her friend from out of town, E.G.,

---

[5]      Investigation Summary Report issued by NYU Title IX Investigators on June 11, 2018, hereinafter the "First Investigation Summary Report," p. 2.  A copy of the First Investigation Summary Report, with all names and identifying facts redacted is annexed as **Exhibit 4** to the Ward Declaration.

went back to the room of a fellow student, R.A., for a party. *Id.*, pp. 2-3.[6] By her own account, Jane Roe was "upset about something" and was drinking at the party. *Id.*, p. 3. Further investigation revealed that Ms. Roe expressed feelings of rejection by N.W., who was at the party with another girl, C.G. Ms. Roe sent a text message to her friend, W.C., on or after 11:32PM from the party stating that she "'*felt fat and not pretty*' and that she was '*ok, but wanted to kiss someone right now.*'" *See* November 27, 2018 Investigation Summary Report, a copy of which is annexed to the Ward Decl. as **Exhibit 11**.

According to Ms. Roe, she left the party and walked to meet her friend, W.C., in the courtyard of the dorm. *Id.* She then went back to W.C.'s dorm room, spoke with him for about 40 minutes about another girl, and then went back to the party. *Id.* Ms. Roe claims that she was escorted home from the party by R.A. and her girlfriend, E.G. *Id.* At 10:44PM, Ms. Roe sent a text to Mr. Doe via the Facebook Messenger application stating "*Hey!*"[7] Ms. Roe's friend, E.G., said Ms. Roe previously told E.G. that she thought John Doe was "cute" and "expressed an interest in him" which E.G. "'inferred to be romantic in nature.'" *See* First Investigation Supp. Rpt., p. 3.

According to Mr. Doe, he and his friend, W.M., encountered Ms. Roe in the dorm elevator upon returning from a bar and then an off-campus apartment at some point that night. First Investigation Summary Rpt., p. 6. This is the first time Mr. Doe encountered Ms. Roe on the night of the Alleged Incident since he had been at a bar and then a friend's apartment off-campus. *Id.*

---

[6]       E.G. is a first year student studying criminology in Australia. She attended high school with Jane Roe in Colorado and was visiting her at NYU on the day of the Alleged Incident. E.G. told investigators that she and Ms. Roe "became 'really close'" during their senior year of high school to the extent that Ms. Roe became "'another member of [her] family." *See* Investigation Supplemental Report, dated July 24, 2018, hereinafter the "First Investigation Supplemental Report, " p. 3. A copy of the July 24, 2018 First Investigation Supplemental Report is annexed to the Ward Declaration as **Exhibit 5**.

[7]       *See* Text Message Conversation submitted by Jane Doe and annexed to the First Investigation Summary Report at Ex. 4 to Ward Decl.

Mr. Doe says that he conversed with Ms. Roe in the presence of his friend W.M. and by his observation she was "'normal, fully conscious, and able'" and that there "'nothing unusual about how she was speaking," such as slurring and she was walking unassisted and without stumbling. *Id.* Ms. Roe and Mr. Doe mutually expressed the desire to "hangout sometime" and then parted ways. *Id.* Ms. Roe's friend, E.G., recorded three videos of Ms. Roe in which she is seen joking around and eating in her dorm room. *Id.* p. 2.[8]

At 2:37AM, Mr. Doe responded to Ms. Roe's message from earlier that night and said "*Hey*" with a smiling emoji.[9] The ensuing back and forth text messages between John Doe and Jane Roe were coherent and properly punctuated.[10] After this initial exchange, Mr. Doe texted: "*Wanna go to the study room*" and Ms. Roe stated: "*Haha sure.*" *Id.* Critically, Ms. Roe described her level of intoxication at the time to Mr. Doe by texting: "*I'm drunkish.*" *Id.* Ms. Roe then left her room to meet Mr. Doe in the study room. First Investigation Rpt., p. 4. Ms. Roe's friend, E.G., was present in Ms. Roe's dorm room at the time she left to go meet John Doe. *Id.*

According to Ms. Roe, after she met Mr. Doe in the study room, they made out and she voluntarily kneeled down to perform oral sex on him. *Id.* She then claims that Mr. Doe "indicated that he wanted to engage in sexual intercourse" and used "'coercive'" language to encourage her and she specifically recalled that he said "*come on*" and "*it's fine, no one will come in the study room.*" *Id.* Ms. Roe confirmed that John Doe did not "threaten her or physically force her to

---

[8]    Ms. Roe submitted these videos to the Title IX investigators after receiving an initial report from them as evidence "to show how drunk I was." *See* First Investigation Summary Rpt. at Ex. 5 to Ward Decl., Complainant Response. The videos are undated and there are no time stamps.

[9]    *See* Text Message Conversation submitted by Jane Doe and annexed to the First Investigation Summary Report at Ex. 4 to Ward Decl.

[10]    For example, when Mr. Doe asked what she was doing, Ms. Roe said "*Just sitting in my room.*" *Id.* Then, when Mr. Doe asks her how her night was she says "*It was so good! Yours?*" *Id.* In response to Mr. Doe stating that there was some drama between his friends, Ms. Roe said "*Ohhhh shit I hate drama. What kind of drama?*" *Id.*

engage in intercourse." *Id.* Ms. Roe also recalled that Mr. Doe asked during intercourse if she was on birth control and she said "*yes, but [she] told him not to come inside [her].*" *Id.* She also recalled rearranging her clothes and leaving the study room. *Id.* Therefore, although Jane Roe claims to have "blacked out" and "come to" during intercourse (*id.*), by her own account, she recalls specific conversations and events (including voluntary sexual activity) before, during, and after having intercourse with Mr. Doe, thus indicating that she was not in any state even close to incapacitation.

According to Mr. Doe, when he got to the study room, he and Ms. Roe kissed for approximately five to ten minutes. *Id.*, p. 6. Ms. Roe then moved her hand to his groin and he moved his hand to her breasts. *Id.* He then moved his hand under her skirt and Ms. Roe consented to digital penetration. *Id.* She also consented to perform oral sex on Mr. Doe. *Id.* Mr. Doe then asked Ms. Roe if she wanted to engage in intercourse and if she wanted to go to her room, his room, or stay in the study hall. *Id.* Mr. Doe said that Ms. Roe responded that he should "*just fuck me here.*'" *Id.* Mr. Doe said that they engaged in intercourse for five to six minutes. *Id.* According to Mr. Doe, Ms. Roe was not drunk at the time of the Alleged Incident; he did not smell or taste alcohol on her. *Id.*[11] After the encounter, Mr. Doe said he and Ms. Roe left the study hall room and went to their separate rooms. *Id.* Mr. Doe said Ms. Roe again walked without the need for assistance and without stumbling or giving any other indication that she was overly intoxicated, much less incapacitated. *Id.* Several days later, on March 27, 2018, Mr. Doe contacted Ms. Roe to ask if she was upset by the encounter in the study room.[12] Ms. Roe responded and said she felt

---

[11]     It is undisputed that Mr. Doe was not present when Ms. Roe allegedly consumed alcohol earlier in the evening and he did not consume any alcohol or drugs with her. *Id.*

[12]     *See* Text Message Conversation submitted by Jane Doe and annexed to the First Investigation Summary Report at Ex. 4 to Ward Decl.

like Mr. Doe had taken advantage of her. *Id.* Mr. Doe was shocked to receive such a message because her statements and, by text message, told Ms. Roe that he "had the impression that it was consensual" but nonetheless apologized that she was perceiving her feelings that way, understanding that she may have been embarrassed, as was he, that they had engaged in prolonged sexual activity in a very public space in their dorm.[13]

