UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

| | | |
|---|---|---|
| | ) | |
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -against- | ) | 19-cv-744 (ALC) |
| | ) | |
| NEW YORK UNIVERSITY, CRAIG JOLLEY, | ) | **Oral Argument Requested** |
| SAMUEL HODGE, COLLEEN M. MAEDER, | ) | |
| MATHEW SHEPARD, MARY SIGNOR, | ) | |
| JACQUELINE CORNELL, JASMINE WADE, | ) | |
| DAISY TOMASELLI, JEFFREY METZLER, | ) | |
| and JOHN DOES 1 through 10, | ) | |
| | ) | |
| Defendants. | ) | |

———————————————————————

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

HOGAN LOVELLS US LLP
390 Madison Avenue
New York, New York 10017

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

FACTUAL ALLEGATIONS AND BACKGROUND.........................................3

      A.    The Parties ........................................................................3

      B.    The Alleged Sexual Assault................................................4

      C.    NYU's Investigation and Initial Decision .................................4

      D.    Plaintiff Appeals, and Further Investigation and a New Report Follow. ........................................................................6

      E.    Plaintiff Is Found Not Responsible. .....................................6

      F.    Procedural History.............................................................7

   I.    MOTION TO DISMISS STANDARDS..........................................8

   II.    PLAINTIFF'S TITLE IX CLAIM FAILS AS A MATTER OF LAW. ................9

      B.    Plaintiff Has Failed to State a Cause of Action for Violation of Title IX...........................................................................11

          1.    Plaintiff Has Not Alleged the *Sine Qua Non* of a "Selective Enforcement" Claim—A Similarly Situated Female Who Was Treated Differently Than He Was. .............................11

          2.    The Court Should Not Create a New Category of Title IX University-Discipline Claim.......................................14

   III.    ALL OF PLAINTIFF'S STATE-LAW CLAIMS ARE INADEQUATELY PLEADED. ........................................................................26

      A.    Plaintiff's Human Rights Law Claim Fails Because He Has Not Plausibly Alleged Any Gender- Or Ethnicity-Based Bias.......................26

      B.    Plaintiff's Breach of Contract Claims Are Not Well-Pleaded. ................27

      C.    Plaintiff's Tort Claims Fail Because They Are Duplicative Of His Contract Claims And Fail To Identify Actionable Conduct. ...................32

      D.    Plaintiff's Claims Against The Individual Defendants Fail.....................33

CONCLUSION....................................................................................35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

*Abe v. New York Univ.*,
  No. 105985/10, 2018 WL 1678161 (Sup. Ct. N.Y. Cnty. Apr. 2, 2018) ..............................35

*Albert v. Carovano*,
  851 F.2d 561 (2d Cir. 1988) ..................................................................................... 11, 12, 14

*Anthes v. New York Univ.*,
  2018 WL 1737540 (S.D.N.Y. Mar. 12, 2018) ........................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................................8, 9, 13

*Austin v. Univ. of Oregon*,
  925 F.3d 1133 (9th Cir. 2019) ..............................................................................................12

*B.B. v. The New Sch.*,
  2018 WL 2316342 (S.D.N.Y. Apr. 30, 2018) .......................................................................19

*Barsoumian v. Williams*,
  29 F. Supp. 3d 303 (W.D.N.Y. 2014) ...................................................................................35

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................8, 9, 13

*Biro v. Conde Nast*,
  807 F.3d 541 (2d Cir. 2015) ...................................................................................................9

*Bd. of Ed. of City Sch. Dist. of City of N.Y. v. Harris*,
  622 F.2d 599 (2d Cir. 1979) .................................................................................................10

*Castro v. N.Y.C. Bd. of Educ.*,
  1998 WL 108004 (S.D.N.Y. Mar. 12, 1998) ........................................................................16

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
  70 N.Y.2d 382 (1987) ...........................................................................................................32

*Cordell v. Verizon Commc'ns, Inc.*,
  331 F. App'x 56 (2d Cir. 2009) .............................................................................................22

*Davidovici v. Fritzson*,
  49 A.D.3d 488 (2d Dep't 2008) ............................................................................................33

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010) ...................................................................................................9

*Dobrynio v. Cent. Hudson Gas & Elec. Corp.*,
    419 F. Supp. 2d 557 (S.D.N.Y. 2006) ................................................................................16

*Doe v. Amherst Coll.*,
    238 F. Supp. 3d 195, 223 (D. Mass. 2017) ........................................................................14

*Doe v. Colgate Univ.*,
    2017 WL 4990629 (N.D.N.Y. Oct. 31, 2017 ........................................................ 24, 25, 30

*Doe v. Columbia Coll. Chicago*,
    299 F. Supp. 3d 939 (N.D. Ill. 2017) ............................................................................12, 20

*Doe v. Columbia Univ.*,
    831 F.3d 46 (2d Cir. 2016) ..................................................................................... *passim*

*Doe v. Syracuse Univ.*,
    341 F. Supp. 3d 125 (N.D.N.Y. 2018) ............................................................. 14, 28, 30, 32

*Doe v. Univ. of Chicago*,
    2017 WL 4163960 (N.D. Ill. Sept. 20, 2017) ....................................................................20

*Doe v. Univ. of Dayton*,
    766 F. App'x 275 (6th Cir. 2019) ......................................................................................13

*Doe v. Univ. of Massachusetts-Amherst*,
    2015 WL 4306521 (D. Mass. July 14, 2015) ...............................................................13, 20

*Eldridge v. Rochester City Sch. Dist.*,
    968 F. Supp. 2d 546 (W.D.N.Y. 2013) ..............................................................................17

*Evans v. Columbia Univ.*,
    2015 WL 1730097 (S.D.N.Y. Apr. 13, 2015) ....................................................................32

*Faiaz v. Colgate Univ.*,
    64 F. Supp. 3d 336 (N.D.N.Y. 2014) .................................................................................28

*Fox v. Costco Wholesale Corp.*,
    918 F.3d 65 (2d Cir. 2019) ................................................................................................16

*Gally v. Columbia Univ.*,
    22 F. Supp. 2d 199 (S.D.N.Y. 1998) .................................................................................28

*Hardwick v. Ind. Bell Tel. Co., Inc.*,
    2018 WL 4620252 (S.D. Ind. Sept. 26, 2018) ...................................................................25

*Herlihy v. Met. Museum of Art*,
    214 A.D.2d 250 (1st Dep't 1995) ......................................................................................33

*Howell v. N.Y. Post Co.*,
   81 N.Y.2d 115 (1993)................................................................................24, 32

*Jaeger v. N. Babylon Union Free Sch. Dist.*,
   191 F. Supp. 3d 215 (E.D.N.Y. 2016)....................................................................16

*Johnson v. New York Univ.*,
   2018 WL 4908108 (S.D.N.Y. Oct. 10, 2018).............................................................27

*Kajoshaj v. N.Y.C. Dep't of Educ.*,
   543 F. App'x 11 (2d Cir. 2013) ....................................................................12, 21

*Khanna v. MUFG Union Bank, N.A.*,
   2019 WL 1428435 (S.D.N.Y. Mar. 29, 2019)............................................................27

*L-7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419 (2d Cir. 2011) .............................................................................8

*LaShonda D. v. Monroe Cty. Bd. of Educ.*,
   526 U.S. 629 (1999) .....................................................................................15

*Manolov v. Borough of Manhattan Cmty. Coll.*,
   952 F. Supp. 2d 522 (S.D.N.Y. 2013)...................................................................13

*Marshall v. Indiana Univ.*,
   170 F. Supp. 3d 1201, 1210 (S.D. Ind. 2016)..........................................................14

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007) ..............................................................................3

*Menaker v. Hofstra Univ.*,
   No. 18-3089-cv (2d Cir. Aug. 15, 2019). .......................................................*passim*

*Miksic v. TD Ameritrade Holding Corp.*,
   2013 WL 1803956 (S.D.N.Y. Mar. 7, 2013)..............................................................16

*Nungesser v. Columbia Univ.*,
   169 F. Supp. 3d 353 (S.D.N.Y. 2016)...................................................................32

*Ochre LLC v. Rockwell Architecture Plan. & Design, P.C.*,
   2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012)..............................................................33

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*,
   633 F.3d 81 (2d Cir. 2011) ..............................................................................15

*Parra v. City of White Plains*,
   48 F. Supp. 3d 542 (S.D.N.Y. 2014)....................................................................27

*Prasad v. Cornell Univ.*,
　2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016) ........................................................ 11, 14, 32

*Rolph v. Hobart & William Smith Coll's*,
　271 F. Supp. 3d 386 (W.D.N.Y. 2017)........................................................................ 11, 28

*Rossley v. Drake Univ.*,
　342 F. Supp. 3d 904 (S.D. Iowa 2018)................................................................................14

*Routh v. Univ. of Rochester*,
　981 F. Supp. 2d 184 (W.D.N.Y. 2013)....................................................................... 27, 28

*Scott v. WorldStarHipHop, Inc.*,
　2011 WL 5082410 (S.D.N.Y. Oct. 25, 2011) ...................................................................11

*Soloviev v. Goldstein*,
　104 F. Supp. 3d 232 (E.D.N.Y. 2015)...............................................................................26

*Soto v. Marist Coll.*,
　2019 WL 2371713 (S.D.N.Y. June 5, 2019) ....................................................................22

*SurvJustice Inc. v. DeVos*,
　2018 WL 4770741 (N.D. Cal. Oct. 1, 2018) ....................................................................21

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
　864 F.3d 236 (2d Cir. 2017) ...............................................................................................9

*Targum v. Citrin Cooperman & Co., LLP*,
　2013 WL 6087400 (S.D.N.Y. Nov. 19, 2013) ...................................................................9

*United States v. Kalume*,
　684 F. App'x 80 (2d Cir. 2017) ........................................................................................19

*Ward v. New York Univ.*,
　2000 WL 1448641 (S.D.N.Y. Sept. 28, 2000)..................................................................28

*Weir v. Montefiore Med. Ctr.*,
　2018 WL 1033238 (S.D.N.Y. Feb. 22, 2018)...................................................................27

