UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE,<br><br>                    Plaintiff,<br><br>   -against-<br><br>NEW YORK UNIVERSITY, CRAIG JOLLEY, SAMUEL HODGE, COLLEEN M. MAEDER, MATTHEW SHEPARD, MARY SIGNOR, JACQUELINE CORNELL, JASMINE WADE, DAISY TOMASELLI, JEFFREY METZLER, and JOHN DOES 1 through 10,<br><br>                    Defendants. | Case No.: 19-cv-00744 (ALC) |

## PLAINTIFF JOHN DOE'S MEMORANDUM OF LAW IN OPPOSITION TO THE NYU DEFENDANTS' MOTION TO DISMISS HIS AMENDED COMPLAINT

BARTON LLP
711 Third Avenue, 14th Floor
New York, New York 10017
(212) 687-6262

September 13, 2019

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 3

      A.      The Underlying Title IX Complaint ............................................................. 3

      B.      NYU's Policies and Procedures for Title IX Proceedings ....................... 4

      C.      "The First NYU Investigation" ................................................................... 6

      D.      "The Second NYU Investigation" .............................................................. 6

      E.      Public Pressure on NYU to Aggressively Prosecute John Doe ............... 7

      F.      The "First Sexual Misconduct Hearing" .................................................... 8

      G.      Appeal of Defendant Jolley's Decision and Remand by the Appeal Panel ........... 10

      H.      "The Third NYU Investigation" ............................................................... 11

      I.      The Second *De Novo* Sexual Misconduct Hearing ............................... 11

ARGUMENT ..................................................................................................................... 13

    I.      THE MOTION TO DISMISS STANDARD FOR TITLE IX CLAIMS ............. 13

    II.      DOE'S TITLE IX CLAIM IS PROPERLY PLED ................................................. 15

    III.      PLAINTIFF HAS ALSO SUFFICIENTLY STATED CLAIMS UNDER NEW YORK STATE LAW ................................................................................... 22

      A.      Plaintiff Has Sufficiently Alleged a Claim for Sex Discrimination Under NYSHRL Against NYU and the Individual Defendants ......................... 23

      B.      Plaintiff Has Sufficiently Stated a Claim for Breach of an Implied Contract ................................................................. 27

      C.      Plaintiff Has Sufficiently Stated Claims for Intentional and Negligent Infliction of Emotional Distress and Breach of the Covenant of Good Faith and Fair Dealing ............................................................................. 31

CONCLUSION .................................................................................................................. 33

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................... 13

*Austin v. Univ. of Oregon*,
   925 F.3d 1133 (9th Cir. 2019) ...................................................................... 19

*B.B. v. The New School*,
   2018 WL 2316342 (S.D.N.Y. Apr. 30, 2018)............................................... 16

*Burlington Indus., Inc. v. Ellerth*,
   524 U.S. 742, 118 S. Ct. 2257, 141 L.Ed.2d 633 (1998)............................. 24

*Dawson v. N.Y.C. Transit Auth.*,
   624 Fed. Appx. 763 (2d Cir. 2015) .............................................................. 14

*Delisi v. Nat'l Ass'n of Prof'l Women, Inc.*,
   48 F.Supp.3d 492 (E.D.N.Y. 2014) ............................................................. 24

*Doe v. Coastal Carolina Univ.*,
   359 F. Supp. 3d 367, 377 (D.S.C. 2019)...................................................... 21

*Doe v. Columbia*,
   831 F.3d 46 (2d Cir. 2016)................................................................... passim

*Faragher v. City of Boca Raton*,
   524 U.S. 775, 118 S. Ct. 2275, 141 L.Ed.2d 662 (1998)............................. 24

*Feingold v. New York*,
   366 F.3d 138 (2d Cir.2004).......................................................................... 24

*Howell v. New York Post Co., Inc.*,
   81 N.Y.2d 115, 121 (1993) ..................................................................... 31, 33

*Johnson v. County of Nassau*,
   82 F. Supp. 3d 533 (E.D.N.Y. 2015) ........................................................... 26

*Littlejohn v. City of New York*,
   795 F.3d 297 (2d Cir. 2015)............................................................. 13, 14, 22

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)...................................................................................... 13

*Menaker v. Hofstra University*
   2019 WL 3819631 ................................................................. 14, 15, 16, 19, 20, 22, 23, 24, 26

*Novio v. N.Y. Academy of Art*,
   286 F. Supp. 3d 566 (S.D.N.Y. 2017) ................................................................. 24, 25

*Nungesser v. Columbia Univ.*,
   169 F. Supp. 3d 353, 374-75 (S.D.N.Y. 2016) ........................................................ 31

*Olsson v. Bd. of Higher Educ.*,
   49 N.Y.2d 408 (1980) ................................................................. 27

*Papelino v. Albany Coll. Of Pharmacy of Union Univ.*,
   633 F.3d 81, 93 (2d Cir. 2011) ................................................................. 27, 31

*Ritter v. Oklahoma City Univ.*,
   2016 WL 3982554 (W.D. Okla. July 22, 2016) ................................................................. 21, 22

*Routh v. Univ. of Rochester*,
   981 F. Supp. 2d 184 (W.D.N.Y. 2013) ................................................................. 27

*St. Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502 (1993) ................................................................. 14

*Doe v. Syracuse Univ.*,
   341 F. Supp. 3d 125 ................................................................. 28

*Tomka v. Seiler Corp.*,
   66 F.3d 1295 (2d Cir. 1995) ................................................................. 24, 25

*Vought v. Teachers Coll., Columbia Univ.*,
   127 A.D.2d 654 (2d Dep't 1987) ................................................................. 27

*Ward v. New York Univ.*,
   2000 WL 144861 (S.D.N.Y. Sept. 28, 2000) ................................................................. 28

*Yusuf v. Vassar College*,
   35 F.3d 709 (2d Cir. 1994) ................................................................. 15

**Statutes**

N.Y. Exec. Law § 296 ................................................................. 23, 24, 25

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX") ....... *passim*

Plaintiff, John Doe ("Plaintiff" or "Doe"), by and through his undersigned counsel, respectfully submits this memorandum of law in opposition to the motion of New York University ("NYU"), Craig Jolley ("Jolley"), Samuel Hodge ("Hodge"), Colleen M. Maeder ("Maeder"), Matthew Shepard ("Shepard"), Mary Signor ("Signor"), Jacqueline Cornell ("Cornell"), Jasmine Wade ("Wade"), Daisy Tomaselli ("Tomaselli"), Jeffrey Metzler ("Metzler") (collectively, the "NYU Defendants") to dismiss the Amended Complaint ("AC").[1]

## PRELIMINARY STATEMENT

This action arises from the NYU Defendants' violations of John Doe's civil rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX"), the New York State Human Rights Law, New York Executive Law § 296, *et seq.* (the "NYSHRL"), and other state and local laws.  Specifically, the NYU Defendants discriminated against John Doe on the basis of his gender throughout their multiple "investigations" and adjudications of a sexual assault complaint lodged against Doe.  They selectively enforced against Doe NYU's Sexual Misconduct, Relationship Violence, and Stalking Policy and NYU's procedures for "Reporting, Investigating, and Resolving Sexual Misconduct, Relationship Violence, and Stalking Complaints Against Students" in a concerted effort to find him guilty of a sexual assault in the face of evidence to the contrary.

As set forth in great detail in Doe's 55 page, 230 paragraph Amended Complaint, the NYU Defendants immediately presumed that, as the male, John Doe was guilty of an alleged sexual assault of Jane Roe on the basis of his sex when Roe claimed on or about February 18,

---

[1] Defendants' Memorandum of Law in Support of Their Motion to Dismiss for Failure to State a Claim, filed August 16, 2019 [ECF No. 37] is hereinafter referred to as "Defendants' Memorandum" and abbreviated as "Defs. Mem."

2018 that John Doe sexually assaulted her almost one year earlier on the night of March 17, 2017 by having sexual intercourse with her when she was allegedly too intoxicated to give consent.