### B. NYU's Sexual Misconduct, Relationship, Violence, and Stalking Policy (heretofore defined as the "NYU Policy")

The NYU Policy in effect at the time of the alleged incident was issued by NYU's Deputy Chief of Staff, the Office of the President, and Senior Vice President for Student Affairs and went into effect on April 19, 2018.[14] The "Responsible Officers" for the NYU Policy are the Director of the Office of Student Conduct and Community Standards and NYU's Title IX Coordinator. *Id.,* p. 1.[15] The NYU Policy defines "Non-Consensual Intercourse" as "having or attempting to have sexual intercourse with another individual (i) by force, threat of force, or coercive conduct; (ii) without affirmative consent; or (iii) where that individual is incapacitated." *Id.,* Sec. VII (B)(1). "Affirmative consent" is defined as "a knowing, voluntary, and mutual decision among all participants to engage in sexual activity . . . can be given by words or actions, as long as those words or actions create clear permission regarding willingness to engage in sexual activity." *Id.,* Sec. VIII(A). By the Policy, "[i]n evaluating whether affirmative consent was given, consideration will be given to the totality of circumstances, including but not limited to the extent to which a Complainant affirmatively gives words or actions indicating a willingness to engage in sexual

---

[13]    *See* Text Message Conversation submitted by Jane Doe and annexed to the First Investigation Summary Report at Ex. 4 to Ward Decl.

[14]    A copy of the NYU Policy is annexed to the Ward Declaration as **Exhibit 6**.

[15]    The NYU Office of Student Conduct is herein referred to as the "OSC."

activity; whether a reasonable person in the Respondent's position would have understood such person's words and acts as an expression of consent; and whether there are any circumstances, known or reasonably apparent to the Respondent, demonstrating an incapacity to consent." *Id.*

Additionally, the NYU Policy defines "incapacitation" in relevant part as follows:

An individual who is incapacitated lacks the ability to knowingly choose to participate in sexual activity or make informed, rational judgments and thus cannot consent to sexual activity. ***Incapacitation is defined as the inability, temporarily or permanently, to give consent because an individual is mentally and/or physically helpless, being involuntarily restrained, asleep, unconscious, or unaware that sexual activity is occurring.*** Mentally helpless means a person is rendered temporarily incapable of appraising or controlling one's own conduct. Physically helpless means a person is physically unable to communicate unwillingness to an act.

***Where alcohol or other drugs are involved, incapacitation is a state beyond drunkenness or intoxication.*** The impact of alcohol and other drugs varies from person to person; however, warning signs that a person may be approaching incapacitation may include slurred or incomprehensible speech, vomiting, unsteady gait, combativeness, or emotional volatility. Evaluating incapacitation also requires an assessment of whether a Respondent knew or should have been aware of the Complainant's incapacitation based on objectively and reasonably apparent indications of impairment when viewed from the perspective of a sober, reasonable person in Respondent's position . . .

*Id.* at Sec. VIII (C). (Emphasis added.)

In order to enforce the NYU Policy, NYU instituted policies and procedures called the "Reporting, Investigating, and Resolving Sexual Misconduct, Relationship Violence, and Stalking Complaints Against Students," hereinafter referred to as "NYU Procedure."[16] Among other things, NYU Procedure provides that "[t]he Investigation typically will be completed within ***thirty-five days*** from initiation of the Investigation," (*id.,* Sec. III(I)), and that "[t]ypically a hearing will be held within ***sixty days*** of the initiation of the Investigation." *Id.,* Sec IV(B)(1).[17] Moreover, NYU

---

[16]   A copy of the NYU Procedure in effect at the time of the Alleged Incident is annexed to the Ward Declaration as **Exhibit 7.**

[17]   Emphasis added.

Procedure provides that the "Selection of Adjudicator," including a decision to refer the matter to an "external adjudicator," should be done "*pre-hearing*." *Id.*, Sec. IV(A). The reasons stated in the NYU procedure for appointment of an external adjudicator include the presence of a conflict of interest, when the Complainant is not a member of the NYU community, or when a matter presents complex evidentiary issues. *Id.* at Sec. IV(A)(2).

### C. The "First NYU Investigation"

According to one of the NYU Investigators, Jane Roe first lodged a complaint with NYU's Title IX office nearly one year after the alleged incident, on or about February 21, 2018. Ward Decl., ¶ 18.[18] The initial investigation of Ms. Roe's Complaint was conducted by two Title IX investigators at NYU, Jacqueline Cornell ("Cornell") and Samuel Hodge ("Hodge"), as well as Daisy Tomaselli ("Tomaselli"), an assistant Title IX investigator (collectively the "NYU Investigators").[19] Although it is NYU's practice to complete an investigation in 35 days (*see supra*, Sec. B), the First NYU Investigation was not concluded until 111 days later, on June 11, 2018. *Id.,* p. 1.

The NYU Investigators conducted a single interview of Ms. Roe on March 19, 2018, which was one full year and one day after the alleged incident occurred. *Id.* As summarized above, by her own account to the Title IX investigators, Ms. Roe recalled voluntarily consenting to perform oral sex immediately prior to sexual intercourse. *See supa*, Sec. A. She also recalled a specific conversation with Mr. Doe as they were engaging in intercourse about birth control. *Id.* She also recalled events immediately following intercourse. *Id.* Plainly, by any objective view of her own

---

[18]    By Ms. Roe's account, in the intervening time between the Alleged Incident and her reporting of it, she developed a new group of friends and was empowered to come forward with her allegation. Ward Decl., ¶ 23.

[19]    A copy of the Investigation Summary Report for the First NYU Investigation, dated June 11, 2018, is annexed to the Ward Declaration as **Exhibit 4.**

testimony, Jane Doe was not "incapacitated" as that term is defined by the NYU Policy to mean "***involuntarily restrained, asleep, unconscious, or unaware that sexual activity is occurring***." NYU Policy, Sec. VIII (C). (Emphasis added.)  Moreover, in a series of coherent text messages between Ms. Roe and Mr. Doe immediately before the Alleged Incident, she confirmed to him that she was "drunkish."[20]  Thus, by her own contemporaneous assessment, she was clearly not in "***a state beyond drunkenness or intoxication***" which would constitute "incapacitation" as defined by the NYU Policy when drugs and alcohol are involved. NYU Policy, Sec. VIII (C). (Emphasis added.)   There is no evidence whatsoever that Ms. Roe ever exhibited any of the "warning signs that a person may be approaching incapacitation" in the presence of John Doe such as "slurred or incomprehensible speech, vomiting, unsteady gait, combativeness, or emotional volatility." NYU Policy at Ex. C to Ward Decl., Sec. VIII (C).

Nonetheless, on March 22, 2018, Mr. Doe received an email from NYU's Title IX Coordinator asking him to meet to discuss "allegations that [he] may have engaged in prohibited misconduct in violation" of the NYU Policy.  In violation of Title IX, and its own NYU Procedure, NYU's March 22nd notice to Mr. Doe did not provide any details about the alleged misconduct such as the "location and factual allegations concerning the violation," or cite the section of the Policy that Mr. Doe allegedly violated. *See* NYU Procedure at Ex. D to Ward Decl., Sec. IV(A)(3). Contrary to current Title IX guidance, Mr. Doe was not provided sufficient details of the Alleged Incident or given sufficient time to prepare for his initial interview on April 13, 2018 by the NYU Investigators.  He was interviewed again on May 3, 2018.  *See* Investigation Summary Report at Ex. E to Ward Decl., p. 1.  The NYU Investigators also reviewed the text messages and videos submitted by Ms. Roe as well as written responses from Ms. Roe and Mr. Doe to an initial draft

---

[20]     *See* Text Message Conversation submitted by Jane Doe and annexed to the First Investigation Summary Report at Ex. 4 to Ward Decl.

of their report. *Id.,* p. 2. On the face of their report, the NYU Investigators either deliberately or unreasonably failed to speak with multiple crucial witnesses to Ms. Roe's alleged level of intoxication and ignored evidence that contradicted her allegation of sexual misconduct.