*Weitz v. State*,
　182 Misc. 2d 320 (N.Y. Ct. Cl. 1999) ..............................................................................32

*Yerdon v. Henry*,
　91 F.3d 370 (2d Cir. 1996) ...............................................................................................16

*Yu v. Vassar Coll.*,
　97 F. Supp. 3d 448 (S.D.N.Y. 2015).................................................................... 10, 11, 32

*Yusuf v. Vassar Coll.*,
    35 F.3d 709 (2d Cir. 1994) ...................................................................................*passim*

*Z.J. v. Vanderbilt Univ.*,
    355 F. Supp. 3d 646 (M.D. Tenn. 2018) ...........................................................12

**Statutes**

20 U.S.C. § 1681(a) ...................................................................................................10

N.Y. Educ. L., art. 129-B ..........................................................................................33

N.Y. Educ. L. § 6349 *et. seq.* ....................................................................................21

N.Y. Exec. Law § 296(4) .............................................................................................8

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..........................................................................................1, 8

https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf ....................21

Defendants[1] submit this memorandum of law in support of their motion to dismiss the amended complaint (the "Amended Complaint" or "AC") (Dkt. 21) of plaintiff John Doe ("Doe" or "Plaintiff"), pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## PRELIMINARY STATEMENT

On January 28, 2019, this Court rejected Plaintiff's motion for a temporary restraining order and preliminary injunction seeking to preclude NYU from completing a student disciplinary hearing regarding whether Doe had violated NYU's policy against sexual misconduct. *See* Dkt. 10. In that application, Doe asserted that the impending hearing had "been set up to achieve the result of affirming NYU's . . . determination that [Plaintiff] is guilty of sexual misconduct and to impose all of the sanctions . . . to scapegoat him for NYU's prior shortcomings in addressing allegations of sexual abuse." Dkt. 7 at 7. In rejecting this application, the Court recognized that "the outcome of the hearing" could be in Doe's favor, in which event "[i]t seems . . . that there is no claim for injunctive relief and there really is no complaint." *See* Dkt. 14 (the "1/28/19 Tr.") at 6:21-24. As the Court is aware, Plaintiff's representations turned out to be wholly inaccurate. The second disciplinary hearing was not rigged against him; to the contrary, as he alleges, "Doe was found to be innocent of any sexual misconduct, or any violation of NYU policy whatsoever, and no sanctions were ultimately imposed." AC ¶ 155. Doe's accuser appealed, but her appeal was denied in early March. *Id.* ¶¶ 153-54. From NYU's perspective, that should have been the end of the matter.

However, after reflecting for two months, Doe filed an Amended Complaint that re-framed his Title IX discrimination and breach of contract causes of action, added new state-law discrimination and tort claims, and sought money damages. In the new causes of action, Plaintiff

---

[1] New York University ("NYU"), Craig Jolley, Samuel Hodge, Colleen M. Maeder, Mathew Shepard, Mary Signor, Jacqueline Cornell, Jasmine Wade, Daisy Tomaselli, and Jeffrey Metzler (collectively, "Defendants").

opted to indiscriminately sue nine individual NYU employees, ranging from the investigators who produced the report that ultimately resulted in a finding in Doe's favor, to an administrator who merely attended Plaintiff's initial disciplinary hearing.

Doe's sole federal claim is that he is the victim of alleged discrimination against him on the basis of his male gender, in alleged violation of Title IX of the Education Amendments of 1972. This claim is baseless. Plaintiff has abandoned any "erroneous outcome" claim under Title IX, and instead proceeds on a theory of "selective enforcement." *See* Dkt. 34 (7/10/19 Tr.) at 4:21-25. That claim fails as a matter of law, for two principal reasons. First, Doe has not alleged that NYU treated any similarly situated female differently than it treated him, which is the *sine qua non* of a Title IX selective enforcement claim. Courts around the country regularly dismiss claims where a male plaintiff offers only naked allegations of selective treatment, with no indication that a similarly situated female would have been treated differently. Indeed, to Defendants' knowledge, Plaintiff would be the first student *cleared* of any sexual misconduct in a university disciplinary proceeding to successfully bring a Title IX claim, a result that is particularly unwarranted on the basis of the unsupported and conclusory allegations that Doe makes here. Second, the Amended Complaint contains no well-pleaded allegations that Doe has been the victim of discrimination on the basis of his gender. Doe's allegations of gender bias are conclusory and utterly unsupported by any factual basis. And while Plaintiff complains about the handling of NYU's internal investigation and disciplinary process, he alleges no "clearly irregular investigative or adjudicative process," as required to create an inference of gender bias. *See Menaker v. Hofstra Univ.*, No. 18-3089-cv (2d Cir. Aug. 15, 2019), slip op. at 21 n.50.

Doe's state-law claims also fail, for a variety of reasons: his conclusory allegations of gender and ethnicity bias are insufficient under state discrimination law; his breach-of-contract

claims identify no plausibly actionable breach; and his tort claims are improperly duplicative and facially insufficient.  As to his claims against the individual Defendants, Doe alleges no facts that would provide the basis for individual liability (and, as to some Defendants, he makes no allegations of wrongdoing at all).  For all the reasons that follow, the Court should dismiss the Amended Complaint with prejudice.

## FACTUAL ALLEGATIONS AND BACKGROUND

### A.     The Parties

**Plaintiff.**  Plaintiff is an undergraduate at NYU's Tisch School of the Arts, where he has been enrolled since August 2016.  AC ¶ 9.  Plaintiff alleges that he is "Asian American."  *Id.* ¶ 4.

**Defendants.**  At all relevant times, Defendants Signor, Hodge, Tomaselli, Cornell, and Wade were employees in NYU's Office of Equal Opportunity (the "OEO").  *Id.* ¶¶ 16, 32, 36, 40, 43.  The OEO is responsible for conducting sexual misconduct investigations pursuant to NYU's "Sexual Misconduct, Relationship Violence, and Stalking Policy" (the "NYU Policy"), via the procedures established in NYU's "Reporting, Investigating, and Resolving Sexual Misconduct, Relationship Violence, and Stalking Complaints Against Students" procedures (the "NYU Procedures").[2]  *See* AC ¶¶ 64, 77.  Defendants Jolley, Shepard, and Maeder were employees in NYU's Office of Student Conduct and Community Standards (the "OSC"), which is responsible for holding disciplinary proceedings concerning student conduct at NYU.  *Id.* ¶¶ 12, 20, 28, 64, 89.  At the time of the alleged conduct, Defendant Metzler was an Associate General Counsel in NYU's Office of the General Counsel.  *Id.* ¶ 24.

---

[2] While the Amended Complaint repeatedly invokes the NYU Policy and the NYU Procedures, they are not attached as exhibits.  The Court may consider these documents, as well as each of the Investigative Reports and the written decisions of the adjudicators and appeals panels, on this motion as they are "documents incorporated in the complaint by reference."  *See McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir. 2007).  These documents are submitted to the Court with the Declaration of Ira M. Feinberg, dated August 16, 2019 ("Feinberg Declaration"), with redactions and/or pseudonyms applied to protect student privacy as needed.

### B.     The Alleged Sexual Assault

During the fall of 2016, Plaintiff met Jane Roe, a fellow first-year Tisch student.  *Id*. ¶ 52.

On March 17, 2017, Roe went to a party in the dormitory room of another student around 9:00

p.m., where she consumed alcohol.  *Id.* ¶ 53.  Later that night, after exchanging messages over

Facebook, Doe and Roe met in a study room in their dormitory around 3:00 a.m.  *Id.* ¶ 57.  Once

in the study room, Doe and Roe initially engaged in consensual sexual activity, including kissing

and oral sex.  *Id.* ¶ 58.  From that point, their accounts diverge.  Roe has stated that Doe

"verbally pushed" her to engage in intercourse, she objected, and that she "blacked out from

intoxication and came to during sexual intercourse."  Feinberg Decl., Ex. C (the "First

Investigative Report" or "FIR") at 4.  Doe avers that that he did not observe Roe to be drunk at

the time, and that the intercourse was consensual.  AC ¶ 59.

### C.     NYU's Investigation and Initial Decision

Roe reported an alleged sexual assault by Doe to NYU's OEO on February 21, 2018.

Feinberg Decl., Ex. F (Appeal Panel Decision) at 4.  On March 19, 2018, Hodge, Cornell, and

Tomaselli (the OEO investigators) conducted an initial interview of Roe.  FIR at 1.  Hodge,

Cornell, and Tomaselli then conducted two interviews of Doe, one in person on April 13, 2018,

and one via telephone on May 3, 2018.  *Id.*

Under Section III(H) of NYU's Procedures, a Title IX investigator must decide "whether

a reasonable fact-finder could determine that there is sufficient evidence to support a finding that

a violation" of NYU's Policy occurred.  NYU Procedures at 6.   On June 11, 2018, Hodge,

Cornell, and Tomaselli submitted their First Investigative Report to Jolley and Signor.  FIR at 8-

9.  After considering the statements of Doe and Roe, comments made by Doe and Roe in

response to a draft of the FIR, and videos of Roe that appeared to show her in an intoxicated

state, the investigators concluded that there was "sufficient evidence to be considered by an

adjudicator" as to whether Doe violated NYU's Policy, and referred the matter to the OSC for further action, *id.* at 1-9.  On June 13, 2018, Jolley asked the OEO to make efforts to interview three additional witnesses, two of whom ultimately sat for interviews, including one identified by Doe in his comments to the draft report.  Feinberg Decl. Ex. D (Supplemental Report or "Supp. Report") at 1-2.  Incorporating the statements of those new witnesses, Hodge and Wade issued their Supplemental Report on July 24, 2018, which again concluded that a hearing was warranted.  *Id.* at 6.