Due to their gender biases, the NYU Defendants failed to collect, disregarded or simply ignored highly relevant, exculpatory evidence.  The NYU Defendants chose not to interview witnesses that had been identified to them at the outset of their investigation (on the incredible bases that they believed the witnesses' statements would be duplicative of Roe's) and whom ultimately had information that would wholly contradict Roe's accusations against Doe and her account of the alleged incident.  The only possible explanation for their failure in this regard is a pervasive institutional gender bias against males accused of sexual assaults by female students, and a bias against Doe, a male, in favor of Roe, a female complainant.

Under these facts, as explained by the Second Circuit in *Doe v. Columbia*, Doe is entitled to a minimal plausible inference of discriminatory intent at the motion to dismiss stage.  Indeed, as recently as last month, the Second Circuit made clear that a plaintiff asserting a discrimination claim in a Title IX proceeding against a university need only show "a minimal inference of sex bias" – Doe has alleged much more here.

Faced with a clear-cut case of selective enforcement against Doe, the NYU Defendants resort to a "no harm, no foul" approach to argue that Doe could not have been discriminated against because he was ultimately exonerated (albeit over one year after NYU's crusade against Doe began and only upon a *de novo* hearing before an independent external adjudicator untainted by NYU's gender bias against Doe).  This argument misses the mark (i) as a matter of law since selective enforcement claims assert that "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender," and (ii) as a matter of fact because it ignores the unnecessary damage Doe sustained in

necessarily preventing NYU from railroading him into a two and a half year suspension on false allegations of sexual assault.

NYU also contends that Doe's selective enforcement claim is wanting because he has not alleged that a similarly-situated female student has been treated more favorably than him. That argument is meritless in the face of the Second Circuit's decision in *Menaker v. Hofstra University*, issued last month, which renders NYU's contention irrelevant. Moreover, the privacy and confidentiality restrictions contained in NYU's Procedures renders it an impossibility for Doe to have access to NYU's investigations of sexual misconduct against any other student, including "similarly situated females." By even making this argument, the NYU Defendants seemingly concede that this case should not be dismissed at the motion to dismiss stage.

Finally, the NYU Defendants' arguments to dismiss Doe's state law claims fail because it is well-established that a student may bring claims for breach of an implied contract against his university when alleging specific breaches of school policy, as Doe does here. Similarly, Section 296(d) of the New York State Human Rights Law ("NSHRL") provides that individuals may be personally liable when they participate in unlawful discriminatory practices. Accordingly, for the reasons set forth below, and in the remainder of the record of this action, the motion to dismiss should be denied in its entirety.

## STATEMENT OF FACTS

### A.     The Underlying Title IX Complaint

One evening during the spring semester of their freshman year at NYU, John Doe and Jane Roe engaged in consensual sexual activity. AC ¶¶ 52-58. Approximately one year later, Roe chose to report this interaction to NYU as a sexual assault with encouragement from her

NYU counselor that she could do so without the involvement of law enforcement (the "Alleged Incident") *Id.* ¶ 75; Ex. H at 2.[2]

**B.**   **NYU's Policy and Procedures for Title IX Proceedings**

NYU's "Sexual Misconduct, Relationship Violence, and Stalking Policy" (the "Policy") governed the disciplinary proceedings relating to Roe's report.  AC ¶ 61.  Defendant Jolley, as the Director of the Office of Student Conduct and Community Standards ("OSC"), and Defendant Signor as NYU's Title IX Coordinator, were the "Responsible Officers" for administering the Policy.  AC ¶ 64.

In pertinent part, the NYU Policy defines "Non-Consensual Intercourse" as "having or attempting to have sexual intercourse with another individual . . . (iii) where that individual is incapacitated."  *Id.* ¶ 65.  The NYU Policy also defines "incapacitation" in relevant part as follows:

> An individual who is incapacitated lacks the ability to knowingly choose to participate in sexual activity or make informed, rational judgments and thus cannot consent to sexual activity.  ***Incapacitation is defined as the inability, temporarily or permanently, to give consent because an individual is mentally and/or physically helpless, being involuntarily restrained, asleep, unconscious, or unaware that sexual activity is occurring***.  Mentally helpless means a person is rendered temporarily incapable of appraising or controlling one's own conduct.  Physically helpless means a person is physically unable to communicate unwillingness to an act.
>
> ***Where alcohol or other drugs are involved, incapacitation is a state beyond drunkenness or intoxication***.  The impact of alcohol and other drugs varies from person to person; however, ***warning signs that a person may be approaching incapacitation may include slurred or incomprehensible speech, vomiting, unsteady gait, combativeness, or emotional volatility***.  Evaluating incapacitation also requires an assessment of whether a Respondent knew or should have been aware of the Complainant's incapacitation based on objectively and reasonably apparent indications of impairment when viewed from the perspective of a sober, reasonable person in Respondent's position . . .

---

[2] Unless otherwise noted, citations to an "Ex. __" refer to the accompanying exhibit annexed to the Declaration of Ira M. Feinberg, dated August 16, 2019.

*Id.* ¶ 67.

In addition to the NYU Policy, NYU has policies and procedures called the "Reporting, Investigating, and Resolving Sexual Misconduct, Relationship Violence, and Stalking Complaints Against Students" ("NYU Procedures"). *Id.* ¶ 70. According to the NYU Procedures, upon receiving Roe's complaint, Defendants were required to "take immediate and appropriate steps to investigate or otherwise determine what happened and work to resolve the matter promptly and equitably." *Id.* ¶ 72. To the contrary, Defendants conducted wholly biased investigations and failed to talk to multiple witnesses who had information contradicting Jane Roe's account of events and which was favorable to John Doe.

Section II (B) of the Procedures requires Title IX Investigators "notify and meet with all parties separately (e.g., the Complainant, the Respondent, and identified witnesses) and also will gather other evidence and information relevant to the determination as to whether or not a Policy violation has occurred." *Id.* ¶ 86.

The Procedures also required that "[i]nvestigation typically will be completed within thirty-five days from the date of the initiation of the Investigation," and that such 35-day timeframe for investigation could only be extended for "good cause" and with notice to the parties in writing. *Id.* ¶ 92.

Section IV(B)(1) of the NYU Procedures require that that "[t]ypically a hearing will be held within sixty days of the initiation of the Investigation" unless good cause exists and notice is provided to the parties. *Id.* ¶ 101.

Section IV(A)(2) of the NYU Procedures requires that NYU select an administrator to adjudicate the hearing and that said adjudicator must have relevant training and experience and "must also be impartial and free from bias or conflict of interest."

C.      **"The First NYU Investigation"**

NYU's Title IX Investigators, Defendants Hodge, Cornell, and Tomaselli, conducted the initial investigation of Roe's complaint.  AC ¶ 77.  They interviewed Roe one time, while she was accompanied by a "support person," prior to issuing their initial Investigation Summary Report on June 11, 2018 (the "First Investigation Summary Report").  *Id.* ¶¶ 78-80; Ex. C.

On March 22, 2018, John Doe received an email from NYU's Title IX Coordinator, Defendant Signor, asking him to meet to discuss "allegations that [he] may have engaged in prohibited misconduct in violation" of the NYU Policy.  AC ¶ 81.  In violation of Title IX, and the NYU Procedures, NYU's March 22nd notice to John Doe did not provide any details about the alleged misconduct such as the "location and factual allegations concerning the violation," or cite the section of the Policy that John Doe allegedly violated.  *Id.*  Defendants Cornell, Hodge and Tomaselli then conducted two separate interviews of John Doe on April 13 and May 3, 2018. *Id.* ¶ 82.

Despite the fact that both Jane Roe and John Doe identified numerous witnesses that had relevant information to the Alleged Incident, Defendants Cornell, Hodge and Tomaselli simply chose not to interview a single witness prior to issuing the First Investigation Summary Report on June 11, 2018.  *Id.*; *id.* ¶ 86-91.  Yet, the First Investigation Summary Report, Defendants Cornell, Hodge and Tomaselli determined that there was sufficient evidence to be considered by an adjudicator as to whether John Doe violated NYU Policy and recommended a "Sexual Misconduct Hearing."   Ex. C at 9.