**First**, the NYU Investigators did not interview W.C., a male student in the same dorm who Ms. Roe said she messaged, went back to his room, and spoke with for at least 40 minutes shortly before the Alleged Incident. Incredibly, NYU deliberately chose not to interview W.C. because they believed he would not have relevant information or his statements would be duplicative of the testimony of Ms. Roe's out-of-town girlfriend, E.G. Ward Decl., ¶ 19. **Second**, the NYU Investigators failed to interview at least four individuals identified by Jane Doe who were present at R.A.'s party and could have potentially witnessed her drinking and/or her condition, N.W., A.M., S.S., and C.G. **Third**, NYU Investigators failed to interview Ms. Roe's suitemate, K.S., who was home and sober when Ms. Roe returned from partying that night.

In addition to failing to interview key witnesses, the NYU Investigators committed numerous other material procedural errors in the First Investigation including failing to obtain and review surveillance tapes from the dorm that night which would have affirmatively shown Ms. Roe's condition and failing to follow up on the "test study" that Ms. Roe was engaged in for the medication Lexapro which is prescribed for anxiety and depression and how those facts could have impacted her impressions and recollection of events. Ward Decl., ¶ 22. Based upon this extremely limited and inherently flawed "investigation" of events, the NYU Investigators, "in consultation with other University administrators," determined that there was sufficient evidence to hold a Sexual Misconduct Hearing to determine whether Mr. Doe violated NYU's Policy. *Id.* pp. 8-9.

At the time it reached this decision, however, NYU itself plainly was aware of the lack of evidence of any misconduct by John Doe. On June 13, 2018 -- the day after the Title IX

16

investigators concluded their report on June 12, 2018 -- the Director of the OSC, Craig Jolley ("Jolley"), asked the Title IX investigators to interview three additional witnesses: (i) R.A. (the student that had a party on the night of the alleged incident and whom Ms. Roe alleges had to help her home because she was so drunk); (ii) W.M. (who was visiting Mr. Doe that night and present when they saw Ms. Roe in the elevator); and (iii) E.G. (Ms. Roe's high school friend who was visiting from out of town).[21] These witnesses provided absolutely no evidence of misconduct. Indeed, R.A. refused to be interviewed and W.M. said he saw Ms. Roe in the elevator and she was not incapacitated. *Id.*, pp. 1, 5-6.

Significantly, when investigators spoke to Ms. Roe's friend, E.G., she ***contradicted*** Ms. Roe's claim of an alleged sexual assault. While Ms. Roe claims that R.A. and E.G. had to assist Jane Doe back to her dorm room from R.A.'s party because she was intoxicated, E.G. said this did not happen.[22] According to E.G., Ms. Roe left her at R.A.'s party and they met up later in Ms. Roe's dorm room. *Id.*, pp. 3-4. Also, E.G. said that although she took the videos submitted by Ms. Roe, she believed Ms. Roe was exaggerating her level of intoxication for the camera to make E.G. laugh. *Id.* Furthermore, E.G. said Ms. Roe did not make any statements indicating that Ms. Roe was in "***a state beyond drunkenness or intoxication.***" NYU Policy at Ex. 6 to Ward Decl., Sec. VIII (C). (Emphasis added.) To the contrary, E.G. said Ms. Roe clearly told E.G. that "she was leaving to go meet up with 'the boy'" and left the dorm room of her own free will. *Id.*, p. 4. E.G.'s testimony which is contrary to any finding of incapacitation was simply disregarded by the Adjudicator.

---

[21]   *See* First Investigation Supp. Rpt. at Ex. 5 of Ward Dec., p. 1.

[22]   R.A. was later interviewed and also has no recollection of this. *See infra* p. 22.

In sum, despite a complete lack of evidence, and new evidence disproving Ms. Roe's allegations obtained at Jolley's direction, NYU nonetheless determined for a second time that there was sufficient evidence to proceed to a Sexual Misconduct Hearing. *See* First Investigation Supp. Rpt. at Ex. B of Ward Dec., p. 1. Once again, by failing to fully investigation the Alleged Incident and to consider the evidence neutrally to both students, NYU violated John Doe's due process rights and Title IX rights by proceeding to a "Sexual Misconduct Hearing" without sufficient evidence.

### D. The "Sexual Misconduct Hearing"

NYU conducted a "Sexual Misconduct Hearing" (the "Hearing") on August 22, 2018, a full year and five months after the Alleged Incident.[23] The Director of NYU's OSC, Jolley (who had participated in the investigation), was designated the "Adjudicator" for the Hearing and he was represented by Jeffrey Metzler, Esq., ("Metzler") an attorney from the NYU Office of General Counsel. *Id.*, p.1. Mr. Doe and Ms. Roe were present. Shortly before the Hearing, NYU notified Mr. Doe that he would be only permitted one person to attend the hearing on his behalf, which was his attorney, Mr. Ward. Ward Decl., ¶ 11. The Hearing was also attended by one of the Title IX investigators, Hodge. *Id.* Also present from NYU were Assistant Directors of the OSC, Colleen Maeder ("Maeder") and Mathew Shepard ("Shepard"). *Id.* No witnesses to the alleged incident attended the Hearing in person. Ward Decl., ¶ 12. However, Ms. Roe's out-of-town friend, E.G., and Mr. Doe's friend, W.M., appeared by Skype. *Id.*

At the Hearing, Hodge provided a summary of the investigation conducted by his office. Ward Decl., ¶¶ 18-20. Thereafter, Jane Doe, as the Complainant, provided her account of the

---

[23]    Ward Decl., ¶ 11, annexing a copy of the NYU Summary and Decision of Sexual Misconduct Hearing, dated August 22, 2018, with all names and identifying facts redacted, hereinafter the "NYU Decision," as **Exhibit 8.**

Alleged Incident and was questioned by the Adjudicator. *Id.*, 21. Mr. Doe's attorney, Mr. Ward, was not permitted to question the Complainant. *Id.*, ¶¶ 22-23. Instead, he was directed to provide written questions to the Adjudicator for consideration. *Id.* Despite the many inaccurate statements and blatant inconsistencies in the Complainant's account of events, the Adjudicator chose to ignore several key questions submitted to him by Mr. Ward on Mr. Doe's behalf. *Id.*

John Doe then gave his account of the Alleged Incident and answered questions from the Adjudicator. W.M., testifying by Skype, said that when he and Mr. Doe encountered Ms. Roe in the elevator around 2:00AM, she was exhibiting no signs of overt intoxication. *Id.*, ¶ 26. Ms. Roe's friend, E.G., also testifying by Skype, said Ms. Roe did not display any level of behavior that would have prompted E.G. to be concerned for her when she left the dorm room. *Id.*, ¶ 25. Also, although E.G. testified that the videos submitted by Ms. Roe were taken on the night of the Alleged Incident, she said that she believed Ms. Roe had exaggerated her level of intoxication and E.G. thought it was a joke and that Ms. Roe was trying to make her laugh. *Id.* Indeed, this is plain on the face of the videos. *Id.*