That hearing was held on August 22, 2018; Jolley served as the adjudicator.  AC ¶¶ 102, 104.  At the hearing, both Roe and Doe provided statements and answered questions from Jolley. Feinberg Dec. Ex. E ("Jolley Opinion" or "Jolley Op.") at 1-2.  Two witnesses testified via Skype:  one friend of Roe's and one friend of Doe's.  AC ¶ 108.  In addition, Hodge provided a summary of the investigative reports, and the parties had the opportunity to submit questions to each other or to the witnesses via the adjudicator.  *Id.*  Based on this evidence, Jolley determined that a preponderance of the evidence supported a finding that Doe had committed a sexual assault in violation of NYU's Policy, because Roe had been so intoxicated as to be "incapacitated" within the meaning of the Policy, and thus unable to give affirmative consent (as required) to sexual intercourse.  *Id.* at 2-4.[3]  Jolley did not reach Roe's claim that she had "told [Doe] 'no' twice" before intercourse, thus withdrawing her consent.  *Id.* at 4.  Jolley imposed a suspension of five semesters on Doe, among other sanctions, though all sanctions were stayed pending appeal.  AC ¶ 114; *id.* at ¶ 120.

---

[3] The NYU Policy defines "incapacitation" in Section VIII(C); in cases of alcohol use, "incapacitation is a state beyond drunkenness or intoxication," and evaluating incapacitation "requires an assessment of whether a Respondent knew or should have been aware of the Complainant's incapacitation . . . when viewed from the perspective of a sober, reasonable person in the Respondent's position."

### D.    Plaintiff Appeals, and Further Investigation and a New Report Follow.

As was his right under NYU's Procedures, Doe appealed Jolley's decision to a panel comprised of three members of NYU faculty and staff.  *Id.* ¶¶ 120-21.  The panel sustained the appeal and vacated Jolley's decision finding Doe responsible.  *See* Feinberg Decl. Ex. F (Appeal Panel Decision) at 8-9.  The panel determined that "additional evidence" was required on Roe's level of intoxication, especially given the "conflicting evidence" on the issue, and that the investigators, on remand, should make "all reasonable efforts" to interview Roe's suitemate and other students who were present at the party Roe had attended that night.  *Id.* at 5-9.

After remand, the OEO conducted further investigation.  On November 27, 2018, Hodge, Cornell, Tomaselli, and Wade issued a new investigative report to Jolley and Signor, in which they described their interviews with additional witnesses.  *Id.*, Ex. G.  After reviewing this additional evidence, the investigators determined that there was still "sufficient evidence to be considered by an adjudicator" as to whether Doe violated NYU's Policy.  *Id.* at 20.

### E.    Plaintiff Is Found Not Responsible.

On January 28, 2019, a second disciplinary hearing regarding the allegations against Doe was held; the Hon. Jane Cutler Greenspan, a former justice of the Pennsylvania Supreme Court and former prosecutor unaffiliated with NYU or any of the involved students, served as adjudicator.  AC ¶¶ 149-50.  In addition to the testimony at the hearing, Justice Greenspan conducted a *de novo* review of the evidence, including the OEO's investigative reports, audio recordings of the prior hearing, and the decisions of Jolley and the appeal panel.  Feinberg Decl. Ex. H (the "Greenspan Opinion" or "Greenspan Op.").

On February 4, 2019, Justice Greenspan issued a written decision concluding that Doe was not responsible for sexual assault under NYU's Policy.  *Id.*  Justice Greenspan ruled that the evidence did not demonstrate a violation of NYU's Policy for three reasons:  (1) Roe was not

incapacitated under NYU's Policy; (2) Doe did not use coercive conduct to obtain consent; and (3) a reasonable person would have understood Roe to have given consent to intercourse. *Id.* ¶ 152.   As to incapacitation, Justice Greenspan considered Roe's testimony that she consumed a "large amount of alcohol" that night, but determined that on balance the statements of other witnesses supported "at most intoxication" and not incapacitation.   Greenspan Op. at 3. On coercive conduct, Justice Greenspan cited Roe's text stating that she wanted to meet "the cute Asian boy," and did not credit Roe's arguments that phrases like "come on" and "it's fine" rose to the level of coercion. *Id.* at 5.   And in assessing the "unusually close" question of affirmative consent, Justice Greenspan credited Doe's argument that a reasonable person in the same circumstances would have understood Roe to have provided affirmative consent, notwithstanding her initial declination. *Id.* at 2, 5-6.

Roe then appealed, unsuccessfully.   AC ¶¶ 153-54.   The result, according to Plaintiff, is that NYU found him "to be innocent of any sexual misconduct, or any violation of NYU policy whatsoever," and that "no sanctions were ultimately imposed against" him. *Id.* ¶ 155.

### F.   Procedural History

On January 25, 2019, Plaintiff filed a complaint and Order to Show Cause seeking emergency injunctive relief precluding NYU from conducting the second disciplinary hearing, scheduled for three days later.   Dkt. 2, 5.   After expedited briefing and oral argument, the Court denied Plaintiff's request for an injunction.   Dkt. 10.

Approximately three months after receiving the favorable decision from Justice Greenspan and more than two months after Roe's appeal was denied, Plaintiff filed the Amended Complaint.   Dkt. 21.   He advances six claims.   Three are against NYU only:   (1) violation of Title IX; (2) breach of contract; and (3) breach of the covenant of good faith and fair dealing. AC ¶¶ 161, 204, 228.   Plaintiff also advances three claims against NYU and each of the

individual Defendants:   (4) violations of the New York State Human Rights Law, N.Y. Executive Law § 296(4) (the "NYSHRL"); and common-law claims for (5) intentional infliction of emotional distress ("IIED") and (6) negligent infliction of emotional distress ("NIED").   Each of these claims is premised on Doe's allegations that, even though NYU allegedly found Doe "innocent" and imposed "no sanctions," it nevertheless unnecessarily prolonged the investigation (but should also have been more thorough), failed to provide him proper notice of the allegations, and allegedly violated NYU's Procedures.  *See, e.g.*, AC ¶¶ 81, 85-86, 101.

At a pre-motion conference on July 10, 2019, Doe's counsel confirmed to the Court that Plaintiff's Title IX theory "is one of selective enforcement and not erroneous outcome."  7/10/19 Tr. at 4:21-25.   And in a joint status report submitted on July 24, 2019, Plaintiff reported, pursuant to the Court's instructions, that he "does not intend to further amend the Amended Complaint."  *See* Dkt. 32 at 2.

## ARGUMENT

## I.    MOTION TO DISMISS STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff must plead enough facts "to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Twombly*, 550 U.S. at 570.  But the court is not bound to accept legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*.  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy,*

*LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In evaluating the sufficiency of a plaintiff's allegations, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010) (internal citations omitted). Allegations "that are 'contradicted by more specific allegations or documentary evidence' are not entitled to a presumption of truthfulness." *Targum v. Citrin Cooperman & Co., LLP*, 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013) (quoting *Kirkendall v. Halliburton,* 707 F.3d 173, 175 n.1 (2d Cir. 2013)); *see also Anthes v. New York Univ.*, 2018 WL 1737540, at *2 n.3 (S.D.N.Y. Mar. 12, 2018) (Carter, J.) ("[T]he Court is not required to accept as true pleadings that are directly contradicted by exhibits appended to the complaint.") (quotations omitted), *reconsideration denied*, 2018 WL 2383121 (S.D.N.Y. Apr. 30, 2018), *aff'd sub nom. Anthes v. Nelson*, 763 F. App'x 57 (2d Cir. 2019). If a pleading contains insufficient factual allegations to raise a right to relief above the speculative level, it must be dismissed. *See Twombly*, 550 U.S. at 555.[4]

## II.    PLAINTIFF'S TITLE IX CLAIM FAILS AS A MATTER OF LAW.

Plaintiff's claim is that even though "no sanctions were ultimately imposed against him" by NYU (AC ¶ 155), he is entitled to recover money damages for the supposedly "selective" manner in which the university investigated and initially adjudicated Roe's sexual assault allegations. Under well-established law, Plaintiff's allegations do not state a cause of action for selective enforcement. Plaintiff offers nothing but conclusory assertions about his supposedly selective treatment, which are insufficient, and alleges no facts indicating that NYU has treated a

---

[4] "These federal pleading rules and standards . . . prevail in all civil actions." *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (internal citations and quotations omitted). Thus, the court "must test state-law claims against the standard in *Twombly* and *Iqbal*." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017).

similarly situated female any differently, which renders his claim facially deficient.  Moreover, Plaintiff has failed to allege any facts from which the Court could plausibly infer, even at the pleading stage, that NYU's investigation of Doe—which, after all, allegedly exonerated him—was motivated by gender bias.

### A.      Title IX Legal Standards

Title IX of the Education Amendments of 1972 provides:  "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]"  20 U.S.C. § 1681(a).  "This provision, which is enforceable through an implied private right of action, was enacted to supplement the Civil Rights Act of 1964's bans on racial discrimination in the workplace and in universities."  *Doe v. Columbia Univ.*, 831 F.3d 46, 53 (2d Cir. 2016).  Thus, "[c]ourts have interpreted Title IX by looking to the body of law developed under Title VI, as well as the caselaw interpreting Title VII."  *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994).

Because Title IX prohibits (under covered circumstances) subjecting a person to discrimination on account of sex, it is understood to 'bar[ ] the imposition of university discipline where gender is a motivating factor in the decision to discipline.'"  *Columbia*, 831 F.3d at 53 (quoting *Yusuf,* 35 F.3d at 715).[5]  "In the context of university discipline, the Second Circuit has recognized two categories of Title IX claims:  (1) claims of an erroneous outcome from a flawed proceeding, and (2) claims of selective enforcement."  *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 461 (S.D.N.Y. 2015).  In all events, a plaintiff must allege that a bias against the plaintiff arising from his or her gender motivated the challenged actions.  *See Columbia*, 831 F.3d at 57.

---

[5] Plaintiff's allegations of "ethnicity" discrimination are not actionable under Title IX.  *See Bd. of Ed. of City Sch. Dist. of City of N.Y. v. Harris*, 622 F.2d 599, 604 n.4 (2d Cir. 1979).

**B.      Plaintiff Has Failed to State a Cause of Action for Violation of Title IX.**

**1.      Plaintiff Has Not Alleged the *Sine Qua Non* of a "Selective Enforcement" Claim—A Similarly Situated Female Who Was Treated Differently Than He Was.**

Plaintiff's selective enforcement claim—the sole theory of Title IX liability he identified in his response to Defendants' pre-motion letter, *see* Dkt. 24, and at the resulting conference, *see* 7/10/19 Tr. at 4:21-25—fails as a matter of law.