D.      **"The Second NYU Investigation"**

Defendant Jolley instructed the Title IX investigators to go back and interview three additional witnesses.  Ex. D at 1.  The refusal of Defendants Cornell, Hodge and Tomaselli to

interview any witnesses other than Roe and Doe until they were directed to interview R.A., W.M. and E.G. by Defendant Jolley resulted in prolonging the investigation beyond the Procedures' 35-day requirement without good cause.  AC ¶ 92.  The Second NYU Investigation was not completed until more than five months after NYU initiated the First NYU Investigation after Jane Roe's report on or about February 21, 2018.  *Id.* ¶ 95; Ex. D.

As confirmed by Defendants Hodge and Wade in the NYU Investigation Supplemental Report, the three witnesses that they were instructed to interview provided absolutely no evidence of misconduct.  *Id.* ¶ 97.  Despite a complete lack of evidence, and new evidence disproving Jane Roe's allegations obtained at Jolley's direction, NYU nonetheless incredibly determined for a second time that there was sufficient evidence to proceed to a Sexual Misconduct Hearing.  Ex. D at 6.  .

**E.**     **Public Pressure on NYU to Aggressively Prosecute John Doe**

Among other things (AC ¶¶ 138-48), on August 15 – 16, 2018, approximately two weeks before NYU held the First Sexual Misconduct Hearing of Roe's allegation against Doe, a female NYU student and alleged rape victim issued a series of social media posts alleging NYU had failed her as a victim of sexual misconduct by declining to sanction two male students for alleged nonconsensual sex.  *Id.* ¶ 135.  The post was distributed to at least 1000 people with other women commenting, *inter alia*, that "I hope these protests and riots make NYU see that what they're pulling is detrimental to the entire female student body."  Other comments to the NYU student's post included: (i)"Absolutely horrifying.  NYU is likely in for a year of protests, it's been brewing for ages.  Women at our school are fed up"; and (ii) "NYU does not protect its female students . . . NYU has failed me and countless other girls, teaching us that standing up for ourselves is a complete waste of our time."  *Id.*

Also, immediately prior to NYU's further investigation of the Alleged Incident after an appeal, on October 20, 2018, *The New York Post* published an article with the headline "Hundreds of sex misconduct incidents reported at Cornell, NYU" and reporting that 100 sexual misconduct complaints were made in the first five months of 2018 and quoted an NYU spokeswoman as stating that "our students feel more comfortable coming forward to file these kind of reports." *Id.* ¶ 136.

**F.     The "First Sexual Misconduct Hearing"**

NYU commenced the "First Sexual Misconduct Hearing" on August 22, 2018, nearly six months after the initiation of the investigation into Roe's report.  AC ¶¶ 101-02.  Defendant NYU selected Defendant Jolley, the Director of NYU's OSC, to be the Adjudicator for the Sexual Misconduct Hearing despite the fact that he participated in the investigations to date by NYU and demonstrated bias against John Doe as the accused male by limiting the Title IX Investigators to interviews of three witnesses despite the fact that numerous other witnesses had been identified by the Complainant and John Doe.  *Id.* ¶ 104.  Additionally, Defendant Metzler, an attorney from the NYU Office of General Counsel, was appointed "Advisor to the Adjudicator."  *Id.* ¶ 105.  In addition to Jolley and Metzler, Defendants Hodge, Maeder, Shepard also attended the First Sexual Misconduct Hearing on behalf of NYU.  *Id.* ¶ 106.

No witnesses to the Alleged Incident attended the Hearing in person.  *Id.* ¶ 108. Inexplicably, Defendant Jolley did not request that any of the witnesses that were identified in the First and Second NYU Investigation Reports or identified by the parties to attend the hearing to provide testimony.  *Id.* ¶ 109.

At the Hearing, John Doe's attorney was not permitted to question Jane Roe.  *Id.* ¶ 110. Instead, he was directed to provide written questions to Defendant Jolley for consideration in

consultation with Defendant Metzler.  *See id.*  Despite the many inaccurate statements and blatant inconsistencies in Roe's account of events, the Defendants Jolley and Metzler chose to ignore several key questions submitted to them on Doe's behalf, that would have provided an a complete defense to the allegations at the time of the hearing.  *Id.*

Despite clear, affirmative evidence to the contrary, Defendant Jolley erroneously found that "[c]onsidering the totality of these circumstances, I find that a preponderance of the evidence supports that the Complainant was in ***a condition of incapacitation*** on the night of March 17, 2017, that a reasonable sober person in the position of the Respondent should have recognized this condition, and that the Respondent nonetheless engaged in sexual intercourse with the Complainant."  *Id.* ¶ 113; Ex. E.  A plain reading of Defendant Jolley's Decision shows that Jolley adopted inconsistent and ever-shifting statements given by Jane Roe and her friend, E.G., as to Roe's level of intoxication, while also disregarding exculpatory testimonial and documentary evidence as to Roe's level of intoxication immediately prior to encountering Doe that evening.  *See generally* Ex. E; AC ¶¶ 116, 118.

On the basis of this erroneous outcome, the NYU Defendants imposed the following sanctions on John Doe: (i) a suspension for five semesters; (ii) a declaration that John Doe would be a *persona non grata* at NYU during the term of his suspension; (iii) a notation placed on his academic transcript that he was suspended after a finding of responsibility for a code of conduct violation that would remain on his transcript for no less than one year after the conclusion of John Doe's suspension after which he would have to apply to NYU for removal of the notation, (iv) submit to a reenrollment process as a condition for returning to NYU; and (v) have no contact with Jane Roe (either directly or by third parties) during the remainder of his enrollment at NYU.  Ex. E at 5.

Defendant Jolley wrote that he was imposing harsh sanctions on Doe because of his "apparent failure to recognize the impact and harm caused by his conduct.  During the hearing, **the regrets repeatedly expressed by the Respondent seemed to be only about the location of the sexual activity and not wearing a condom, with no apparent understanding or reflection about how the situation has impacted Complainant**."  *Id.* (emphasis supplied).  Defendant Jolley also wrote that his decision was motivated by the fact that Doe's encounters with Roe prior to the Alleged Incident "had consisted only of occasional text messages and a single encounter for about twenty minutes that occurred some five months earlier" and that "[t]hey had never had any discussion or behavior to suggest romantic or sexual interest and had never engaged in any physical intimacy prior to this night."  *Id.* at 4.

G.      **Appeal of Defendant Jolley's Decision and Remand by the Appeal Panel**

John Doe, with the assistance of counsel, timely appealed Defendant Jolley's Decision to NYU's Appeal Panel, exposing NYU's failure to "investigate equitably material facts probative of the Complainant's alleged intoxication, which are material procedural matters in fairly determining this matter and, worse, breaches of NYU's responsibilities under Title IX."  AC ¶ G(1).

On October 1, 2018, The Sexual Misconduct Appeal Panel  issued a Sexual Misconduct Appeal Panel Decision (the "Appeal Decision") holding that the Adjudicator's finding of "sufficient evidence" of sexual assault due to Jane Roe's alleged incapacitation as defined by NYU Policy was in error.  *Id.* ¶ G(2).  The Appeal Panel cited specific evidence inconsistent with Defendant Jolley's finding of incapacitation.  *Id.* ¶ G(3).  The Appeal Panel also found that NYU's Title IX Investigators did not interview witnesses "who may have evidence that is highly probative of Complainant's level of intoxication prior to her sexual encounter with Respondent –

prior to the hearing." *Id.* ¶¶ G(4), G(6).  Based upon its determinations, the Appeal Panel sent the matter back "for further investigation" and "further proceedings."  *Id.* ¶ G(5).

**H.**   **"The Third NYU Investigation"**

On November 27, 2018, the same Title IX Investigators, Defendants Cornell, Hodge, Tomaselli, and Wade who disregarded material evidence and witnesses and who performed the same fatally flawed and biased initial investigation, issued a new "Investigation Summary Report" to Defendant Jolley.  *Id.* ¶ 127; Ex. G.  The Post-Appeal Report now included interviews of no less than seven additional witnesses not previously interviewed by Defendants Cornell, Hodge, Tomaselli, and Wade prior to the First Sexual Misconduct Hearing.  Statements from these additional witnesses, as set forth in the new Investigation Summary Report, completely and unequivocally precluded any possible finding that Roe was in a state of "incapacitation" at the time of the Alleged Incident and further discredited her version of events, thus further establishing that there was no basis to find that there was sufficient evidence that Doe violated NYU Policy. *See generally* Ex.  G.