The standard that should have been applied by the Adjudicator was whether a violation of the NYU Policy in effect at the time of the alleged incident was violated by a preponderance of the evidence. Despite clear, affirmative evidence to the contrary, the Adjudicator found that "[c]onsidering the totality of these circumstances, I find that a preponderance of the evidence supports that the Complainant was in ***a condition of incapacitation*** on the night of March 17, 2017, that a reasonable sober person in the position of the Respondent should have recognized this condition, and that the Respondent nonetheless engaged in sexual intercourse with the Complainant. NYU Decision at p. 5. (Emphasis added.) Based upon the Adjudicator's decision, NYU imposed the following sanctions on Mr. Doe: (i) a suspension for five semesters; (ii) a

declaration that Mr. Doe would be a *persona non grata* at NYU during the term of his suspension; (iii) a notation placed on his academic transcript that he was suspended after a finding of responsibility for a code of conduct violation that would remain on his transcript for no less than one year after the conclusion of Mr. Doe's suspension after which he would have to apply to NYU for removal of the notation, (iv) submit to a reenrollment process as a condition for returning to NYU; and (v) have no contact with Ms. Roe (either directly or by third parties) during the remainder of his enrollment at NYU. *See* Aug. 27, 2918 Decision Imposing Sanctions, a copy of which is annexed to the Ward Declaration as **Exhibit 8.**

Plainly, the First Investigation, the Supplemental Investigation, the Sexual Misconduct Hearing, and the Adjudicator's Decision against Mr. Doe were motivated by gender bias with the intended result of finding John Doe in violation of NYU Policy against sexual misconduct whether or not this outcome was supported by an objective view of the totality of evidence. Thus, NYU violated Mr. Doe's due process and Title IX rights. The gender bias against Mr. Doe is abundantly clear from enormous pressure on the University at the time to punish male sexual aggressors. Indeed, at the time of the Hearing, NYU continued to follow then-withdrawn guidance issued by the United States Education Department's Office of Civil Rights ("OCR"). *See* Compl., ¶ 38. Specifically, on April 11, 2011, OCR issued a "Dear Colleague" letter to colleges and universities, which required schools to adopt a relatively low burden of proof – "more likely than not" – in cases involving sexual misconduct, including assault. *Id.* The Dear Colleague Letter further stated that schools should "minimize the burden on the complainant," transferring alleged perpetrators, if necessary, away from shared courses or housing. *Id.* The Dear Colleague Letter, while not completely ignoring due process concerns, suggested that school should focus more on victim advocacy. *Id.* The Dear Colleague Letter also stated that schools should give both parties

the right to appeal a decision, which amounts to double jeopardy for an accused student. *Id.* As described by NPR, that Dear Colleague Letter was a "first warning shot" at colleges and universities to step up increased enforcement of Title IX. *Id.* As discussed below, this Dear Colleague Letter was withdrawn in September 2017, yet NYU prosecuted John Doe in 2018 in accordance with its glaring bias against male students accused of sexual misconduct. *Id.*

Furthermore, statements made by the Adjudicator in his Decision are a clear manifestation of the gender bias against Mr. Doe. Jolley states that "[w]hile I understand that the Respondent subjectively feels that he engaged in no wrongdoing, I will note that my determination of sanctions has also considered his apparent failure to recognize the impact and harm of his conduct. During the hearing, the regrets repeatedly expressed by Respondent seemed to be only about the location of the sexual activity and not wearing a condom, with no apparent understanding or reflection about how the situation has impacted the Complainant."[24] This statement is profound in that the Adjudicator admits that his decision was not the product of an objective view of the evidence, but rather motivated by his own bias that Jane Roe, as the female, was a victim of her encounter with John Doe, the male. Indeed, in the face of both written evidence (the text messages) and testimony from friends to the contrary, the Adjudicator wholly credits Ms. Roe's version of events and admonishes Mr. Doe for not being sorry as the Adjudicator thought he should have been for his encounter with Ms. Roe which, by all credible evidence, was completely voluntary.

### E.  *Appeal of the Adjudicator's Decision and Remand by the Appeal Panel*

Mr. Doe timely appealed the Adjudicator's Decision to NYU's Appeal Panel, citing NYU's failure to "investigate equitably material facts probative of the Complainant's alleged intoxication, which are material procedural matters in fairly determining this matter and, worse, breaches of

---

[24]     *See* Aug. 27, 2918 Decision Imposing Sanctions at Ex. 8 to Ward Decl.

NYU's responsibilities under Title IX."[25]  Following discussions between Mr. Doe's counsel and NYU's Office of the General Counsel after Mr. Doe's appeal was filed, NYU agreed to stay its immediate suspension of Mr. Doe pending outcome of the appeal.  Ward Decl., ¶ 19.  Thus, Mr. Doe is presently in his junior year of college and is scheduled to return to classes next week.  Doe Decl., ¶ 1.

On October 1, 2018, the Sexual Misconduct Appeal Panel, comprised of Kate Baier, Christopher Bledsoe, and Daniel Holub, issued a Sexual Misconduct Appeal Panel Decision holding that the Adjudicator's finding of "sufficient evidence" of sexual assault due to Ms. Roe's alleged incapacitation as defined by NYU Policy was in error.[26]  In its Decision, the Appeal Panel cited specific evidence inconsistent with the Adjudicator's finding of incapacitation, including the text messages Ms. Roe herself submitted to the investigators, and the statements provided by Ms. Roe's friend, E.G., that "she did not remember helping Complainant back to her room and told Investigators that she believed Complainant was exaggerating her level of intoxication when the videos were taken."  *Id*, p. 7.

The Appeal Panel also found that NYU's Title IX Investigators did not interview witnesses "who may have evidence that is highly probative of Complainant's level of intoxication prior to her sexual encounter with Respondent – prior to the hearing."  *Id.*, p. 8.  Plainly, the only explanation for NYU's failure to conduct a proper investigation and hearing is gender bias against Mr. Doe resulting from pressure on colleges, and NYU specifically, to take allegations by female students of sexual assault seriously and punish male perpetrators harshly.  *See supra*, Sec. D.

---

[25]      A copy of Mr. Doe's appeal, dated September 4, 2018, hereinafter the "Appeal Panel Decision," is annexed to the Ward Declaration as **Exhibit 9**.

[26]      A copy of the Sexual Misconduct Appeal Panel Decision, dated October 1, 2018, is annexed to the Ward Declaration as **Exhibit 10**.

Based upon its Decision, the Appeal Panel sent the matter back "for further investigation" and "further proceedings." *Id.*, pp. 6, 8.[27]

### F.  *"Further Investigation" Mandated by the Appeal Panel*

A full fifty-eight days later, on November 27, 2018, the NYU Investigators issued a new "Investigation Summary Report" to Jolley.[28]  The Post-Appeal Report now included interviews of no less than seven additional witnesses not previously interviewed by the NYU Investigators prior to the Hearing.  *Id.,* pp. 2-3.  This new testimony completely and unequivocally precludes any possible finding that Ms. Roe was in a state of "incapacitation" at the time of the Alleged Incident and further discredits her version of events.  For instance, contrary to Ms. Roe's claim that she was so drunk when she left R.A.'s party that she had to be "'half walked, half carried'" back to her dorm by E.G. and R.A. (*see* First Investigation Summary Report at Ex. E, p. 3), R.A. (like E.G.) had no recollection of this.  In fact, R.A. could not recall whether Jane Roe was even at the party. (*See* Post-Appeal Investigation Summary Report, p. 16.)  Ms. Roe's suitemate, K.S. said she ***never*** saw Ms. Roe drunk to the point of being "'sloppy' or obnoxious'" and had a specific recollection of Jane Roe being "'proud'" of the encounter with Mr. Doe in the days after it happened and being "'surprised'" when she later learned that Ms. Roe was characterizing the encounter as "'rape.'"