"[T]o state a selective enforcement claim, a plaintiff must plausibly allege that 'regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender.'" *Rolph v. Hobart & William Smith Coll's*, 271 F. Supp. 3d 386, 403–04 (W.D.N.Y. 2017) (quoting *Yusuf*, 35 F.3d at 715).  To do so, a plaintiff must allege "particular circumstances suggesting a meaningful inconsistency in punishment and particular circumstances suggesting that gender bias was a motivating factor behind the inconsistency."  *Scott v. WorldStarHipHop, Inc.*, 2011 WL 5082410, at *6 (S.D.N.Y. Oct. 25, 2011).  "Applying that requirement, courts have dismissed claims in the absence of allegations that a school treated similarly situated members of the opposite sex—that is, members of the opposite sex facing comparable disciplinary charges—differently."  *Prasad v. Cornell Univ.*, 2016 WL 3212079, at *18 (N.D.N.Y. Feb. 24, 2016) (collecting cases); *see also Yusuf*, 35 F.3d at 716 (affirming dismissal of selective enforcement claim where plaintiff failed to allege that any similarly accused woman was treated differently); *Yu*, 97 F. Supp. 3d at 480 (dismissing selective enforcement claim where plaintiff was unable to show "that a female was in circumstances sufficiently similar to his own and was treated more favorably by the university"); *Rolph*, 271 F.3d at 404 (same).  Indeed, the same threshold requirement is applied to claims of selective enforcement brought under a wide array of statutes.  *See, e.g.*, *Albert v. Carovano*, 851 F.2d 561, 572-74 (2d Cir. 1988) (*en banc*) (same for Section 1981 claim).

Here, Plaintiff alleges nothing at all suggesting that NYU has treated a similarly situated female accused of sexual assault differently than Doe in any respect. Doe alleges no facts about *any* comparable female students accused of sexual assault, or any decisions that NYU did or did not make with respect to investigations or punishments of females for sexual misconduct. The failure to identify a single comparator alone is dispositive, and requires dismissal. *See Yusuf*, 35 F.3d at 715; *see also Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 (9th Cir. 2019) (affirming grant of motion to dismiss selective-enforcement claim) ("Significantly, the complaint does not claim that any female University students have been accused of comparable misconduct, and thus fails to allege that similarly situated students—those accused of sexual misconduct—are disciplined unequally."); *Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d 939, 957 (N.D. Ill. 2017) ("*CCC*") ("Doe fails to allege that a female who, like him, had been accused of sexual assault would not have been subjected to the exact same disciplinary proceedings. Without these allegations, Doe's selective enforcement claim fails."), *aff'd*, --- F.3d ---, 2019 WL 3796000 (7th Cir. Aug. 13, 2019); *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 679 (M.D. Tenn. 2018) ("In short, Z.J. has not alleged that he was unfairly investigated or disciplined where similarly-situated females facing disciplinary charges were not.").

Indeed, while the Amended Complaint runs to 54 pages and 230 paragraphs, there is little in it that even arguably relates to a selective enforcement theory. Doe's "naked allegation[s]" that NYU has selectively enforced its policies against him (AC ¶¶ 2, 169-70, 191-92) are "too conclusory to survive a motion to dismiss." *Albert*, 851 F.2d at 572; *accord Kajoshaj v. N.Y.C. Dep't of Educ.*, 543 F. App'x 11, 14 (2d Cir. 2013) (plaintiffs' "'naked allegation' that they were treated differently from non-Muslim, non-Albanians [did not] demonstrate a plausible entitlement to Title VI relief"). Equally unavailing is Plaintiff's allegation, made

"upon information and belief," that some unspecified "statistical evidence" would "indicat[e] that males are *invariably* found guilty of sexual misconduct at NYU." AC ¶ 178 (emphasis added). Doe's speculation that statistics *might* support his claim is the sort of threadbare assertion that cannot support a selective enforcement claim, even at the pleading stage. *See Doe v. Univ. of Massachusetts-Amherst*, 2015 WL 4306521, at *9 (D. Mass. July 14, 2015) ("*UMass*") ("Though [plaintiff] asserts that male respondents in sexual misconduct cases . . . are invariably found guilty, regardless of the evidence, or lack thereof, these statements are unsupported by even minimal data or credible anecdotal references; they are the type of conclusory statements that *Iqbal* and *Twombly* do not allow the court to consider.") (internal citations and quotations omitted); *see also Doe v. Univ. of Dayton*, 766 F. App'x 275, 284 (6th Cir. 2019) (affirming dismissal of selective enforcement claim where plaintiff had alleged, on information and belief, that university's disciplinary files would show pattern of gender bias in decision-making).[6]

It bears noting that Doe's suggestion that males at NYU are *invariably* found responsible for sexual assault is pure hyperbole, contradicted by other facts in the complaint, and entitled to no weight. Plaintiff alleges that *he* was found "to be innocent of any sexual misconduct, or any violation of NYU policy whatsoever," AC ¶ 155, so the term "invariably" cannot be taken literally. And the Amended Complaint elsewhere alleges that, in August 2018, "a female NYU student and alleged rape victim" posted to social media that NYU had "decline[d] to sanction two male students for alleged nonconsensual sex." *Id.* ¶ 135. Taken together, the Amended Complaint's *only* references to adjudications of sexual assault claims against male NYU students

---

[6] *See also Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 533 (S.D.N.Y. 2013) (Title VI) ("[A]lthough he makes the assertion that BMCC professors 'intentionally treated all white males ... in an adverse manner by maliciously downgrading their exams,' Manolov has failed to allege any *facts* suggesting that he [was] treated differently").

involve instances where the males were not found "guilty" at all.

Beyond that, Plaintiff's complaints about his perceived mistreatment by NYU are irrelevant to a selective enforcement gender bias theory. Some of those complaints actively *negate* the theory. For example, Doe alleges that NYU's OEO investigators did not interview any witnesses other than Doe or Roe before issuing the First Investigative Report, "[d]espite the fact that *both Jane Roe and John Doe* identified numerous witnesses that had relevant information," *id.* ¶ 82 (emphasis added)—but this allegation of equal treatment of the female complainant and male accused contradicts any claim of selective enforcement. More broadly, even if Plaintiff had plausibly alleged that NYU's investigation of him was "inherently flawed" (*id.* ¶ 92)—and, as outlined below, he has not—that would be insufficient to sustain a cause of action absent plausible allegations that a female NYU student under investigation for sexual assault has been treated differently. *See Albert*, 851 F.2d at 573. Doe makes no such allegations, and therefore his selective enforcement claim fails as a matter of law.[7]

### 2. The Court Should Not Create a New Category of Title IX University-Discipline Claim.

Plaintiff has expressly abandoned any Title IX claim on an "erroneous outcome" theory.

---

[7] This case has nothing in common with cases in which courts have sustained Title IX selective enforcement claims at the pleading stage. For example, while "[a]n accused student and his or her accuser can be compared to show selective enforcement if the parties allege misconduct against each other," "if the accused student did not similarly initiate or attempt to initiate a complaint against his or her accuser, the two cannot be compared." *Rossley v. Drake Univ.*, 342 F. Supp. 3d 904, 933 (S.D. Iowa 2018). Doe alleges nothing of the sort here. *See* AC ¶ 60; *cf. Marshall v. Indiana Univ.*, 170 F. Supp. 3d 1201, 1210 (S.D. Ind. 2016) (sustaining claim where male student claimed that he previously reported a sexual assault by a female student and that the university ignored his claim). Nor does Plaintiff allege that NYU "took proactive steps to encourage [Roe] to file a formal complaint against him," *Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 223 (D. Mass. 2017), or "took the initiative to transform Roe's complaint into a claim that she did not intend." *Doe v. Syracuse Univ.*, 341 F. Supp. 3d 125, 139 (N.D.N.Y. 2018). Rather, Plaintiff alleges that Roe lodged the complaint in question. *See* AC ¶¶ 75-76; *Prasad*, 2016 WL 3212079, at *18 ("The decision to initiate the proceeding here was made by [Jane] Doe, so Plaintiff presents no viable selective enforcement claim against Cornell on this basis.").

*See supra* at 8.  The Amended Complaint does not advance any other previously recognized theory of Title IX liability, such as deliberate indifference, *see LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633 (1999), or hostile environment, *see Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011).  Accordingly, the Court can and should rely on Plaintiff's representation that he is proceeding on a selective enforcement theory, and dismiss the Title IX claim for the reasons explained in Section II.B.1.  However, to the extent that Plaintiff is asking the Court to sustain a new kind of Title IX claim based solely on the supposed flaws in NYU's investigation, the Court should decline to do so.

*First*, such a theory would be unprecedented.  To Defendants' knowledge, no court has ever been presented with, much less accepted, a discrimination claim by a student who was cleared by a university's internal disciplinary process and subjected to "no sanctions" (AC ¶ 155).  Indeed, in declining to enjoin NYU from concluding its internal disciplinary process, the Court recognized that, if that process ultimately was resolved in Plaintiff's favor, he really would have "no complaint."  *See* 1/28/19 Tr. at 6:21-24.  Defendants respectfully submit that the Court's intuition was right:  having ultimately prevailed in NYU's disciplinary process, "absent a claim of selective enforcement," *Yusuf*, 35 F.3d at 715, Doe does not have a cause of action.