Despite substantial new and exculpatory evidence in direct conflict with the sole ground upon which Defendant Jolley issued his decision (incapacitation), Defendants Cornell, Hodge, Tomaselli, and Wade, in consultation with other, unknown University administrators, again erroneously determined that there was "sufficient evidence" to be considered by an adjudicator as to whether John Doe violated NYU Policy.  AC ¶ 128-132; Ex. G at 20.

**I.**   **The Second *De Novo* Sexual Misconduct Hearing**

On January 2, 2019, the OSC notified John Doe that it conducted "further investigation" and that a second "Sexual Misconduct Hearing" would be held on January 28, 2019.  AC ¶ 149. In violation of its own Procedure, requiring "pre-hearing" appointment of an "external

adjudicator" for designated reasons, NYU advised John Doe that a second, *de novo* Sexual Misconduct Hearing would take place before an arbitrator not affiliated with NYU (the "External Arbitrator"). *Id.*

Following the Second Sexual Misconduct Hearing, the External Arbitrator issued a Summary and Decision in which she found by a preponderance of the evidence that Doe was not responsible for a sexual assault of Roe under NYU Policy and thus affirmed that each and every prior determination by the NYU Defendants finding there to be sufficient evidence of a sexual assault by John Doe was erroneous and the product of gender bias and the NYU Defendants' predetermination that John Doe would be found guilty of a sexual assault. *Id.* ¶ 152; Ex. H. This was the first time a non-NYU employee with real investigative and subject matter experience, came to the clear and correct decision in this matter.

In total, after an investigation that lasted more than eleven months, two full disciplinary hearings, and two formal appeals, Mr. Doe was found to be innocent of any sexual misconduct, or any violation of NYU policy whatsoever, and no sanctions were ultimately imposed against him. However, Mr. Doe and his family have suffered tremendous emotional and financial damage as a result of this outrageous process. In total, Doe was under investigation and subject to disciplinary proceedings for a sexual assault that he did not commit for over a year from February 18, 2018 through March 6, 2019, proceedings that were unnecessarily prolonged due to NYU and its Title IX Investigators' bias and unrelenting desire to find Doe guilty of a sexual assault of a female at all costs. *Id.* ¶ 155-58.

**ARGUMENT**

**I.      THE MOTION TO DISMISS STANDARD FOR TITLE IX CLAIMS**

In their brief, Defendants blatantly disregard the standard to be applied on a motion to dismiss claims based upon discrimination. As stated in *Doe v. Columbia*, 831 F.3d 46, 54 (2d. Cir. 2016), beginning with the case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court has held that a plaintiff sufficiently states a claim for discrimination under federal statute by "present[ing] only minimal evidence supporting an inference of discrimination" "until the defendant furnishes a nondiscriminatory reason for the adverse action it took against plaintiff." *Doe v. Columbia*, 831 F.3d at 54 (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). This is referred to as the *McDonnell Douglas* temporary presumption.

As explained by the Second Circuit in *Doe v. Columbia*, although the standard set by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) – that a complaint must plead specific facts sufficient to support a plausible inference that the defendant is liable for the misconduct alleged – applies, at the motion to dismiss stage, the "allegation of facts supporting a minimal plausible inference of discriminatory intent suffices as the element of the claim because this entitles the plaintiff to the temporary presumption of *McDonnell Douglas* until the defendant furnishes its asserted reasons for its action against the plaintiff." *Doe v. Columbia*, 831 F.3d at 55 (*citing Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015). Indeed, as expressly stated by the Second Circuit in *Doe v. Columbia*, the temporary presumption afforded to Plaintiff by *McDonnell Douglas*, is the reason the Second Circuit has "often vacated 12(b)(6) and 12(c) dismissals of complaints alleging discrimination." 831 F.3d at 54, n.8 (citing authority). The Second Circuit further stated that based upon the *McDonnell Douglas* presumption, "[w]e have also cautioned district

courts against imposing too high a burden on plaintiffs alleging discrimination at the 12(b)(6) stage." *Id.* (*citing Dawson v. N.Y.C. Transit Auth.*, 624 Fed. Appx. 763, 770 (2d Cir. 2015) ("[a]t the pleading stage, district courts would do well to remember this exceedingly low burden that discrimination plaintiffs face . . .")

The NYU Defendants simply ignore the *McDonnell Douglas* framework that must be applied to Doe's Title IX claim under Second Circuit law in their motion to dismiss.  In fact, the *McDonnell Douglas* case is not mentioned once in their brief.  This is not only misleading to the Court, but improper.  Accordingly, Defendants' arguments which are premised solely on the *Iqbal* standard are inapplicable and must be rejected entirely for this reason.  As recently as last month, the Second Circuit made clear that a plaintiff asserting a discrimination claim in a Title IX proceeding against a university need only show ***"a minimal inference of sex bias."***  *Menaker v. Hofstra University*, No. 18-3089-cv, 2019 WL 3819631, at * 5 (2d Cir. Aug. 15, 2019) (quoting *Doe v. Columbia*, 831 F.3d at 59).

In  *Menaker,* the Second Circuit reversed the District Court's decision dismissing plaintiff's Title VII claims against Hofstra University as well as his claims under the New York State Human Rights Law (the "NYSHRL"), and the New York City Human Rights Law (the "NYCHRL") alleging that he was terminated on the basis of sex discrimination on a motion to dismiss and reiterated that the correct standard to be applied to discrimination claims on a motion to dismiss is that a plaintiff alleging sex discrimination states a *prima facie* case by alleging "circumstances giving rise to an inference of discrimination."  *Menaker,* 2019 WL 3819631, at *4 (*citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015)).  In *Menaker,* the Second Circuit reviewed and

reaffirmed its decision in *Doe v. Columbia* and expressly stated that the law set forth in *Menaker* applies equally to Title IX clams.

## II.     DOE'S TITLE IX CLAIM IS PROPERLY PLED

A selective enforcement claim arises when a plaintiff alleges that "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994).  In the Amended Complaint, Doe alleges a very specific set of circumstances by which the NYU Defendants targeted him as a male in an investigation and prosecution of a female student's claim of an alleged sexual assault that occurred one year prior, and took all possible steps to find Doe guilty of the assault and impose harsh discipline on him as the alleged male aggressor.  The circumstances alleged by Doe in this case mirror the circumstances alleged in both the *Menaker* and *Doe v. Columbia* cases.  Doe has alleged a litany of highly unusual procedural irregularities in the NYU's investigation and disciplinary proceedings and that these irregularities occurred at a time when NYU (like Columbia in *Doe v. Columbia*) was under enormous pressure to hold male students accountable for sexual assaults on female students.  In *Menaker*, the Second Circuit held that these allegations sufficiently state a discrimination claim and stated:

> [t]he plaintiff in *Doe v. Columbia* advanced precisely such a claim.  His complaint alleged an atmosphere of public pressure demanding that the university act more swiftly and severely to female complaints of sexual assault against males.  The complaint also alleged substantial procedural irregularities in the investigation and adjudication of the accusations against the student.  These irregularities included: the university's failure 'to seek out witnesses [he] had identified as sources of information favorable to him,' its failure 'to act in accordance with University procedures designed to protect accused students,' and its arrival at conclusions that were 'incorrect and contrary to the weight of the evidence.'")

*Menaker*, 2019 WL 3819631, at * 6 (*quoting Doe v. Columbia*, 831 F.3d at 56-57).