---

[27]     Although the Appeal Panel stated that its authority to reverse the Adjudicator's Decision solely on "previously unavailable relevant evidence that could affect the outcome," (*Id.* at p. 6, *citing* Section IV(D)(2) of NYU Procedure) on the ground that Respondent was not provided with the identity of key witnesses, the Decision is also plainly based upon "(1) material procedural error[s]" by the investigators in failing to interview these witnesses at all as well as the Adjudicator's failure to properly weigh evidence supporting Mr. Doe's account of the Alleged Incident. *See* Sec. IV(D)(1).  Indeed, the Appeal Board states: "NYU's Investigators should make all reasonable efforts to identify and interview the Complainant's suitemate, K.S. as well as other students who were present at [R.A.'s] room on March 17, 2017, and can testify to the Complainant's level of intoxication at the time she left [R.A.'s] room at the end of the night.  Investigators should also attempt to interview W.C, who the Complainant requested be interviewed. W.C. may well have evidence that would be helpful in determining the Complainant's level of intoxication and in establishing a timeline for the evening."

[28]     A copy of the November 27, 2018 Investigation Summary Report, herein referred to as the "Post-Appeal Investigation Summary Report," is annexed to the Ward Declaration as **Exhibit 11**.

*Id.*, p. 14.[29]   In sum, of the seven witness statements, three specifically support Mr. Doe's position (K.S., C.G., S.S.) and three claim to have no knowledge of the issues involved (N.W., R.A., A.M.). The remaining witness, W.C., admitted that Ms. Doe contacted him in March 2018 to remind him that he "saw me that night and how intoxicated I was" and that she would like him to be a witness to how "'she was intoxicated.'"   *Id.*

### G.  *NYU's Arbitrary Decision to Remand Proceedings to a New, Outside Adjudicator Selected by NYU*

On January 2, 2019, the OSC notified John Doe that it conducted "further investigation" and that a second "Sexual Misconduct Hearing" will be held on January 28, 2019.[30]   In violation of its own Procedure,  requiring "pre-hearing" appointment of  an "external adjudicator" for designated reasons (*see* NYU Procedure at Ex. D to Ward Decl., Sec. IV(A)), NYU advised Mr. Doe that the second Sexual Misconduct Hearing will take place before an external arbitrator, Hon. Jane Cutler Greenspan.  Ward Decl., ¶ 6-8, 32.  Additionally, despite the prior Hearing and Appeal, NYU advised Mr. Doe that the matter was referred to Ms. Greenspan for a "*de novo* determination" of the alleged violation by John Doe.  *Id.*   Plainly, having been reversed on appeal for conducting a biased investigation designed to achieve a predetermined result, NYU now seeks to reach its intended result of a finding of misconduct by referring the matter to Ms. Greenspan, a fellow "College and University Title IX" adjudicator and former sex crimes prosecutor selected *sua sponte* by NYU for this process by NYU .[31]  Indeed, NYU has refused to disclose any information to John Doe, including any potential conflicts of interest that may exist, regarding its appointment

---

[29]      We respectfully submit that, by the evidence, this kind of statement by Ms. Roe is abject defamation of Mr. Doe's character that is also causing ongoing harm to his reputation.

[30]      A copy of the Email from OSC to John Doe, dated January 2, 2019, is annexed to the Ward Declaration as **Exhibit 12.**

[31]      A copy of Ms. Greenspan's published *curriculum vitae* is annexed to the Ward Decl. as **Exhibit 16.**

of Ms. Greenspan.[32]  Also, inexplicably, NYU is departing from its own Procedure dictating that

only one "advisor" accompany the parties to the hearing (*see* NYU Procedure at Ex. D to Ward

Decl., Sec IV(B)(2)(a)), and has advised the parties that they may have two advisors accompany

them to this new hearing.  Ward Decl., ¶ 33.  In fact, further establishing its profound gender bias,

NYU previously denied Mr. Doe's request to have more than one "advisor" at the first Hearing.

*Id.*, ¶ 11.

**STATEMENT OF LAW**

### A.  *Standards for Preliminary Injunction and Temporary Restraining Order*

The purpose of a preliminary injunction is to preserve the status quo pending the final

determination of a dispute.  *See Arthur Guinness & Sons, PLC v. Sterling Pub. Co.*, 732 F.2d 1095,

1099 (2d Cir. 1984); Fed. R. Civ. P. 65(a).  A party seeking a preliminary injunction is required to

show (1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently

serious questions going to the merits of his claims to make them fair ground for litigation, plus a

balance of the hardships tipping in favor of the moving party."  *KF ex rel. CF v. Monroe Woodbury*

*Central School District*, 2012 WL 1521060, at * 4 (S.D.N.Y. Apr. 30, 2012) (quoting *Plaza Health*

*Laboratories, Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1980).  Under the "serious questions"

standard, a preliminary injunction may be warranted even if the court cannot determine with

certainty that the moving party is likely to prevail on the merits of the underlying claims, but finds

that the costs outweigh the benefits of not granting the injunction.  The moving party must show

not only that there are serious questions going to the merits, but also that the balance of hardships

---

[32]      *See* Ward Decl., ¶¶ 2-8, attaching correspondence between NYU's counsel, Metzler, and John Doe's
counsel at **Exhibits 2, 3 and 12**.  It seems clear that NYU is seeking to hold the hearing as soon as possible so that it
can escape holding the proceeding in accordance with the new guidelines set by the Secretary of Education which
provide for cross-examination of accusers during sexual misconduct proceedings.

tips decidedly in its favor. *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (internal citations and quotation marks omitted).

The Court may issue a TRO enjoining the complained of conduct until the preliminary injunction motion can be heard, where "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damages will result to the movant before the adverse party can be heard in opposition". Fed. R. Civ. P. 65(b)(1). "The standard for granting a TRO is similar to that applicable to a preliminary injunction—the moving party must demonstrate irreparable harm and either (1) a likelihood of success on the merits or (2) sufficiently serious questions on the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in the moving party's favor." *Towers Fin. Corp. v. Dun & Bradstreet, Inc.*, 803 F. Supp. 820, 822 (S.D.N.Y. 1992) (citing *Local 1814 Int'l Longshoreman's Assoc. AFL–CIO v. New York Shipping Assoc. Inc.*, 965 F.2d 1224, 1228 (2d Cir.1992); *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990)).

**B. _Standard for Title IX Claims_**

Title IX provides, in pertinent part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. Sec. 1681(a). As a school that receives federal funds, NYU is subject to Title IX. *See Doe v. Columbia Univ,* 831 F.3d 46, 53 (2d Cir. 2016) (holding plaintiff sufficiently alleged "minimal inference" required to plead gender bias against males accused of sexual assault) (*citing Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 2016)).[33] It is well-established that Title IX bars the

---

[33]     NYU's own website establishes that it is the recipient of federal funding and this is subject to Title IX prohibitions against gender bias. *See, e.g.*:

imposition of university discipline where gender is a motivating factor. *See Doe v. Colgate Univ.*, No. 17-3594-cv, 2019 WL 190515, at * 5 (2d Cir. Jan. 15, 2019) (*citing Yusuf*, 35 F.3d at 714); *Doe v. Columbia Univ,* 831 F.3d at 53 (*citing Yusuf*, 35 F.3d at 714)); *Doe v. Rensselaer Polytechnic Institute*, No. 1:18-CV-1374, 2019 WL 181280, at * 3 (N.D.N.Y. Jan. 11, 2019).

## ARGUMENT

As demonstrated in the accompanying declarations and discussed below, John Doe has shown his likelihood of success on the merits of his claims against NYU, or, at the least, has presented serious questions and a fair ground for litigation. Like the plaintiff in *Doe v. Columbia*, John Doe has alleged a "minimal inference" of gender bias against him by NYU on the ground that it, like Columbia, "chose to accept an unsupported accusatory version [of an alleged sexual assault without consent] over Plaintiff's, and even declined to explore the testimony of Plaintiff's witnesses." *Doe v. Columbia Univ,* 831 F.3d at 57. The additional facts alleged by John Doe in this case provide further, substantial evidence of gender bias in this case, including recent criticism of NYU's previous lenient handling of sexual assault complaints by female students immediately prior to its investigation of this matter, NYU's own repeated, inexplicable departures from and violations of its own Procedure in this matter, and the plainly biased statements made by the Adjudicator at the first Hearing,

Moreover, the risk of irreparable harm absent injunctive relief is actual and imminent. Contrary to its own Procedure, NYU has scheduled a second "Sexual Misconduct Hearing" for

---

https://www.nyu.edu/about/policies-guidelines-compliance/compliance/compliance-matters-newsletter/may-2018/enrollment-management-compliance-title-four.html;
https://www.nyu.edu/admissions/financial-aid-and-scholarships/scholarships-and-grants.html; and
https://www.nyu.edu/admissions/financial-aid-and-scholarships/federal-direct-loans.html.