*Second*, recognizing a Title IX cause of action based solely on the alleged flaws in the university's investigation would be inconsistent with the common law, which does not recognize "negligent investigation" claims, *see infra* at 32, and with precedent from the employment-law context, which the Second Circuit has found instructive in the Title IX setting.  *See, e.g.*, *Columbia*, 831 F.3d at 55-56.  Under Title VII, discrimination claims are not cognizable unless an employer has taken an "adverse employment action" that is "material," *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 72 (2d Cir. 2019), meaning an action "that substantially alters the

terms and conditions of a plaintiff's employment." *Dobrynio v. Cent. Hudson Gas & Elec. Corp.*, 419 F. Supp. 2d 557, 564 (S.D.N.Y. 2006). "Typical adverse employment actions may include termination from a job, decrease in salary, material reduction in benefits or responsibilities, or a less distinguished title." *Miksic v. TD Ameritrade Holding Corp.*, 2013 WL 1803956, at *3 (S.D.N.Y. Mar. 7, 2013). But actions that merely cause "embarrassment or anxiety" are "intangible consequences" that "are not materially adverse alterations," and do not support a cause of action. *Castro v. N.Y.C. Bd. of Educ.*, 1998 WL 108004, at *7 (S.D.N.Y. Mar. 12, 1998). Indeed, the Second Circuit recently stated that an "adverse action against a student or employee" is usually part of "a *prima facie* case of sex discrimination" under Title IX. *See Menaker*, slip op. at 20-21 (describing the "general principle[s]" of *Columbia*).

Viewed through Title VII's lens, Doe here alleges only a series of non-actionable harms. Allegations that Plaintiff suffered "interruptions in his academic and social well-being at college" as a result of being "under investigation" (AC ¶¶ 155, 157) are both conclusory and flatly insufficient, because the Second Circuit has concluded that the mere imposition of disciplinary charges against a plaintiff is not, in and of itself, sufficiently "material" to support a claim. *See Yerdon v. Henry*, 91 F.3d 370, 378 (2d Cir. 1996) ("The district court concluded that the filing of internal . . . charges against Yerdon did not constitute retaliation because [they] had not yet been adjudicated and that, if the charges were ultimately dismissed, Yerdon would not have suffered any adverse effect from them. We agree."). Nor is the mere fact that Doe was "investigated" sufficient. *See Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 225–28 (E.D.N.Y. 2016) ("Plaintiff's claim of an adverse employment action is based entirely on the fact that an investigation was conducted. However . . . the law is clear that investigations alone are not adverse employment actions.") (collecting cases). Plaintiff alleges that he attended

two interviews and two disciplinary proceedings (AC ¶¶ 82, 112, 151), but not that NYU imposed any restrictions or other consequences on his academic or university standing. These allegations are insufficient to demonstrate that he suffered any materially adverse action as a result of the disciplinary proceedings.[8]

*Third*, adopting a theory that a university violates Title IX by conducting a "flawed investigation" would put academic institutions like NYU in an intolerable bind. Title IX, and related state and local requirements, already require universities to carefully balance the interests of alleged victims and accused students. To afford a case of action to students against whom "no sanctions" are imposed, based on their dissatisfaction with the university's processes, would throw that balance into disarray, subjecting institutions to an irreconcilable set of conflicts. As a practical matter, it would open the courthouse doors to almost *any* student accused of sexual misconduct: (1) students cleared of sexual assault allegations will *always* be able to claim that an accuser's allegations were inherently incredible (and thus that the accused should have been cleared more readily), or that the process took too long; and (2) accused students will *always* be able to allege "damages" in the form of stress and anxiety, since being accused of sexual misconduct by a fellow student is obviously a stressful and unpleasant experience.

The *Yusuf* framework for university discipline cases resolves these competing concerns by requiring students to plausibly allege that they were erroneously subjected to university sanctions or that they were selectively targeted because of their gender. Doe has done neither, and NYU respectfully submits that this Court need not, and should not, go any further.

---

[8] Plaintiff's claims that he suffered subjective mental harm, such as "feelings of self-doubt and extremely negative thoughts" as a result of the investigation (AC ¶ 156) would likewise be insufficient under Title VII. *See, e.g.*, *Eldridge v. Rochester City Sch. Dist.*, 968 F. Supp. 2d 546, 557-58 (W.D.N.Y. 2013).

### C.     None of Plaintiff's Allegations Support Even a Minimal Plausible Inference of Gender Bias.

Even if Plaintiff had advanced a cognizable Title IX theory, on selective enforcement grounds or otherwise, his claim would still fail because he offers only "conclusory allegation[s] of gender discrimination."  *Yusuf*, 35 F.3d at 715.  The Amended Complaint is devoid of any "particularized allegation relating to a causal connection" between the challenged acts and bias, *id.*, and Doe's attempt to align himself with differently-situated claimants is unavailing.

### 1.     Plaintiff Has Alleged No "Direct" Evidence of Gender-Based Animus.

While the Amended Complaint is replete with conclusory (and thus irrelevant) claims of gender bias,[9] Plaintiff alleges no *facts* reflecting any such bias, such as "statements by members of the disciplinary tribunal" or "pertinent university officials."  *Yusuf*, 35 F.3d at 715.  Doe's claim of supposedly "overt statements" reflecting bias (AC ¶ 176)—a passage of Jolley's initial decision criticizing Doe for his "failure to recognize the impact and harm caused by his conduct" (*id.* ¶ 115-16)—mischaracterizes those statements and runs headlong into contrary precedent.

For example, Plaintiff claims that Jolley, in his August 2018 opinion, "admits that his decision was not the product of an objective view of the evidence, but rather motivated by his own bias that [Roe], as the female, was a victim of her encounter with [Doe], the male."  AC ¶ 116.  This claim is baseless, and contradicted by the documentary record.  As the Court can see for itself by reviewing the opinion (Jolley Op. at 2-4), Jolley made no "admission" that he was not objectively weighing the relevant evidence.

Plaintiff also asserts that Jolley's consideration of the evidence and imposition of sanctions was influenced by what "Jolley perceived" as a lack of remorse on Doe's part.  AC ¶¶ 115-16.  But once again, there is no support for the notion that Jolley did anything other than

---

[9] *E.g.* AC ¶¶ 4-5, 13, 17, 21, 25, 29, 33, 37, 41, 44, 69, 73-74, 84.

consider the evidence fairly; the cited passage from the opinion appears in a section discussing the "determination of sanctions," not the evidence relating to Doe's alleged responsibility for sexual assault.  *See* Jolley Op. at 4.  In other words:  Plaintiff's only well-pleaded allegation with respect to Jolley's opinion is that he considered Doe's lack of remorse when imposing punishment for a violation of an NYU policy.  But it is well settled in the criminal context that judges are "entitled to rely on [an offender's] lack of remorse" in sentencing, *United States v. Kalume*, 684 F. App'x 80, 85 (2d Cir. 2017), and that is equally true here.  *See* NYU Procedures § IV(C) (in imposing sanctions, an adjudicator may consider acceptance of responsibility).

The same applies to Jolley's allegedly untoward focus on prior interactions between Doe and Roe (AC ¶¶ 117-19)—circumstances that are plainly relevant to the question of consent and the parties' likely expectations.  *See* NYU Procedures § III(C).  And Doe's bare speculation that Jolley's decision was influenced by stereotypes about "romantic" behavior is not a reasonable inference.  As Judge Torres explained last year in dismissing a Title IX claim on the pleadings:

> Plaintiff's primary argument in favor of gender bias is that the Disciplinary Review Panel found Claimant "distressed by her experience" and Plaintiff "lacking in empathy and therefore not credible."  Such a statement, Plaintiff contends, reflects stereotypical gender roles and thus suggests gender bias. The Court disagrees. The statement about Plaintiff's lack of empathy is gender neutral. That is not to deny that statements by members of the disciplinary tribunal could suggest gender bias, but to suffice as such a statement, it must have a *bona fide* connection to gender.  By way of benchmark, the landmark gender stereotyping case, *Price Waterhouse v. Hopkins*, involved supervisors describing a female employee as "overly aggressive," "macho" and "somewhat masculine," and she was advised that in order to improve her chances she should "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." Measured against the sex stereotyping language in *Price Waterhouse*, the concepts of being "distressed" or showing "empathy" reflect no gender connotation.

*B.B. v. The New Sch.*, 2018 WL 2316342, at *7 (S.D.N.Y. Apr. 30, 2018) (internal citations and quotations omitted).  There is nothing remotely indicative of gender bias in Jolley's opinion.

## 2.  Plaintiff Has Not Alleged Any "Clear Procedural Irregularities."

Plaintiff claims that certain alleged flaws in NYU's investigation and adjudication create a circumstantial inference of gender bias. *E.g.* AC ¶ 125. Not so. In *Menaker*, the Second Circuit "emphasize[d] that [its] standard requires *clear* irregularities to raise an inference of bias," and that "minimal irregularities (absent other indicia of bias) do not suffice to suggest discrimination." *Menaker*, slip op. at 21 n.50. Doe's allegations do not measure up.

*First*, Plaintiff broadly claims that it was improper for NYU to conduct its investigation and initial adjudication pursuant to policies developed under supposedly "victim"-centered guidance issued by the U.S. Department of Education ("DOE")'s Office of Civil Rights ("OCR") in 2011. AC ¶ 138. The allegation that NYU's procedures tracked gender-neutral federal guidance creates no inference of bias. *See Doe v. Univ. of Chicago*, 2017 WL 4163960, at *5 (N.D. Ill. Sept. 20, 2017) (a "university's adoption of positions recommended by the federal government does not in turn suggest that the university did so because of gender bias—all it plausibly suggests is that the university sought to comply with OCR's recommendations") (internal citations and quotations omitted). Courts have repeatedly held that an alleged tilt in favor of *victims* is not probative of *gender* bias. *See CCC*, 299 F. Supp. 3d at 955-56 ("[E]ven viewing the allegations in the light most favorable to Doe and assuming CCC's process was biased, if anything, CCC's bias was in favor of victims of sexual assault."); *UMass*, 2015 WL 4306521, at *8 (same).