Like the plaintiffs in the *Menaker* and *Doe* cases, Plaintiff here alleges that over the course of a year, the NYU Defendants consistently chose to accept the female student's unsupported accusatory version of Doe's sexual encounter with Roe over his account as the male student (AC ¶¶ 84, 92), refused to interview witnesses that could have (and did have) exculpatory evidence (*id.* ¶¶ 86, 90-91, 97), and incorrectly concluded Doe to be guilty of a sexual assault in the face of evidence to the contrary not once, but twice after Doe appealed Defendant Jolley's decision after the first disciplinary hearing (*id.*, ¶¶ 104-119).  It would be determined much later in the proceedings that the witnesses the Title IX Investigators refused to interview had information that wholly contradicted Roe's account of the Alleged Incident, which was favorable to Doe, and which would ultimately absolve him of any wrongdoing.  Having already held that such allegations sufficiently state a claim for sex discrimination, there is no question that these claims survive a motion to dismiss under applicable Second Circuit law.  *See Menaker*, 2019 WL 3819631, at * 5; *Doe v. Columbia*, 831 F.3d at 59.

Moreover, additional grounds for whether gender discrimination was a substantial or motivating factor for a school's actions can be (i) statements indicating bias, and (ii) when combined with procedural irregularities, *minimal* evidence of pressure on the university to act on invidious stereotypes.  *See Doe v. Columbia*, 831 F.3d at 56-57; *Menaker*, 2019 WL 3819631, at *7.  As to defendant Jolley, specifically, his Decision stated that "[d]uring the hearing, the regrets repeatedly expressed by [Mr. Doe] seemed to be only about the location of the sexual activity and not wearing a condom, with no apparent understanding or reflection about how the situation has impacted [Roe]."  AC ¶ 115 (emphasis supplied).  That gender-charged statement is far from a neutral comment like the one discussed in *B.B. v. The New Sch.*, 2018 WL 2316342, at

16

*7 (S.D.N.Y. Apr. 30, 2018), and the proceedings over which he presided were plainly biased for all of the reasons alleged in the AC. *Id.* ¶¶ 104-119.

Indeed, Defendant Jolley's statement is profound in that he admits that his decision was not the product of an objective view of the evidence, but rather motivated by his own bias that Roe, as the female, was a victim of her encounter with Doe, the male. Indeed, in the face of both written evidence (the text messages) and testimony from friends to the contrary, Defendant Jolley wholly credited Roe's version of events and admonished Doe for not being as sorry as the Defendant Jolley thought he should have been for his encounter with Roe which, by all credible evidence, was completely voluntary. Plainly, Defendant Jolley was motivated to find Doe guilty at the hearing and punish him harshly on the basis of his sex as a male whom Jolley perceived not to be remorseful enough at the hearing for a sexual encounter with Jane Roe, a female. In fact, John Doe was later found to be innocent of the alleged sexual assault and therefore had nothing to be remorseful for. The plain import of Jolley's statements is that he found John Doe to be guilty of sexual assault not on the basis of fact but rather based upon gender bias against John Doe as a male because his encounter with Jane Roe was not "romantic." Defendant Jolley's erroneous decision motivated by bias against John Doe as a male was further discredited by the fact that Roe's own friends testified that, in fact, she had expressed a romantic interest in Doe and even referred to him as the "cute Asian boy."

The independent External Arbitrator's ultimate decision exonerating Doe also establishes that Defendant Jolley drew conclusions that were incorrect and contrary to the weight of the evidence. In particular, the External Arbitrator determined that the "evidence clearly establishes that Complainant was not 'incapacitated' within the meaning of the Policy" (Ex. H at 4) – wholly rebuking the sole ground upon which Defendant Jolley imposed a two and a half year suspension

upon Doe. Moreover, with respect to text message evidence presented at the First Sexual Misconduct Hearing – consideration of which was entirely absent from Jolley's Decision – the External Arbitrator determined that Roe's written description of herself as only "drunkish" provided no basis upon which a reasonable person in Doe's position would have mistaken Roe as incapacitated.

In addition, as NYU acknowledges (Defs. Mem. at 23-25), Doe has alleged a series of allegations about public pressure facing universities in the New York metro area, and NYU specifically, to aggressively prosecute Title IX claims in favor of their female students. AC ¶¶ 135-40. But, the AC alleges that NYU faced public pressure beyond those sustained in *Doe v. Columbia*. Specifically, only two weeks before Mr. Doe's Title IX hearing, a female student and alleged rape victim published a series of social media postings claiming NYU had failed her as a victim of sexual misconduct. AC ¶ 135. NYU's opportunity to reassure its female student body conveniently came at Doe's First Sexual Misconduct Hearing. NYU attempts to downplay the significance of this social media by contending that distribution to only 1000 people renders unreasonable any inference of gender bias. This argument was explicitly struck down in *Menaker*. *Menaker*, 2019 WL 3819631, at *7 ("[T]his does not mean that press coverage or public pressure must reach a particular level of severity. On the contrary, when combined with clear procedural irregularities in a university's response to allegations of sexual misconduct, even *minimal* evidence of pressure on the university to act based on invidious stereotypes will permit a plausible inference of sex discrimination.").

In their motion to dismiss, the NYU Defendants seek to excuse their deplorable, discriminatory conduct by taking a "no harm, no foul" approach since the External Adjudicator exonerated him after all of these painful proceedings and two appeals of erroneous decisions by

the NYU Defendants during which he was discriminated against as the male accused of a sexual assault on a female student.  However, as stated in *Menaker*, inferences of procedural irregularity cannot be denied through post-hoc rationalization.  2019 WL 3819631, at *9.  NYU's excuse establishes nothing more than the fact that Doe was lucky to have the means to retain counsel to prevent him from being railroaded into being held guilty on the basis of his sex for a sexual assault that he did not commit.  Indeed, it was not until Doe raised to the Appellate Panel the blatant procedural and investigative failings of this Title IX proceeding were NYU's Title IX investigators instructed to collect potentially exculpatory material.  Unfortunately, most students are not as lucky as Doe.  That is why it is critical that the NYU Defendants be held accountable here for their selective enforcement against him.

Faced with a clear-cut case of selective enforcement, the NYU Defendants are forced to argue that Doe has insufficiently alleged a claim for sex discrimination based upon "selective enforcement" because he has not alleged that similarly-situated female students have been treated more favorably than him as a male.  Defs. Mem. at 11-14.  This argument is both nonsensical and untenable under Second Circuit law.[3]  As stated by the *Menaker* Court, sex discrimination can be inferred from the fact that "the university had been criticized for 'not taking seriously complaints of *female* students alleging sexual assault by *male* students.'  We reasoned that it was plausible that the university was motivated to 'favor the accusing female over the accused male' in order to demonstrate its commitment to protecting female students

---

[3] Among other non-binding and unpersuasive authority that the NYU Defendants' rely upon for this contention is *Austin v. Univ. of Oregon*, 925 F.3d 1133 (9th Cir. 2019).  However, the 9th Circuit has not adopted the binding pleading requirements set forth in *Doe v. Columbia*.  *Id.* at 1137 ("We read the Second Circuit's application of the *McDonnell Douglas* presumption at the pleading stage as contrary to Supreme Court precedent, and we decline to embrace that approach.").

from male sexual assailants.'"  *Menaker*, 2019 WL 38219631, at * 6 (*quoting Doe v. Columbia*, 831 F.3d at 57) (emphasis in original).  By this precedent, how female students accused of sexual assault were treated versus male students is irrelevant.  Doe's allegation that he was treated less favorably than Roe in an investigation of an alleged sexual assault *simply because he was male* sufficiently states a sex discrimination claim.

Indeed, Doe has alleged that over the course of a year, the NYU Defendants consistently chose to accept Roe's unsupported accusatory version of the sexual encounter, refused to interview witnesses that could have (and did have) exculpatory evidence about Roe's alleged level of intoxication and credibility, and incorrectly (not once, but twice) that Doe was guilty of a sexual assault in the face of evidence to the contrary.  *See* AC ¶¶ 89-91; Exs. G, H.  Accordingly, Doe has more than sufficiently alleged circumstances supporting a claim for sex discrimination under Title IX.