Monday, January 28, 2019 at which Jane Roe's entirely false and unsupported accusation that John Doe had sexual intercourse with her while she was incapacitated will be heard "*de novo*" by a fellow "College and University Title IX" adjudicator and former sex crimes prosecutor selected by NYU. *See supra*, pp. 23-24.  This proceeding, as the proceedings have been up until now, is entirely motivated by NYU's gender bias and intended to make John Doe the scapegoat for NYU's prior failure to properly handle accusations of sexual assault by female students.  John Doe stands to be suspended once again from his academic career and have an attendant notation on his transcript that will irreparably damage his reputation and require him to explain forever to potential graduate programs and employers the significant gap in his studies.

Accordingly, for the reasons set forth herein, we respectfully request that the Court grant John Doe's motion for a temporary restraining order and preliminary injunction against defendant NYU pursuant to Fed. R. Civ. P. 65 (b)(1)(A) for relief set forth in its Proposed Order to Show Cause.  A Proposed Order to Show Cause is annexed as **Exhibit 1** to the Ward Decl.

## I.     IN THE ABSENCE OF A COURT ORDER, JOHN DOE WILL SUFFER IRREPARABLE HARM

The risk of irreparable harm to John Doe absent injunctive relief is actual and imminent for several, independent reasons.  **First,** the hearing scheduled for Monday is, as the proceedings have been up until now, is entirely motivated by NYU's gender bias and intended to make John Doe the scapegoat for NYU's prior failure to properly handle accusations of sexual assault by female students.   Indeed, contrary to its own Procedure, NYU has scheduled a second "Sexual Misconduct Hearing" for Monday, January 28, 2019 at 10:00AM at which Jane Roe's entirely false and unsupported accusation that John Doe had sexual intercourse with her while she was incapacitated will be heard "*de novo*" by a fellow "College and University Title IX" adjudicator and former sex crimes prosecutor selected by NYU. *See supra*, p. 24-25.  In effect, on Monday,

John Doe is going to be re-tried by a new arbitrator self-selected by NYU who, based upon her *curriculum vitae*, likely shares its bias against males alleged to have committed a sexual assault. Unless the Court enjoins NYU from proceeding with this "*de novo*" hearing, Mr. Doe's right to due process will be violated.

Critically, since NYU has arbitrarily referred this matter to a "*de novo*" proceeding by an external adjudicator after the "Pre-Hearing" stage in violation of its own Procedure (Sec. IV(A)) and contrary to the Appeal Panel Decision remanding the matter to the OSC for "further proceedings," John Doe's right to appeal any "*de novo*" decision by the newly appointed external adjudicator is entirely unclear. Given NYU's repeated departures from its own Procedure thus far, it is more than a fair inference that John Doe may not have any right to an appeal a determination made by the external adjudicator following the hearing on Monday.

**Second**, NYU is plainly seeking to hold this "re-trial" of John Doe as soon as possible in light of the fact that new legislation that will dramatically alter the conduct of Title IX proceedings in a fashion that is intended to provide more balance and protection to the accused in these circumstances including by allowing cross examination of Jane Roe.[34] Indeed, as set forth above (*see supra* p. 7, f.n. 3), the comment period for the new guidelines expires on January 28, 2019 – the same date as the scheduled "*de novo*" hearing. Tellingly, NYU refused to extend the date for the hearing, originally scheduled for Friday, January 25, 2019, beyond Monday, January 28, 2019 despite the fact that John Doe was not scheduled to return from overseas until the start of classes on Monday. Ward Decl., ¶ 8. For this additional reason, unless the Court grants his request for

---

[34] Indeed, cross-examination has been recognized as the greatest legal engine ever invented for discovery of the truth, *Lilly v. Virginia,* 527 U.S. 116, 124 (1999), and has been ruled to be required for basic due process in campus disciplinary cases, *Donohue v. Baker,* 976 F. Supp. 136 (N.D.N.Y. 1997). Yet, in a case where Defendant NYU relied upon a credibility assessment, no cross-examination was available and no sworn testimony was taken in violation of basic fairness. Injunctive relief is required to stop this from happening again.

injunctive relief, John Doe's due process rights and rights to a fair and equitable hearing will be violated.  Indeed, injunctive relief is warranted and has already been held to be appropriate on this ground by Federal Appellate and District Courts.[35]

**Third**, in a matter of days, John Doe stands to be suspended once again from his academic career and have an attendant notation on his transcript that will irreparably damage his reputation and require him to explain forever to potential graduate programs and employers the significant gap in his studies and require him to reveal that he was found guilty of sexual misconduct by NYU. *See supra*, pp. 7-8.  This has been held to constitute the necessary "irreparable harm" for the imposition of injunctive relief.  *See Entry Granting Motion for Preliminary Injunction* entered by the United States District Court for the Southern District of Indiana (Terre Haute Div.) in the matter *Benjamin King v. DePauw University*, Cause No. 2:14-cv-70-WTL-DKL (Aug. 22, 2014).[36] Moreover, as a result of this ongoing arbitrary and biased process, Mr. Doe has already suffered a gap in his attendance due to his initial suspension.  *See* Declaration of John Doe, sworn to on January 23, 2019, hereinafter "Doe Declaration," at ¶ 15.  Additionally, his academic performance has been – and continues to be – negatively impacted by these proceedings.  *Id.,* ¶¶ 15-16. Additionally, Mr. Doe is suffering acute emotional distress as a result of NYU's unceasing campaign to make him the scapegoat for its past failure to properly investigation and punish prior allegations of sexual assault by female students.  *Id.*, ¶ 17.  He should not be forced to the stress

---

[35]     *See, e.g., Doe v. Univ. of Cincinnati*, No. 16-4694 (6th Cir. Sept. 25, 2017) (upholding District Court's decision granting preliminary injunction on the ground that plaintiff's right to due process were violated because plaintiff was not given the opportunity to confront and cross-examine his accuser at a disciplinary hearing where credibility of both accuser and accused were in issue in the exact circumstances at issue here, i.e. John Doe maintains that the sex was consensual and Jane Roe claims that it was not); *Doe v. Rensselaer Polytechnic Institute*, 2019 WL 181280, at * 4 (noting that plaintiff filed his Title IX action prior to a scheduled hearing and his motion for a temporary restraining order and a preliminary injunction requesting, *inter alia*, that the Court enjoin defendants from holding a hearing until after the proposed Title IX regulations became effective was granted).

[36]     A copy of this decision is annexed to the Ward Decl. as **Exhibit 14**.

endure a re-trial conducted by a former sex crimes prosecutor at NYU's latest whim at the start of a new school semester.