Doe then alleges that the 2011 OCR guidance was "withdrawn in September 2017" and replaced with "interim" guidance that NYU supposedly failed to follow. *See* AC ¶¶ 138-45. But that interim guidance itself states that DOE "intends to engage in rulemaking on the topic of schools' Title IX responsibilities concerning complaints of sexual misconduct" and "will solicit

input from stakeholders and the public during that rulemaking process." *See* https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf. DOE's position is that this interim document "constitutes a bare statement of the agency's opinion and does not produce legal consequences." *SurvJustice Inc. v. DeVos*, 2018 WL 4770741, at *10 (N.D. Cal. Oct. 1, 2018); *see also id.* ("Nor does the 2017 Guidance suggest that it creates new obligations for schools. The language is instead discretionary, and largely *relieves* schools of previous obligations under the Rescinded Guidance. . . . Simply put, if a school disagreed with the 2017 Guidance and chose not to follow it, it would suffer no legal consequences as long as it continued to comply with Title IX and its implementing regulations."). The notion that following earlier federal guidance while DOE engages in notice-and-comment rulemaking on that very topic is evidence of gender bias is not plausible, particularly where state law imposes independent requirements on academic institutions. *See, e.g.*, *Kajoshaj*, 543 F. App'x at 153 (no inference of discriminatory animus where alleged conduct was "consistent with obligations under New York law."); *see generally* N.Y. Educ. L. § 6349 *et. seq.*

*Second*, while Plaintiff alleges that NYU failed to comport with its written policies, those allegations are flatly contradicted by the underlying documents, *see infra* at 28-32, and otherwise are not the sort of "clear irregularities" that create any inference of bias. Indeed, the contrast between *Menaker* and this case is stark. In *Menaker*, the institution allegedly "completely disregarded the process provided for in its written 'Harassment Policy,'" declined to provide a written investigative report or written findings of responsibility, and allegedly "*knew* that at least one of the allegations against [Menaker] was false and believed the complaint to be a 'ploy.'" Slip op. at 22-23. No such extreme conduct is alleged here; far from "completely disregard[ing] the process provided for," NYU hewed to its Procedures, conducted a formal investigation and

adjudication, and allowed Doe to appeal the outcome, resulting in reversal, further investigation, and what Doe deems a proper result. *Supra* at 6-7. That is not a "clearly irregular" process; to the contrary, it is example of a tiered system of review functioning as intended.

*Third*, it is true that in *Menaker* and *Columbia*, the institutions' failure to interview witnesses favorable to a male accused generated part of the requisite temporary inference of bias. *See Columbia*, 831 F.3d at 56-57; *Menaker*, slip op. at 22; *cf.* AC ¶¶ 84, 100, 109. But that inference cannot be equally reasonable where, as here, the institution subsequently interviews the requested witnesses and their favorable testimony is credited by the fact-finder. AC ¶¶ 126-132; *see generally* Greenspan Op. After all, according to Doe, the very Title IX investigators who were determined to see him guilty "at all costs"—indeed, had "predetermined" his guilt (AC ¶ 125)—ultimately generated the favorable witness statements relied upon by Justice Greenspan in finding Plaintiff not responsible (*id.* ¶¶ 127, 132).[10] The point is that Plaintiff must allege facts supporting the notion that "gender bias was a motivating factor" in the challenged actions. *Yusuf*, 35 F.3d at 715. Any procedural flaws *cured* by the institution's own process, resulting in a finding of *innocence*, are "minimal irregularities" at best, not "clear" ones.[11]

---

[10] In the Title VII context, the Second Circuit has recognized a "same actor inference," namely that "where the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." *Cordell v. Verizon Commc'ns, Inc.*, 331 F. App'x 56, 58 (2d Cir. 2009) (quoting *Schnabel v. Abramson,* 232 F.3d 83, 91 (2d Cir. 2000)); *see also Soto v. Marist Coll.*, 2019 WL 2371713, at *4 (S.D.N.Y. June 5, 2019) (applying "same actor inference" on motion to dismiss). The principle applies here, especially as to the OEO investigators: Plaintiff offers no factual basis to impute any "invidious motivation" to the investigation as a whole, when the same people who were allegedly biased against him were the ones who prepared the report on new testimony that resulted in him being found not responsible for a violation.

[11] Nor does Plaintiff's initial adjudication bear any resemblance to *Columbia*, where the decision-makers allegedly chose "to accept an unsupported accusatory" version of the facts, and the evaluator allegedly "formed[ed] a conclusion in favor of the other side (without an apparent reason based in the evidence)." *Menaker*, slip op. at 22. Roe's version of events was not "unsupported"—her statement was bolstered by a witness and contemporaneous video evidence,

### 3.   Plaintiff's Conclusory Allegations Of Public Pressure Are Insufficient.

Finally, Doe claims that gender bias can be inferred from alleged public "pressure" on NYU to "aggressively prosecute male students."  AC ¶ 166.  But the facts alleged here are unlike those in *Columbia* or any other case where courts have drawn that pleading-stage inference.  In *Columbia*, the institution allegedly faced extensive and public student complaints about the university's handling of sexual assault claims by female students, including articles in the student newspaper, protests by student groups, a planned university "town hall" meeting, and complaints filed with DOE alleging university violations of Title IX.  *See* 831 F.3d at 50-51.  Particularized allegations about public pressure on specific institutions were likewise present in other post-*Columbia* cases. [12]   Plaintiff does not allege those factors are present here:   no DOE investigations or other DOE pressure on NYU; no protests by student groups, high-profile or otherwise; and no media firestorm or even negative press attention.

Plaintiff's *factual* allegations of "pressure" are limited to the following:  (1) roughly a week before his first disciplinary hearing began on August 22, 2019 (*see* AC ¶ 102), a female NYU student posted to social media about her dissatisfaction with NYU's handling of a sexual assault allegation, and "the post" was distributed to "at least 1000 people," *id.* ¶ 135; (2) in an October 2018 piece regarding a rise in sexual assault complaints at a number of colleges, the *New York Post* reported that 100 sexual misconduct complaints were made at NYU in early

---

*see* Jolley Op. at 4—and Jolley explained the "apparent reason based in the evidence" for his conclusions (*i.e.*, that Doe's witness, who testified that Roe did not appear incapacitated, had "limited recollection," which did not outweigh what Jolley considered "clearly observable signs of incapacitation" in the videos), *id.*  Although Doe successfully appealed, *Menaker* makes clear that, under Title IX, a close judgment call that is resolved against a male accused does not "suffice to suggest discrimination."  *Menaker*, slip op. at 21 n.50.

[12] *See Menaker*, slip op. at 2-4, 21 (noting that "the national press had identified Hofstra as one of several universities under investigation by the [DOE]," and referring to the complaint's allegations of specific instances of "internal criticism for its assertedly inadequate response to male sexual misconduct on campus").

2018, *id.* ¶ 136; and (3) the #MeToo Movement occurred in October 2017, *id.* ¶ 137.

These allegations do not create a plausible inference that NYU was influenced by any "public pressure." For one thing, the timing makes no sense. Both the alleged social media posts and the *Post* article were published *after* the initial investigation into Roe's allegations, which took place between March and August 2018 (*e.g.* AC ¶¶ 82, 95, 98-99); the publications obviously could not possibly have caused NYU's investigators to act with bias. Indeed, the October 2018 *Post* article was published *after* the initial disciplinary hearing (on August 22, 2018). Plaintiff is entitled to have all reasonable inferences drawn in his favor at this stage, but to infer bias based on *this* timeline would be unreasonable.[13]

Moreover, the Amended Complaint does not explain how or to what extent the cited sources created any "pressure" on NYU. To be sure, the *Post* referenced an uptick in reported sexual misconduct allegations at NYU (and several other local institutions), but it did not criticize NYU for its handling of those complaints. To the contrary, the *Post* reported (favorably) that NYU's students were now "more comfortable coming forward to file these kind of reports." AC ¶ 136. And "raising awareness of sexual assault, without drawing gendered assumptions about males, does not raise an inference of anti-male bias." *Doe v. Colgate Univ.*, 2017 WL 4990629, at *2 (N.D.N.Y. Oct. 31, 2017), *aff'd*, 760 F. App'x 22 (2d Cir. 2019).

Doe's unadorned allegations about the "#MeToo Movement" (AC ¶ 137) are even less relevant. Plaintiff offers *no* factual support for the vague and generalized proposition that "NYU, like many other colleges" was scrutinized and "criticized for not taking the complaints of

---

[13] Likewise, while Plaintiff alleges that a 2011 "Dear Colleague" letter from DOE "was a 'first warning shot' at colleges . . . to step up increased enforcement of Title IX" (AC ¶ 138), there is nothing gendered about the procedural issues addressed in the letter. *See id.* In any event, Doe also alleges that the letter "was withdrawn in September 2017"—months before Roe made her accusations and the investigation of Doe began, *id.* ¶ 140—so the allegation creates no inference that NYU was under any "pressure" from DOE at any relevant time. *Cf. Menaker*, slip op. at 21.

female students of sexual misconduct by male students seriously." *Id.*   This is not a "particularized allegation relating to" NYU, much less any "causal connection" in Doe's case. *Yusuf*, 35 F.3d at 715.   Nor does Plaintiff explain the obvious discrepancy between any supposed #MeToo-inspired scrutiny on NYU and the ultimately favorable result in his proceeding.   Put simply, Doe's unsupported insinuation that #MeToo must have affected him in some manner is entitled to no weight at all.   *See, e.g.*, *Hardwick v. Ind. Bell Tel. Co., Inc.*, 2018 WL 4620252, at *15 (S.D. Ind. Sept. 26, 2018) ("Mr. Hardwick invoked the [#MeToo] movement in an apparent attempt to argue that it has altered the analysis this Court must make under Title VII. The Court rejects this frivolous argument, as no Court in the country, let alone in this Circuit, has suggested that the #MeToo Movement alters the scope of Title VII.").

As for the August 2018 Instagram post that allegedly criticized NYU's handling of a sexual-assault complaint, made a week before Doe's initial hearing:  (1) even if the timeline were plausible, Plaintiff does not allege that any Defendant actually viewed the post in question or was even aware of it, prior to the hearing or at any other time; (2) additionally, the post's limited distribution ("at least 1000 people") renders unreasonable any inference that the post would reached NYU or have affected its decision-making in any way.   The post simply cannot bear the weight that Plaintiff would place on it, particularly because limited evidence of "pressure" suffices to create an inference of intent only "when combined with clear procedural irregularities." *Menaker*, slip op. at 20.   As explained above, that is lacking here.

NYU respectfully submits that, viewed in their totality, these alleged facts—no biased statements by employees, an investigative and adjudicatory process that was "minimally" irregular at most, and tissue-thin "public pressure" allegations—do not generate a minimal plausible inference of gender discrimination. *Cf. id*, slip op. at 20-21.