Even accepting the NYU Defendants' erroneous interpretation of the law, the Court must on a motion to dismiss, the Court must "draw all reasonable inferences" in favor of plaintiff, including that female students were treated more favorably than male students in investigations of sexual assault.  *Menaker*, 2019 WL 38219631, at * 5.  It is a more than reasonable inference from Doe's allegations that similarly-situated female students were treated more favorably than Doe.  It is also a reasonable inference that other males were treated less favorably than female accusers in similar circumstances, thus further demonstrating a pattern of bias against males in sexual assault investigations.

The death knell for Defendants' argument that Doe cannot state a claim for sexual discrimination because he has not alleged that any similarly-situated female was treated more favorably is the NYU Procedures annexed to the Feinberg Declaration at Exhibit B.  As stated

therein, NYU's investigations of sexual misconduct will be conducted with "Privacy and Confidentiality" which have "distinct meanings under this policy." NYU Procedures, § IV(B). "Privacy generally means that information related to a report of misconduct will be shared with a limited circle of individuals who 'need to know' in order to assist in the active review, investigation, resolution of the report, and related issues." *Id.* Clearly, Doe would not be an individual who "needs to know" about any sexual misconduct claims by "similarly situated females" at NYU and thus would not have access to this information based upon NYU's own Procedures which it has submitted to the Court in support of its Motion to Dismiss. According to NYU's Procedures, "[c]onfidentiality means that information shared by an individual with designated campus or community professionals ***cannot be revealed to any other individual without express permission of the individual, or as otherwise permitted by law.*** *Id.* (emphasis supplied). The "designated campus and community professionals" are specifically defined to include medical providers, mental health providers, counselors in the Center for Sexual Misconduct Support Services, and the ordained clergy, all of whom normally have privileged confidentiality that is recognized by New York State law." Obviously, Doe does not qualify as one of these "designated campus and community professionals" and thus could not possibly have access to investigations of sexual misconduct against any other student, including "similarly situated females." Defendants should not be permitted to avoid the consequences of their discrimination based upon the impossibility of Doe having access to information about other disciplinary proceedings based upon NYU's own Procedures. *See Doe v. Coastal Carolina Univ.*, 359 F. Supp. 3d 367, 377 (D.S.C. 2019) ("Given the confidential nature of disciplinary proceedings against students accused of sexual misconduct, it is difficult to imagine how Plaintiff could plead the existence of such proceedings in greater factual detail."); *Ritter v.*

*Oklahoma City Univ.*, 2016 WL 3982554, at *2 (W.D. Okla. July 22, 2016) ("It is highly unlikely defendant would or possibly could willingly disclose the factual information it criticizes plaintiff for not alleging in his complaint.").

Such a result would be contrary to the express purpose of Title IX, all possible notions of fairness and equity, and law. *See Menaker,* 2019 WL 38219631, at * 4 (*citing Littlejohn*, 795 F.3d at 311 ("explaining that because the submission of a complaint 'by definition … occurs in the first stage of litigation,' a 'plaintiff cannot reasonably be required to allege more facts in the complaint than [he] would need to default a motion for summary judgment made prior to the defendant's furnishing of a non-discriminatory justification.'"). For all of these reasons, the NYU Defendants' argument that Defendant fails to state a Title IX claim because he purportedly did not allege that "similarly situated females" were not discriminated against in proceedings to which he was not a party and expressly barred from having knowledge of must be denied. By even making this argument, the NYU Defendants have conceded that this case must proceed to discovery and should not be dismissed at the motion to dismiss stage.

## III. PLAINTIFF HAS ALSO SUFFICIENTLY STATED CLAIMS UNDER NEW YORK STATE LAW

In addition to Plaintiff's Title IX sex discrimination against Defendant NYU, Plaintiff asserts the following claims under New York State law: (i) Count II against all of the Defendants for violation of the NYSHRL (AC ¶¶ 181-202); (ii) Count III against Defendant NYU (*id.*, ¶¶ 203-211); (iii) Count IV against all Defendants for negligent infliction of emotional distress (*id.*, ¶¶ 212-18); (iv) Count V against all Defendants for Intentional Infliction of Emotional Distress (*id*., ¶¶ 219-26); and (v) Count VI for breach of the covenant of good faith and fair dealing against Defendant NYU (*id*., 227-30). For the reasons set forth below, each of these claims has been sufficiently alleged.

**A.      Plaintiff Has Sufficiently Alleged a Claim for Sex Discrimination Under NYSHRL Against NYU and the Individual Defendants.**

Section 296(4) of the NYSHRL states in relevant part that "[i]t shall be an unlawful discriminatory practice for an educational institution to . . . permit the harassment of any student or applicant, by reason of his race, color, religion, disability, national origin, sexual orientation, military status, sex, age or marital status . . ." N.Y. Exec. Law § 296(4).  Here, Plaintiff alleges that the NYU Defendants discriminated against him on the basis of his sex and thus violated the NYSHRL in that from the time that Jane Roe reported a claim against him on February 21, 2018, and throughout *three separate investigations* over the course of the next year, the NYU Defendants took every possible action to hold Doe guilty of a sexual assault that he did not commit.  Defendants' alleged discriminatory actions include, but were not limited to: (i) the OEO Investigators' complete disregard of highly relevant exculpatory evidence (AC ¶¶ 87-114; (ii) the OEO Investigators' outright refusal to interview witnesses with direct knowledge of Roe's level of intoxication and other exculpatory facts until being forced to go back and interview those witnesses by an appeals panel that questioned NYU's and Jolley's finding of guilt after Doe's initial disciplinary hearing (*id.*, ¶¶ 87-91, 94-100, pp. 30-31); (iii) a fatally flawed disciplinary hearing at which Defendant Jolley and his legal advisor, Metzler, gave Roe every possible advantage, failed to call known witnesses to testify, and erroneously held Doe to be guilty (*id.*, ¶¶ 101-119); and (iv) all of the NYU Defendants repeatedly violated NYU's Policy and Procedures in order to reach a predetermined finding Doe guilty of a sexual assault as a male predator not once, but *twice*, in the face of evidence to the contrary (*id.*, ¶¶ 70-132).  The only plausible explanation for Defendants' conduct is gender bias and Plaintiff has more than sufficiently demonstrated the "minimal inference of discriminatory motivation" required to

establish a *prima facie* case of unlawful discrimination in violation of the NYSHRL.  *Menaker,*
2019 WL 3819631, at * 6-8.

Section 296(d) of the NYSHRL provides that individuals may be personally liable for
NYSHRL violations and states that it is an unlawful discriminatory practice "for any person to
aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the NYSHRL],
or attempt to do so." N.Y. Exec. Law § 296(6).  Furthermore, it is well-settled in the Second
Circuit that where a defendant actually participates in the conduct giving rise to a discrimination
claim, he can be held personally liable under the statute.  *See Tomka v. Seiler Corp.,* 66 F.3d
1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth,* 524
U.S. 742, 754, 118 S. Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton,*
524 U.S. 775, 807, 118 S. Ct. 2275, 141 L.Ed.2d 662 (1998); *Feingold v. New York,* 366 F.3d
138, 158 (2d Cir. 2004); *Novio v. N.Y. Academy of Art*, 286 F. Supp. 3d 566, 582 (S.D.N.Y.
2017).

In *Novio*, the Court made clear that persons who participated in the discriminatory
conduct may be held liable individually and upheld a student's NYSHRL claims for sex
discrimination against a college professor and faculty members.  286 F. Supp. 3d at 582 (*citing
Delisi v. Nat'l Ass'n of Prof'l Women, Inc.*, 48 F. Supp. 3d 492, 495 (E.D.N.Y. 2014)).  Here,
like the plaintiff in the *Novio* case, Doe has alleged that each of the individual defendants
violated the NYSHRL by participating in the selective enforcement of NYU policy and
procedures against Doe.  For example, Plaintiff alleges that Defendants Cornell, Hodge, Wade
and Tomaselli (the "OEO Investigators") participated in the discriminatory conduct by
conducting a wholly biased investigation during which they decided not to interview witnesses
with relevant and exculpatory knowledge that were identified to them and then erroneously held

that there was "sufficient evidence" to proceed to a disciplinary hearing based upon nothing more than Roe's accusation. Am. Compl., ¶¶ 82-100.  As such, Doe has more than sufficiently alleged that the individual OEO Investigators "actually participated in the conduct giving rise to the discrimination claim[s]" (*see Novio*, 286 F. Supp. 3d at 582), as well as aided and abetted discriminatory acts as prohibited by Section 296(d) of the NYSHRL.