## II.    THE BALANCE OF HARMS WEIGHS IN FAVOR OF INJUNCTIVE RELIEF

The imminent harm that John Doe faces is caused by NYU's violation of his constitutional right to due process and his right to be free from gender discrimination under Title IX.  Any potential harm to NYU as a result of an injunction is far outweighed by these potential serious violations of John Doe's fundamental rights to due process and not to be discriminated against on the basis of his gender.  *See John Doe v. The Pennsylvania State University*, No. 17-CV-01315 (U.S. Dist. Ct., Middle Dist. PA. Aug. 18, 2017) (granting injunctive relief based upon findings that John Doe demonstrated that in the absence of immediate relief during the pendency of litigation, his constitutional rights would be violated and that "vindication of John Doe's constitutional rights is itself a more compelling public interest weighing in favor of injunctive relief").[37]

## III.    JOHN DOE IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS

A complaint under Title IX alleging "facts that support a minimal plausible inference of [] discrimination" based upon gender will be sufficient to satisfy a plaintiff's pleading burden.  *Doe v. Columbia Univ,* 831 F.3d at 56.  Moreover, a plaintiff asserting a Title IX claim of gender discrimination is entitled to a "'temporary presumption'" of "'discriminatory motivation'" in the initial pleading stage and until the defendant presents evidence of its "'justification for the adverse action, joining issue on plaintiff's claim of discriminatory motivation.'"  *Doe v. Columbia Univ,* 831 F.3d at 53 (*quoting Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015) for analysis of

---

[37]    A copy of this decision is annexed to the Ward Decl. as **Exhibit 15**.

application of factors established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) in Title VII cases to Title IX cases).

Here, John Doe has more than sufficiently met this standard by alleging that NYU reached "erroneous outcome" reached by NYU on the basis of gender bias at the first Sexual Misconduct Hearing and is proceeding with a second "*de novo*" hearing in the face of further exculpatory evidence obtained through further investigation by the NYU Investigators as set forth in their November 27, 2018 Supplemental Investigative Report following the Appeal Panel Decision. Under the law, a plaintiff sufficiently alleges an "erroneous outcome" by alleging: (1) "articulable doubt" as to the accuracy of the outcome of the disciplinary proceeding; and (2) that gender bias was a "motivating factor" behind the erroneous finding.'" *Doe v. Colgate*, 2019 WL 190515, at * 5 (*citing Yusuf*, 35 F.3d at 715); *Doe v. Syracuse*, 341 F.Supp.3d 125, 136-37 (N.D.N.Y. 2018) (*same*); *Rolph v. Hobart and William Smith Colleges*, 271 F.Supp.3d 386, 401 (W.D.N.Y. 2017) (*same*). Both elements are met here.

### A.   The Complaint Alleges "Articulable Doubt" As to Outcome of NYU's Hearing

As a matter of law, an Appeal Panel has already determined that NYU reached an erroneous outcome. *Doe v. Colgate*, 2019 WL 190515, at * 5 (*citing Yusuf*, 35 F.3d at 715). The fact that the NYU Investigators conducted further investigation and interviewed seven additional witnesses whose testimony completely and unequivocally precludes any possible finding that Ms. Roe was in a state of "incapacitation" at the time of the Alleged Incident and further discredits her version of events but has nonetheless scheduled a second "*de novo*" Sexual Misconduct Hearing unequivocally establishes that NYU has repeatedly determined there to be sufficient evidence of misconduct to warrant further proceedings (most recently in the November 27, 2018 Supplemental

Investigation Summary Report) in error and thus far surpasses the minimum requirement of "articulable doubt." *Id.*

### B. The Complaint Alleges Substantially More Than a "Minimal Plausible Inference" of Gender Discrimination

As to the second requirement for a Title IX claim based upon an "erroneous outcome," i.e. that gender bias was a "motivating factor," it is a matter of Second Circuit law that the plaintiff "needs to present only minimal evidence supporting an inference of discrimination." *Doe v. Columbia*, 831 F.3d at 53-56. *See also Yusuf*, 35 F.3d at 715 ("We believe that Yusuf's complaint suffices to survive a motion to dismiss with regard to his claim that, because of his gender, he was erroneously found to have harassed [a female student]"); *Prasad v. Cornell University*, Civ. Action No. 5:15-cv-322, 2106 WL 3212079, at *15-17 (N.D.N.Y. Feb. 24, 2016) (holding plaintiff sufficiently alleged that gender bias was a motivating factor behind an erroneous finding that he committed a sexual assault based upon "a host of facts demonstrating particular evidentiary weaknesses in the case against him" and "procedural flaws" resulting from a "clear outcome bias" that "deprived him of the presumption of innocence, shifted the burden to him to prove Doe's capacity to consent, and deprived him of the ability to receive a fair adjudication")

As stated by the Second Circuit in *Doe v. Columbia*, "the temporary presumption afforded to plaintiffs in employment discrimination cases under Title VII applies to sex discrimination plaintiffs under Title IX as well." *Id.* at 56. Accordingly, "a complaint under Title IX, alleging that plaintiff was subjected to discrimination on account of sex in the imposition of university discipline, is sufficient with respect to the element of discriminatory intent, like a complaint under Title VII, if it pleads specific facts that support a *minimal plausible inference* of such discrimination. *Id.* (Emphasis added.) Thus, the pleading burden that must be satisfied by John Doe in this case is "that the alleged facts need support only a *minimal inference* of bias." *Id.*

(Emphasis added).  In *Doe v. Columbia*, the Second Circuit held that the plaintiff sufficiently demonstrated a "minimal plausible inference" of pro-female sexual discrimination by alleging that: (i) the investigator and the panel declined to seek out potential witnesses plaintiff had identified as sources of information favorable to him; (ii) the investigator and panel failed to act in accordance with University procedures; and (iii) reached conclusions that were incorrect and contrary to the evidence. *Id.* at 56-57.   John Doe has alleged all of this and more in his Complaint here.

**First**, John Doe allegation that the OSC and NYU Investigators repeatedly failed to interview witnesses, including those identified by Jane Roe who ultimately contradicted her accusation, in advance of the first Sexual Misconduct Hearing support a finding of gender bias. *See* Compl., ¶¶ 26-27.  Indeed, it was not until an Appeal Panel determined that the evidence did not support the Adjudicator's Decision and ordered the OSC to conduct "further investigation" and expressly cited the NYU Investigators' failure to interview witnesses "who may have evidence that is highly probative of [Jane Roe's] level of intoxication prior to her sexual encounter with [John Doe] – prior to the hearing" that the NYU Investigators went back and interviewed these witnesses. *Id.*, ¶¶ 40-42.  Not surprisingly, the testimony of these witnesses (except for Ms. Roe's friend, W.C., that she encouraged to attest to her intoxication) overwhelmingly support John Doe's assertion (and evidence in the form of Ms. Roe's own text messages) that Ms. Roe willingly engaged in sexual intercourse with him and was by no means "incapacitated" as defined by NYU Policy. *Id.*, ¶ 43.  Incredibly, in the face of even more evidence contradicting Ms. Roe's unsupported allegation against John Doe uncovered by further investigation, the OSC has once again found sufficient evidence that John Doe violated NYU Policy by engaging in intercourse with Jane Roe while she was allegedly incapacitated.  NYU's failure to interview key witnesses

demonstrates a gender bias against John Doe as a male accuser in favor of an alleged female victim. *See Doe v. Columbia*, 831 F.3d at 56-58; *Doe v. Syracuse*, 341 F.Supp.3d at 138.