- 25 -

III.     ALL OF PLAINTIFF'S STATE-LAW CLAIMS ARE INADEQUATELY
         PLEADED.

Defendants understand that, if the Court dismisses Plaintiff's Title IX claim (the sole federal cause of action alleged), it may decline to exercise supplemental jurisdiction over the remaining state-law causes of action. Nevertheless, in the interest of completeness, Defendants set forth below why Plaintiff's state-law claims also fail as a matter of law.

A.      Plaintiff's Human Rights Law Claim Fails Because He Has Not Plausibly
        Alleged Any Gender- Or Ethnicity-Based Bias.

Discrimination claims under the NYSHRL are analyzed under the same standard as Title VII and Title IX discrimination claims: that is, "naked assertions of discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic" will not survive a motion to dismiss. *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 249 (E.D.N.Y. 2015). Here, Doe alleges bias by each Defendant on the basis of both gender and ethnicity. *E.g.* AC ¶¶ 115, 132. Doe's allegations of gender bias by NYU and the individual defendants fail for the reasons described above, and for the additional reasons set out below. Doe's allegations of ethnicity-based bias are even more sparsely pleaded, and do not give rise to a cause of action under the NYSHRL.

*First*, Doe frequently combines his allegations of sex and ethnicity discrimination, and provides no details that distinguish one from the other. *See id.* At no point does Doe allege any overt animus based on ethnicity, such as comments or written statements made by Defendants that refer to Doe's alleged ethnicity.

*Second,* where the Amended Complaint does specifically refer to Doe's ethnicity, it merely parrots the legal conclusion of bias. *E.g.* AC ¶¶ 13, 222. Doe only makes a single factual assertion regarding ethnicity-based bias: Jolley's purported decision to "wholly discredit the testimony of John Doe and his Asian American friend" in favor of the statements of "two while

- 26 -

[sic] females." AC ¶ 118. This claim is contradicted, however, by Jolley's written decision, where he explains in unbiased terms why he took that action, *i.e.*, because he weighed the "limited recollection" of Doe's witness against four video clips provided by Roe's witness demonstrating Roe's level of intoxication on the night of the alleged misconduct. Jolley Op. at 4; *see also Johnson v. New York Univ.*, 2018 WL 4908108, at *4 (S.D.N.Y. Oct. 10, 2018) ("when plaintiffs rely on disparate treatment evidence to support an inference of discrimination, they must show that they are similarly situated in all material respects to those with whom they compare themselves" (internal quotations omitted)). Doe's "naked assertions" of ethnicity discrimination under the NYSHRL are not sufficient to survive a motion to dismiss. *See Khanna v. MUFG Union Bank, N.A.*, 2019 WL 1428435, at *4 (S.D.N.Y. Mar. 29, 2019) (Carter, J.) (granting motion to dismiss discrimination claim under, *inter alia*, NYSHRL due to plaintiff's failure to offer plausible allegations "attributing [the adverse outcome] to her race and gender"); *Weir v. Montefiore Med. Ctr.*, 2018 WL 1033238, at *6 (S.D.N.Y. Feb. 22, 2018) (same, where alleged statements that plaintiff "didn't fit in" did not give rise to inference of bias).[14]

> ### B.   Plaintiff's Breach of Contract Claims Are Not Well-Pleaded.

Plaintiff alleges that NYU breached a contract with him, one supposedly formed when NYU extended an offer of admission to Doe, he accepted it, and paid money to the school in the form of tuition and fees, AC ¶ 205, and allegedly governed by NYU's Policy and Procedures, *id.* ¶ 206. Under certain circumstances, New York law permits a student to sue a university for breach of an implied contract. *See Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 207 (W.D.N.Y. 2013). However, the "application of contract principles to the student-university

---

[14] Further, because "[d]isparate treatment claims brought under Title VII . . . and the NYSHRL are all analyzed under the same standard," *Parra v. City of White Plains*, 48 F. Supp. 3d 542, 553 (S.D.N.Y. 2014), Doe's NYSHRL claim also fails because he has not alleged the equivalent of any "adverse employment action." *See supra* at 16.

relationship does not provide judicial recourse for every disgruntled student," *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 359 (N.D.N.Y. 2014), and "judicial review of the institution's actions is limited to whether the institution acted arbitrarily or whether it substantially complied with its own rules and regulations." *Routh*, 981 F. Supp. 2d at 208.  Furthermore, the plaintiff must identify "the specific terms of the implied contract that were allegedly violated." *Rolph*, 271 F. Supp. 3d at 405-06; *see also Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998) ("the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted.").  It is not enough to allege that a school breached a policy statement regarding the fairness and impartiality of its disciplinary policies (*e.g.* AC ¶ 209), as those are considered "broad pronouncements" that "cannot form the basis for a breach of contract claim." *Ward v. New York Univ.*, 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000); *see also Syracuse Univ.*, 341 F. Supp. 3d at 141 (same).

Doe's allegations fall far short of these standards.  The portions of the Amended Complaint relating to Plaintiff's contract claims contain half-quotes of NYU's Procedures, misleading omissions, and contradictory assertions.  As explained below, they fail to plausibly allege that NYU acted arbitrarily or failed to substantially comply with its own procedures.

1.    Doe alleges that in violation of Section IV(A)(3) of NYU's Procedures, NYU failed to provide sufficient notice to Doe of the "alleged misconduct" in a March 22, 2018 or April 9, 2018 email to Doe.  AC ¶ 81.  But Section IV(A)(3) refers to pre-*hearing* notice, which must be in writing and must include the charges to be reviewed, the provisions of the Policy alleged to have been violated, and the sanctions that may be imposed.  On the dates identified above, there was no hearing scheduled yet; the OEO was still conducting its information-gathering interviews of Roe and Doe, and it did not issue its recommendation to proceed to a

hearing until June 11, 2018.  *Id.* ¶ 82.  There was no violation of this section.

2.      Doe alleges that in violation of Section III(B), the OEO investigators "purposely did not seek out and interview numerous witnesses identified by Jane Roe and John Doe." *Id.* ¶ 86.  Section III(B) allows the parties to "identify witnesses who may have relevant information," and precludes witness testimony on an "individual's character."  Section III(D) vests the discretion to "determine the relevance of any proffered evidence" with the investigator, who can make a determination that "certain types of evidence should be included or excluded in the determination of responsibility."[15]  When read as a whole, the Procedures and Policy do not contain any promise to interview every witness that an accused student might identify.

3.      Doe alleges that in violation of Section III(G), the investigators failed to interview the additional witnesses identified by Doe in his comments to the draft investigative report. *Id.* ¶¶ 87, 91.  Section III(G) provides that the parties "will be given the opportunity to review the draft Investigation report . . . and identify any additional information or witnesses."  As discussed above, there is no requirement for investigators to interview every potential witness a party might identify.  In any event, before any hearing took place, the investigators *did* interview two additional witnesses provided by the parties.  *See* AC ¶¶ 96-97.[16]

4.      Doe alleges that in violation of Section III(I), the investigation took longer than thirty-five days to be completed (AC ¶¶ 92, 126), and in violation of Section IV(B)(1), the

---

[15] Paragraph 86 of the Amended Complaint does not accurately quote the relevant policy. Section III(B) states that the Title IX Investigators will "notify and ***seek to*** meet with ***all involved parties*** separately" (emphasis added).  The policy does not state that "witnesses" are "involved parties," and reading Section III(B) to *require* investigators to meet or seek to meet *every* witness identified by all parties would be inconsistent with the discretion reflected in Section III(D).

[16] This allegation also contradicts the alleged breach identified in Paragraph 207—a supposed violation of Section III(B) because NYU "proceeded to a disciplinary proceeding without speaking to a single witness" other than Roe and Doe—which is further contradicted by the FIR, AC ¶ 104, and is simply untrue.

hearing was not held within sixty days of the initiation of the Investigation (id. ¶ 101).  Section III(I) states that an investigation "*typically* will be completed within thirty-five days" (emphasis added), but allows extensions "for good cause as necessary to ensure the integrity and completeness of the investigation," with notice in writing to the parties.  Section IV(B)(1) contains the same language.  As a preliminary matter, Doe does not allege whether he received such notice, foreclosing his claim on that basis alone.[17]  Moreover, in each instance, the criteria for an extension were obviously met; both Roe and Doe had identified several additional witnesses, and the investigators documented the difficulties they had in coordinating interviews with them, especially since the initial report was issued on June 11, during the summer break, and some of the witnesses were outside of the country.  *See* Supp. Report at 1-2.  Indeed, had such an extension *not* been granted, Doe undoubtedly would have used that fact as further evidence of an alleged rush to judgment and bias against him.  Finally, time periods in contracts qualified by words like "typical" or "aims to complete" are not contractual obligations that can form the basis for a breach of contract.  *See Colgate Univ.*, 2017 WL 4990629, at *19 (provision stating that "[t]he University aims to complete all investigations within a 60-day period" was "aspirational" and "not enforceable as a contractual obligation.").[18]

5.     Doe alleges that in violation of Section IV(A)(2), the selected adjudicator was Defendant Jolley, who had "demonstrated bias against John Doe as the accused male by limiting the Title IX Investigators to interviews of three witnesses despite the fact that numerous other witnesses had been identified by" Roe and Doe.  AC ¶ 104.  Section IV(A)(2) states that the

---

[17] *See Syracuse Univ.*, 341 F. Supp. 3d at 141 ("Doe's breach of contract claim with respect to 'notice' fails because there is no allegation that notice was not provided.").

[18] Even if Doe had alleged a failure on NYU's part to provide written notice of an extended investigation, Doe identifies no damages that could conceivably flow from the failure to provide written notice (as opposed to the extension itself).  *See* AC ¶ 210.

hearing "will be adjudicated by an administrator . . . typically the Director of the Office of Student Conduct and Community Standards," which is Jolley's position. Nor, for reasons discussed previously, does Plaintiff plausibly alleged any bias on Jolley's part. *Supra* at 18-19. Plaintiff's allegation that Jolley "limit[ed]" the investigators "to interviews of three witnesses" is based on a strained and unreasonable inference drawn from the Supplemental Report, which stated that Jolley "directed" OEO investigators to make efforts to interview three additional witnesses, not that he imposed any "limits." *See* Supp. Report at 1. In any event, even if Plaintiff's allegation had any factual basis, it would not be evidence of "bias or conflict of interest"—the Procedures and Policy allowed "limits" on the number of witnesses, *supra* at 29, and any such "limits" were applied to both Doe *and* Roe, *supra* at 14.