With regard to Defendant Jolley (the Director of the OSC), Defendant Shepard (the Assistant Director of the OSC), Defendant Signor (NYU's Title IX Coordinator), and Defendant Maeder (the Assistant Director for Student Conduct and Conflict Resolution for the OSC), who are referred to as the "Members of the OSC" in Defendants' Memorandum (*see* p. 34), Plaintiff has alleged that each of these individuals actually participated in the discriminatory conduct, aided and abetted the discriminatory conduct, and supervised others, i.e. the OEO Investigators, who carried out discriminatory acts, and did nothing to stop the discriminatory conduct.  *See* AC ¶¶ 12-31, 104-114.  On each of these grounds, Plaintiff has sufficiently stated an NYSHRL claim against the OSC Defendants individually.  *See Tomka,* 66 F.3d at 1317 (2d Cir. 1995); *Novio*, 286 F. Supp. 3d at 582; NYSHRL § 296(d).

Plaintiff also alleges that Defendant Jolley, the Adjudicator of the Sexual Misconduct Hearing, and his advisor, Defendant Metzler, participated in the discriminatory conduct by conducting a hearing at which they gave Roe every possible advantage, failed to call witnesses to testify at the hearing who had been identified in the investigation and known to have relevant information (which would later prove to be exculpatory), and decided that Doe had committed a sexual assault by having sex with Roe while she was allegedly incapacitated in the face of clear evidence to the contrary.  AC ¶¶ 101-119.  These allegations further support NYSHRL claims against Defendants Jolley and Metzler individually because Plaintiff has alleged that they not

only participated in and aided and abetted the discriminatory conduct at issue, but were directly responsible for it.   Accordingly, there is no question that Plaintiff has stated a claim under NYSHRL § 296(d) based upon their individual conduct.   *See Johnson v. County of Nassau*, 82 F. Supp. 3d 533, 539 (E.D.N.Y. 2015) (upholding NYSHRL claim against individual employee whose conduct served as the predicate for the alleged discrimination).   Finally, Plaintiff also alleges specific discriminatory statements made by Defendant Jolley at the First Disciplinary Hearing and his unwarranted decision to impose particularly harsh sanctions against Plaintiff despite a complete lack of evidence that Plaintiff had sexually assaulted Roe.   *Id.*   The Second Circuit has made clear that these exact allegations support an inference of sexual discrimination. *See Menaker*, 2019 WL 381631, at * 7 (*citing Doe v. Columbia,* 831 F.3d at 59) (stating that allegation that the evidence substantially favor's one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side without any evidence or the allegation that a decision-maker chose to accept an unsupported accusatory version over that of the accused, and declined to even explore the testimony of the accused witnesses, constitute "'plausible support to the proposition that they were motivated by bias'")

While Defendants may dispute each of these individuals' level of participation in the discriminatory conduct ) in comparison to one another (*see* Defs. Mem. at 33-35), this is no basis upon which these claims against the individual defendants should be dismissed.   Rather, these are issues of fact that are not appropriately decided on a motion to dismiss.   They are also precisely the kind of facts that would not be available to Doe and only in the possession of NYU and therefore must be obtained through discovery.   Similarly, whether Metzler was acting in his legal capacity or not (*see* Defs. Mem. at 34-35), he can still be held liable for participating in

and/or aiding and abetting discriminatory conduct under the NYSHRL.  Contrary to Defendants'

argument (*id.*), there is no "lawyer exception" for discriminatory conduct under the NYSHRL.

**B.     Plaintiff Has Sufficiently Stated A Claim For Breach Of An Implied Contract.**

As Defendants concede in their Motion to Dismiss, a student may bring claims for breach

of an implied contract against his or her university.  Def. Mem. at p. 27 (*citing Routh v.*

*University of Rochester*, 981 F.Supp.2d 184, 207 (W.D.N.Y. 2013).)  Indeed, as stated by the

Second Circuit in *Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81, 93

(2d Cir. 2011), an implied contract exists between a student that has been accepted for

enrollment and his or her university and that the terms of this implied contract are "contained in

the university's bulletins, circulars and regulations made available to the student." *Id*. (*quoting*

*Vought v. Teachers Coll., Columbia Univ.,* 127 A.D.2d 654, 654, 511 N.Y.S.2d 880 (2d Dep't

1987).  As further stated by the Second Circuit in *Papelino*, "[i]mplicit in the contract [between

student and university] is the requirement that the institution "'act in good faith in its dealing

with its students.'" *Papelino*, 633 F.3d at 93 (*quoting Olsson v. Bd. of Higher Educ.,* 49 N.Y.2d

408, 413–14, 426 N.Y.S.2d 248, 402 N.E.2d 1150 (1980).[4]

Significantly, in *Papelino*, the Second Circuit upheld students' claim for breach of

implied contract based upon its finding that the University breached its implied duty of good

faith by, *inter alia*, failing to investigate Papelino's complaint of sexual harassment.  *Papelino*,

633 F.3d at 94.  This Second Circuit law applies equally here where NYU failed to investigate

---

[4] It is well to note that NYU ignores the *Papelino* case entirely in the section of its brief arguing for dismissal of Doe's breach of contract claims.  *See* Defs. Mem. at pp. 27-33.  The only mention of *Papelino*  in Defendans' Memorandum appears in a single citation on page 15 of the brief when Defendants' cite the case in support of their argument that Doe has not alleged a Title IX claim for hostile environment.

the accused's denial of sexual misconduct.  Thus, by Second Circuit law, NYU has breached its implied contract with Doe.  *See* AC ¶¶ 61-132.

Defendants do not dispute that Plaintiff has identified the exact "university[] bulletins, circulars and regulations made available to [him]" that were breached i.e.: (1) NYU's Sexual Misconduct, Relationship Violence, and Stalking Policy (the "NYU Policy") (*id.*, ¶¶ 61-69); and (2) NYU's Procedures for Reporting, Investigating and Resolving Sexual Misconduct, Relationship Violence, and Stalking Complaints Against Students (the "NYU Procedures") (*id.*, ¶¶ 70-74).  *Papelino*, 633 F.3d at 94 (*quoting Vought*, 127 A.D.2d at 654, 511 N.Y.S.2d 880 (2d Dep't 1987).  In fact, Plaintiff identifies each and every section of the NYU Policy and NYU Procedures that NYU breached and how NYU breached each of those promises in his Amended Complaint and thus sufficiently states a claim for breach of implied contract.  *See* AC ¶¶ 2, 61-74, 77, 80-81, 85-87, 91-93, 99-104, 126, 207-209.

In the face of Plaintiff's highly specified allegations of specific sections of NYU's Policy and Procedures that were breached, NYU attempts to miscast Doe's allegations as simply alleging violation of a "broad pronouncement" that cannot constitute a claim for breach of implied contract.  Def. Mem. at p. 28 (*citing Ward v. New York Univ.*, 2000 WL 144861, at * 4 (S.D.N.Y. Sept. 28, 2000); *Doe v. Syracuse Univ.*, 341 F. Supp. 3d 125, 141 (N.D.N.Y. 2018)).  By way of illustration, the plaintiff in *Ward* relied upon such vague policy statements as the university would "provide a great learning environment for adult students."  *Ward v. New York Univ.*, 2000 WL 144861, at * 4.  Likewise, the plaintiff in *Syracuse Univ.* primarily relied upon vague policies that asserted the university would conduct a "full and fair investigation" and treat him in a "fundamentally fair manner" or in a manner "consistent with fundamental student

rights." Here, in stark contrast to those allegations, Plaintiff has identified each and every specific section of NYU's Policy and NYU Procedures he alleges was breached by NYU.