**Second**, like the plaintiff in *Doe v. Columbia*, John Doe has alleged that NYU has repeatedly failed to act in accordance with its own Procedure, and in direct contravention of John Doe's rights, in the process of investigating and adjudicating Jane Roe's claim of sexual assault, which further demonstrates a "minimal plausible inference" of gender discrimination on the part of NYU.  As alleged in the Complaint, NYU's violations in this regard include: (i) failing to timely conduct an investigation (which should have been "completed within ***thirty-five days*** from initiation of the Investigation") in accordance with NYU Procedure Section III(I)) (*see* Compl., ¶ 22); (ii) failing to hold a hearing  "within ***sixty days*** of the initiation of the Investigation" in accordance with Section IV(B)(1) (*id.*); (iii) referring the matter to an "external adjudicator" well after the "pre-hearing" stage in violation of Section IV(A)(2) instead of complying with the Appeal Panel Order that the OSC itself should hold "further proceedings" (*see* Compl., ¶¶ 44-46); (iv) failing to confront Jane Roe with questions submitted to the Adjudicator by John Doe's attorney at the Sexual Misconduct Hearing that would expose the contradictions and misstatements in her testimony (*id.* ¶¶ 32-39); and (v) departing from NYU Procedure when it benefitted Ms. Roe and denying Mr. Doe the same relief when previously requested by him (*id.* ¶ 46).  All of these alleged facts support a plausible inference of gender bias.  *See, e.g., Doe v. Columbia*, 831 F.3d at 56-58; *Doe v. Syracuse*, 341 F.Supp.3d at 138.  *See also Rolph*, 271 F.Supp.3d at 402 (procedural and investigative failures such as failing to confront Jane Roe with questions submitted by the accused and to preserve evidence, together with allegations of public pressure, supported the inference of gender bias against male accused of sexual assault).

**Third**, like the plaintiff in *Doe v. Columbia,* John Doe has alleged that NYU has voluntarily chosen to accept an unsupported accusatory version of the Alleged Incident by Jane Roe in the face of overwhelming evidence (including text messages and witness testimony) refuting any finding of misconduct by John Doe. *See* Compl., ¶¶ 32-39. Indeed, John Doe's allegations in this regard have already been substantiated by the Appeal Panel which held that the Adjudicator's finding of "sufficient evidence" of sexual assault due to Ms. Roe's alleged incapacitation as defined by NYU Policy following the Sexual Misconduct Hearing was in error. *See* Appeal Panel Decision at Ex. 10 to Ward Decl. As expressly set forth in the Appeal Panel Decision, the Adjudicator blatantly ignored evidence inconsistent a finding of incapacitation, including the text messages Ms. Roe herself submitted to the investigators, and the statements provided by Ms. Roe's friend, E.G., that "she did not remember helping Complainant back to her room and told Investigators that she believed Complainant was exaggerating her level of intoxication when the videos were taken." *Id*, p. 7.

The Appeal Panel also found that NYU's Title IX Investigators did not interview witnesses "who may have evidence that is highly probative of Complainant's level of intoxication prior to her sexual encounter with Respondent – prior to the hearing." *Id.*, p. 8. The fact that NYU subsequently interviewed those witnesses and, by its own Supplemental Investigation Report, their testimony overwhelmingly supports finding John Doe innocent of the alleged violation, but is nonetheless proceeding with a second, "*de novo,*" Sexual Misconduct Hearing before a self-selected "external adjudicator" is substantial evidence of gender bias. Indeed, it shows that NYU is willing to go to any extreme to find John Doe guilty of misconduct and must be stopped by this Court.

**Fourth**, like the plaintiff in *Doe v. Columbia*, John Doe also alleges that NYU has discriminated against him due to extreme pressure to hold males accountable for sexual assault following criticism that it failed to do so in the past, is sufficient to establish a "minimal plausible inference" of gender discrimination on the part of NYU. *See* Compl., ¶ 33. As stated by the Second Circuit in *Doe v. Columbia*, "[t]here is nothing implausible or unreasonable about the Complaint's suggested inference that the panel adopted a biased stance in favor of the accusing female and against the defending male varsity athlete in order to avoid further fanning the criticisms that Columbia turned a blind eye to such assaults." *See Doe v. Columbia*, 831 F.3d at 58. *See also Rolph*, 271 F.Supp.3d at 401 (*citing Doe v. Columbia and stating* "Plaintiff's allegations concerning the *Huffington Post* blog post and the commencement of the *New York Times* investigation in February 2014 – months before his expulsion – support Plaintiff's allegation that some public pressure already existed when [the college] took action against him"). Lest there be any doubt that the same goes for NYU in this matter, in this case, the Adjudicator expressly admitted in his Decision finding John Doe guilty of sexual assault that his decision was not the product of an objective view of the evidence, but rather motivated by his own bias that Jane Roe, as the female, was a victim of her encounter with John Doe, the male and, even worse, that he did not think John Doe was sufficiently sorry for the "harm" and "impact" of his actions (which he steadfastly denies) upon Jane Roe. *See* Aug. 27, 2918 Decision at Ex. 8 to Ward Decl.

### C. John Doe is Also Likely to Succeed on the Merits of His Additional Claims

In his Complaint, John Doe also alleges claims for: (i) breach of contract (Compl., Count II at ¶¶65-70); (ii) breach of the covenant of good faith and fair dealing (*id.*, Count III at ¶¶ 71-74); and (iii) a declaratory judgment (*id.*, Count IV at ¶¶ 75-77). John Doe is also likely to succeed on the merits of these additional claims. **First,** as to the breach of contract and breach of covenant

of good faith and fair dealing claims, John Doe alleges numerous, ongoing breaches of NYU's Procedure. *See supra* pp. 35-36. It is well-settled law that "'[u]nder New York law, 'when a student is admitted to a school, an implied contract arises between the student and the school'" and that the contract terms are supplied by the regulations made available to the student and "'[i]mplicit in this contract is that the university must act in good faith in dealing with the student.'" *Doe v. Colgate University*, 2019 WL 190515 at *8 (*quoting Dasrath v. Ross Univ. Sch. Of Med.*, 494 F.App'x 177, 178 (2d Cir. 2012).) Accordingly, John Doe has sufficiently alleged all of the elements of a breach of contract claim as well as a claim for breach of covenant of good faith and fair dealing.

**Second**, John Doe has sufficiently alleged a cause of action for a declaratory judgment. The Declaratory Judgment Act "confers on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Gelmart Indus., Inc. v. Eveready Battery Co.*, 120 F. Supp. 3d 327, 330 (S.D.N.Y. 2014) (internal quotation marks omitted). There must be "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* Underlying John Doe's action for declaratory judgment is his claim that defendant NYU has violated Title IX. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Second Circuit recognizes that "[c]ases attacking university disciplinary proceedings on the ground of gender bias fall generally within two categories. The first category is an 'erroneous outcome' theory, under which 'the claim is that the plaintiff was innocent and wrongly found to have committed an offense.' The second category is a 'selective enforcement' theory. The claim 'asserts that, regardless of the student's

38

guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender.' Plaintiffs 'may plead in the alternative that they are in both categories.'" *Rolph v. Hobart & William Smith Colleges*, 271 F. Supp. 3d 386, 399 (W.D.N.Y. 2017) (citations omitted). John Doe is likely to succeed on his Title IX claim under both an erroneous outcome theory and a selective enforcement theory. Accordingly, he is likely to succeed on the merits of his claim for declaratory judgment that defendant's policies and procedures violate Title IX.

## CONCLUSION

For the foregoing reasons, John Doe respectfully requests that this Court grant him a temporarily restraining order ) to enjoin NYU from holding a "Sexual Misconduct Hearing" that it has scheduled for Monday, January 28, 2019 and a preliminary injunction enjoining NYU from taking any action with respect to adjudicating any determination of John Doe's responsibility for an alleged violation of NYU's Sexual Misconduct, Relationship Violence, and Stalking Policy pending the ultimate resolution of this action, along with the additional relief sought in his proposed order, and such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      January 24, 2019

                         **BARTON LLP**

                         James E. Heavey, Esq. (JH1551)
                         Laura-Michelle Horgan, Esq. (LR7799)
                         Michael C. Ward, Esq. (MW4565)
                         711 Third Avenue, 14th Floor
                         New York, New York 10017
                         (212) 687-6262
                         jheavey@bartonesq.com
                         lmhorgan@bartonesq.com
                         mward@bartonesq.com

                         *Attorneys for Plaintiff John Doe*