6.     Doe alleges that in violation of Section IV(B), Jolley "did not request that any of the witnesses that were identified in the [FIR or Supplemental Report] or identified by the parties attend the hearing to provide testimony." *Id.* ¶ 109. There is simply nothing in Section IV(B) that this alleged conduct could potentially breach.[19]

To the extent Doe claims other breaches of specific sections of NYU's Procedures, those breaches are either duplicative of his earlier claims, *see, e.g.*, AC ¶¶ 126, 207(ii, iii) (repeating an allegation of a breach of the timing requirements), or identify supposed breaches that are too vague and amorphous to state a claim under New York law. *See id.* ¶¶ 73-74, 209. Finally, Plaintiff's claim for breach of the covenant of good faith and fair dealing also fails as a matter of law, because "[u]nder ample New York precedent, a student cannot maintain a breach of contract claim against a university based solely on the implied covenant of 'good faith.'" *Evans v.*

---

[19] Indeed, Section IV(A)(5) provides that the adjudicator will identify "any witnesses that he/she *wishes* to hear from," with no set requirement for the number of witnesses or the nature of their testimony. And Section IV(B)(2)(d) states that at the hearing, an adjudicator might "hear from witnesses determined by the Adjudicator to have information that is relevant to the matter."

*Columbia Univ.*, 2015 WL 1730097, at *4 (S.D.N.Y. Apr. 13, 2015) (collecting cases).

> **C.**      **Plaintiff's Tort Claims Fail Because They Are Duplicative Of His Contract Claims And Fail To Identify Actionable Conduct.**

The Amended Complaint also tacks on two tort claims, for IIED and NIED, predicated on the same allegedly faulty investigation. *E.g.* AC ¶ 215. Because Doe's allegations underlying his tort claims are wholly duplicative of those underlying his contract claims, the tort claims should be dismissed. *See Prasad*, 2016 WL 3212079, at *23 ("[C]ourts routinely dismiss tort claims where they are duplicative of a simultaneously pled breach of contract claim."); *see also Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987).   Here, Plaintiff acknowledges that any duty owed to him by NYU is a direct result of his status as a "student of NYU," a relationship he previously alleged to be defined by the contract between himself and NYU.   AC ¶¶ 213, 220; *supra* at 27-28.   Plaintiff's argument is similarly foreclosed to the extent he contends that the flawed investigation breached a separate duty to Plaintiff, because "[t]here is no cause of action in the State of New York sounding in negligent prosecution or investigation." *Yu*, 97 F. Supp. 3d at 484 (internal citations and quotations omitted); *accord Syracuse Univ.*, 341 F. Supp. 3d at 142; *Weitz v. State,* 182 Misc. 2d 320, 320 (N.Y. Ct. Cl. 1999).

Even if they were not impermissibly duplicative, the tort claims would also fail as a matter of law.   Doe's IIED claim fails because he has not alleged any actions that were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency . . . to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993).   All of Doe's alleged grievances fall well short of the requisite standard of "outrageous"-ness.   *See Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 375 (S.D.N.Y. 2016) (dismissing claim for intentional infliction of emotional distress as a matter of law because "even a false charge of sexual harassment does not rise to the

level of outrage required"); *Herlihy v. Met. Museum of Art*, 214 A.D.2d 250, 262-63 (1st Dep't 1995) (holding that use of racial or ethnic epithets may be "deplorable," but does not meet the "threshold requirement"). Similarly, Plaintiff's NIED claim fails because such a claim "generally must be premised upon conduct that unreasonably endangers a plaintiff's safety or causes the plaintiff to fear for his or her safety," and none is alleged here. *Davidovici v. Fritzson*, 49 A.D.3d 488, 490 (2d Dep't 2008) (reversing denial of motion to dismiss such claims).[20]

D. **Plaintiff's Claims Against The Individual Defendants Fail.**

Where a complaint names multiple defendants, it must "provide a plausible factual basis to distinguish the conduct of *each* of the defendants." *See, e.g.*, *Ochre LLC v. Rockwell Architecture Plan. & Design, P.C.*, 2012 WL 6082387, at *6-7 (S.D.N.Y. Dec. 3, 2012) (emphasis added), *aff'd*, 530 F. App'x 19 (2d Cir. 2013). The Amended Complaint does not come close to meeting this standard.

**The OEO Investigators.** Plaintiff generally alleges that NYU's investigators in the OEO—Hodge, Tomaselli, Cornell, and Wade, supervised by Signor—carried out their duties in a "biased manner and plainly discriminated against John Doe on the basis of his gender," *see e.g.*, AC ¶¶ 33, 37, 41, but alleges no direct evidence of biased motivations for any of them. And his allegations of individual wrongdoing are conclusory and fail on their face. Plaintiff alleges that Wade, for example, was in part responsible for the supplemental investigative report following remand, which he characterizes as providing "absolutely no evidence of misconduct," and that the report's recommendation that the allegations be heard by an adjudicator was "erroneous[ ]."

---

[20] Doe alleges that Defendants "subject[ed] Plaintiff *repeatedly* to a process in which he was falsely accused of being a 'rapist.'" AC ¶¶ 215, 222. Doe does not identify who called him a "rapist," when, or in what context; nor does he allege that any Defendant did so. Defendants are not aware of any authority for the proposition that an academic institution or its employees engage in "extreme," "outrageous," or unreasonably unsafe conduct by investigating and adjudicating one student's allegations of sexual assault against another student—particularly where such a process is required by law. *See* N.Y. Educ. L., art. 129-B.

*Id.* ¶ 97.  This is not an allegation of gender or ethnicity bias.  With even less particularity, Doe claims that Signor "participated in the discriminatory conduct," *id.* ¶ 17, but to support this claim alleges only that Signor asked Doe to meet to discuss the allegations, *id.* ¶ 81, and that the investigative reports were addressed to both her and Jolley.  *Id.* ¶¶ 89, 95.  Again, this is not an allegation of bias.  And as to Cornell, Hodge, and Tomaselli, Plaintiff's claims that they should have conducted their investigation differently are either explicitly *not* gendered (*id.* ¶ 82) or otherwise fail to create any inference of gender bias (*supra* at 21-22).

**Members of the OSC.**  Doe's allegations that Jolley, Shepard, and Maeder "carried out [their] duties . . . in a biased manner and plainly discriminated against John Doe on the basis of his gender," AC ¶¶ 13, 21, 29, are conclusory and unavailing for the same reasons.  The specific allegations against Jolley are discussed above.  *See supra* at 18-19.  And the Amended Complaint barely addresses Maeder or Shepard:  (1) the sole mention of Maeder is that she allegedly attended both of Doe's sexual misconduct hearings, *id.* ¶¶ 106, 151; and (2) the sole particularized mention of Shepard is that he attended *one* of the two hearings, *id.* ¶ 106.  Indeed, Doe does not even allege that either Maeder or Shepard *participated* in his disciplinary proceeding, much less offer any reason to think they did so with bias.

**Metzler.**  Plaintiff's sole allegation against Metzler, whom he alleges served as the "Advisor to the Adjudicator" during the hearings, is that Metzler and Jolley "simply disregarded" testimony "discrediting Jane Roe's version of events."  AC ¶ 112.  But Doe does not allege that Metzler, as a legal advisor, had any power to credit or discredit evidence in the first place, much less that he did so with gender bias.  Further, any claim that Metzler aided and abetted discrimination here is foreclosed by New York law; an in-house lawyer acting within the scope of his duties cannot be held liable for contributing to discrimination "simply because he provided

- 34 -

legal services . . . in defense of plaintiff's claims." *Abe v. New York Univ.*, No. 105985/10, 2018 WL 1678161 (Sup. Ct. N.Y. Cnty. Apr. 2, 2018), *aff'd in relevant part,* 169 A.D.3d 445, 448 (1st Dep't 2019).   An "attorney generally cannot be held liable to third parties for actions taken in furtherance of his role as counsel unless it is shown that he did something either tortious in character" or beyond the scope of employment, *Barsoumian v. Williams*, 29 F. Supp. 3d 303, 316 (W.D.N.Y. 2014), and Doe has alleged nothing like that.   "[P]ermitting a cause of action to survive based on vague speculation regarding improper legal advice would invite both interference with the attorney-client relationship and vexatious litigation." *Id.* at 317.[21]

## CONCLUSION

Doe's dissatisfaction with what he views as Roe's false accusations and the resulting investigation into those allegations simply does not provide a basis for him to seek redress from NYU.  NYU had a duty to investigate the claims against Doe, which it did; that investigation ultimately resulted in a finding with which Plaintiff is in complete accord.  His belief that the investigation should have proceeded more quickly, and in a manner more to his liking, does not form the basis for any claim against NYU, much less a cause of action for gender discrimination.

Plaintiff has now had ample opportunity in this Court to state a valid cause of action, and has failed to do so.  Moreover, he knowingly rejected a last clear chance from the Court to amend his complaint, with full knowledge of the arguments that NYU would be presenting to seek dismissal of the Amended Complaint.  *See* Individual Practices, Rule 2.D.ii.  As such, his Amended Complaint should be dismissed with prejudice.

---

[21] The IIED and NIED claims against the individual Defendants fail for the same reasons described above:  Plaintiff fails to identify any independent duty, or to allege the requisite elements of the claims.

Dated:  August 16, 2019
          New York, New York

          /s/ Ira M. Feinberg

          Ira M. Feinberg
          Benjamin A. Fleming
          Andrew M. Harris
          HOGAN LOVELLS US LLP
          390 Madison Avenue
          New York, New York 10017
          Telephone: (212) 918-3000
          Fax: (212) 918-3100
          ira.feinberg@hoganlovells.com
          benjamin.fleming@hoganlovells.com
          andrew.harris@hoganlovells.com

          *Attorneys for Defendants*