In just one example, Plaintiff alleges that NYU breached Section III(A) of the NYU Procedures which makes an explicit promise to students accused of sexual misconduct that the "first step" of NYU's investigation of the alleged misconduct would be to appoint either an Investigator from the OEO or an external agency who would conduct a "prompt, thorough, and impartial Investigation of the report." NYU Procedures, § III(A). By no stretch of the imagination could NYU's three investigations of the accusation made by Roe over the course of a year during which NYU's investigators repeatedly failed to interview witnesses and consider exculpatory evidence be considered the "impartial" or "thorough" Investigation required by Section III(A) of the NYU Procedures. *See* AC ¶¶ 70-132. Indeed, it was not until after Doe's appeal of NYU's second erroneous decision, i.e. at the very ***last step*** of its year-long proceedings against Doe, that NYU finally appointed an impartial adjudicator unaffiliated with NYU, Judge Greenspan, who considered all of the evidence *de novo* and found Doe not liable of any sexual misconduct. Based upon its own Procedures stating an "Investigation typically will be completed within thirty-five days from the date of the initiation of the Investigation," the year-long, ongoing investigation by NYU was a clear violation of Section III(A) of NYU Procedures which required a prompt, thorough, and impartial investigation to be the "first step" of any investigation of sexual misconduct.

In another example, Doe alleges that NYU breached Section IV(A)(iii) of the NYU Procedures by failing to provide sufficient notice of "the provisions of the Policy alleged to have been violated." AC ¶ 81. Incredibly, NYU does not dispute in its motion to dismiss that it failed to comply with its own Policy (and one of the most basic tenants of law that a person is entitled

to *Miranda* warnings upon being charged with a crime) and failed to identify the provisions of the Policy that Doe allegedly violated in advance of the Disciplinary Hearing.  Defs. Mem. at 28-29.   Rather, NYU attempts to argue that because the notice was "pre-hearing", it was not violated.  *Id.*  This argument is contrary to the very language of Section IV(A)(iii) stating that the accused will be given written "Notice of Hearing" and that such notice would generally be provided ten days prior to the hearing and that the Notice would include "the date, time, and location of the hearing, ***the charges to be reviewed by the Adjudicator***, including the date, time, location and factual allegations concerning the violation; ***the provisions of the Policy alleged to have been violated****;* and the sanctions that may be imposed."  NYU Procedures, § IV(A)(iii). (Emphasis added.)

Furthermore, the undeniable purpose of this required notice is to afford the student accused of sexual misconduct to prepare for the hearing in advance so that he may adequately defend himself.  The fact that these same Procedures that  prohibit the accused from having more than one "advisor" present at the Hearing and expressly state that said "advisor" "may not speak of otherwise participate in the hearing, may not address the Adjudicator or question witnesses, and must comport him/herself in a manner that is not disruptive to the hearing or meetings" (*id.* at §(B)(2)(a) makes the need for advance written notice of the violations and possible sanctions in advance of the hearing enormously critical to a student's defense of sexual misconduct at the Hearing.  By failing to comply with its own Procedures in this regard, NYU put Doe in the position of walking into a Disciplinary Hearing at which he would be charged with sexually assaulting Roe while she was incapacitated in violation of NYU Policy § VIII(C) without any prior notice.  By doing so, NYU breached Section IV(A)(iii) of the NYU Procedures.

In addition to these examples, the Amended Complaint contains numerous allegations of other specific sections of the NYU Policy and NYU Procedure that were breached by NYU.  *See* AC ¶¶ 2, 61-74, 77, 80-81, 85-87, 91-93, 99-104, 126, 207-209.  Any one of these allegations is a sufficient basis upon which Defendants' motion to dismiss Plaintiff's breach of implied contract should be denied.

### C.    Plaintiff Has Sufficiently Stated Claims for Intentional and Negligent Infliction of Emotional Distress and Breach of the Covenant of Good Faith and Fair Dealing.

Defendants argue that Plaintiff's tort claims must be dismissed as duplicative of Plaintiff's breach of contract claims.  (Defs. Mem., pp. 32-33.)  Plaintiff, however, is permitted to allege breach of contract and tort claims in the alternative at the pleading stage.  *See, e.g. Papelino*, 633 F.3d at 95 (reversing lower court's dismissal of Title IX, breach of contract and negligence claims).  Moreover, Doe has alleged conduct on the part of the NYU Defendants that far exceeds the specific breaches of NYU Policy and Procedures that underlie his implied breach of conduct claim.  As such, these claims are not redundant and therefore there is no basis to dismiss them as such at this early stage of the litigation.

In New York, in order to state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress. *See Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 374-75 (S.D.N.Y. 2016) (*citing Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115, 121, (1993).  Contrary to Defendants' argument (*see* Defs. Mem. at 32-33), Plaintiff has more than adequately alleged "extreme and outrageous conduct" on the part of the NYU Defendants. *Nungesser*, 169 F. Supp. 3d 353, 374-75 (*citing Howell*, 81 N.Y.2d at 121).  Plaintiff is a young

man who left his family and friends in China to study at NYU and in the midst of his college experience was subjected to horrific, Kafkaesque proceedings by the NYU Defendants based upon a discreditable allegation of sexual assault by Roe.  As alleged in the Amended Complaint, the NYU Defendants' extreme and outrageous conduct consisted of conducting no less than three separate investigations and two separate disciplinary hearings over the course of a year during which they took every possible opportunity to find Doe guilty of a sexual assault that he did not commit, and turn a blind eye to exculpatory evidence that would support his innocence, and shame him into not being remorseful enough for his conduct and the alleged "impact and harm" it caused Roe - when in fact Roe's suitemate, a witness that the OEO Investigators failed to interview until after Doe's appeal, said she was "surprised" to hear Roe accusing Doe of "rape" because she had "a specific recollection of Jane Roe being 'proud' of the encounter with John Doe in the days after it happened".[5] and deprive him of basic human rights such as being timely notified of his alleged misconduct and being given sufficient time to defend himself.  During these proceedings, he was allowed to be repeatedly denigrated by Roe as a "rapist" and suffer (and continues to suffer) the fear and stigmatization associated with having been a subject of a year-long investigation of a sexual assault that he did not commit.[6]  It is hard to characterize the NYU Defendants' conduct as anything short but "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

---

[5] *See* AC ¶¶ 101-119; 126-32.

[6] Contrary to Defendants' claim that Doe has not identified who called him a "rapist", Doe clearly identifies Roe as the person who made this horrible remark and who continued to call him a "rapist" during the interminable proceedings that Doe was subjected to.  *See* AC ¶ 32.  Surely, the NYU Defendants' notes of these proceedings will reflect this.  Also, it is clear from the belated witness interviews that Roe continued to call Doe a "rapist" while the proceedings were ongoing, having been encouraged to espouse this false theory by the fact that it was credited by NYU Defendants in the face of evidence to the contrary.

community," and thus  unquestionably "extreme and outrageous."  *Howell,* 81 N.Y.2d at 121.
Moreover, having sufficiently alleged that the NYU Defendants' conduct was intentional

In their motion to dismiss, Defendants try to minimize their conduct by trying to
analogize the conduct at issue here to the alleged conduct in the *Nungesser* case.  *See* Defs.
Mem. at 32.  The *Nungesser* case, however, is irrelevant to this issue because the plaintiff's was
based upon his allegation that Columbia should have done something to stop peer-on-peer
harassment.  Here, Doe alleges that the NYU Defendants themselves carried out the extreme and
outrageous conduct that is the basis for his tort claims and subjected him to severe emotional
distress.

## CONCLUSION

For the foregoing reasons, John Doe respectfully requests that this Court deny
Defendants' motion to dismiss the Amended Complaint in its entirety, or allow Mr. Doe to
replead in the event this Court grants dismissal of any part of the Amended Complaint, and grant
any such other further relief it deems just and proper.

Dated: New York, New York
      September 13, 2019

**BARTON LLP**

By:_____*/s/ James E. Heavey*_____
      James E. Heavey
      Laura-Michelle Horgan
      Michael C. Ward

711 Third Avenue, 14th Floor
New York, New York 10017
(212) 687-6262
jheavey@bartonesq.com
lmhorgan@bartonesq.com
mward@bartonesq.com

*Attorneys for Plaintiff John Doe*