UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -against- ) | No. 19-cv-744 (ALC) |
| ) | |
| NEW YORK UNIVERSITY, CRAIG JOLLEY, ) | **Oral Argument Requested** |
| SAMUEL HODGE, COLLEEN M. MAEDER, ) | |
| MATHEW SHEPARD, MARY SIGNOR, ) | |
| JACQUELINE CORNELL, JASMINE WADE, ) | |
| DAISY TOMASELLI, JEFFREY METZLER, ) | |
| and JOHN DOES 1 through 10, ) | |
| ) | |
| Defendants. ) | |

_____ )

### DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS

HOGAN LOVELLS US LLP
390 Madison Avenue
New York, New York 10017

*Attorneys for Defendants*

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ......................................................................................................... 3

    I.       PLAINTIFF'S TITLE IX CLAIM FAILS AS A MATTER OF LAW. ................. 3

           A.     Doe's Opposition Confirms That He Has Not Pleaded, and Cannot Plausibly Allege, a Selective Enforcement Claim. ..................................... 3

           B.     Doe Has Not Adequately Alleged Discriminatory Intent by NYU. ........... 7

    II.      PLAINTIFF'S STATE LAW CLAIMS DO NOT STATE A CAUSE OF ACTION AGAINST ANY DEFENDANT. .............................................. 11

           A.     Plaintiff Has Not Adequately Pleaded That Any Of The Individual Defendants Engaged In Gender Discrimination. ..................................... 11

           B.     Plaintiff's Other State Law Claims Fail To State A Claim For Relief. .... 13

CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Carovano*,
   851 F.2d 561 (2d Cir. 1988)........................................................................1, 3, 4

*Alphas v. City of N.Y. Bus. Integrity Comm'n*,
   2017 WL 1929544 (S.D.N.Y. May 9, 2017) ..........................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................5, 6

*Atuahene v. City of Hartford*,
   10 F. App'x 33 (2d Cir. 2001) ......................................................................12

*Austin v. Univ. of Oregon*,
   925 F.3d 1133 (9th Cir. 2019) .......................................................................7

*Dasrath v. Stony Brook Univ. Med. Ctr.*,
   965 F. Supp. 2d 261 (E.D.N.Y. 2013) ..............................................................12

*Doe v. Columbia Univ.*,
   101 F. Supp. 3d 356 (S.D.N.Y. 2015)................................................................5

*Doe v. Columbia Univ.*,
   831 F.3d 46 (2d Cir. 2016)................................................................... *passim*

*Doe v. Miami Univ.*,
   882 F.3d 579 (6th Cir. 2018) ........................................................................7

*Doe v. Syracuse Univ.*,
   2019 WL 2021026 (N.D.N.Y. May 8, 2019)........................................................14

*Feliz v. MTA*,
   2018 WL 1721765 (S.D.N.Y. Apr. 6, 2018).........................................................2

*In re Ferrellgas Partners, L.P., Sec. Litig.*,
   2018 WL 2081859 (S.D.N.Y. Mar. 30, 2018) ......................................................15

*Herlihy v. Metro. Museum of Art*,
   214 A.D.2d 250 (1st Dep't 1995) ...................................................................15

*Jacobs v. Tannenbaum Helpern Syracuse & Hirschritt*,
   2017 WL 432803 (S.D.N.Y. Jan. 30, 2017) .........................................................6

*Khanna v. MUFG Union Bank, N.A.*,
   2019 WL 1428435 (S.D.N.Y. Mar. 29, 2019) ......................................................5

*Lin v. N.Y. State Dep't of Labor*,
   2017 WL 435811 (N.D.N.Y. Feb. 1, 2017) ........................................................10

*Littlejohn v. City of N.Y.*,
   795 F.3d 297 (2d Cir. 2015) ............................................................................5, 7

*Main St. Legal Servs., Inc. v. Nat'l Sec. Council*,
   811 F.3d 542 (2d Cir. 2016) ................................................................................6

*Menaker v. Hofstra Univ.*,
   935 F.3d 20 (2d Cir. 2019) ......................................................................... *passim*

*Noakes v. Syracuse Univ.*,
   369 F. Supp. 3d 397 (N.D.N.Y. 2019) ..............................................................14

*Novio v. N.Y. Acad. of Art*,
   286 F. Supp. 3d 566 (S.D.N.Y. 2017) ..............................................................13

*O'Keefe v. Ogilvy & Mather Worldwide, Inc.*,
   590 F. Supp. 2d 500 (S.D.N.Y. 2008) ..............................................................11

*Papelino v. Albany Coll. of Pharm. of Union Univ.*,
   633 F.3d 81 (2d Cir. 2011) ................................................................................14

*Pescatore v. Pan Am. World Airways, Inc.*,
   97 F.3d 1 (2d Cir. 1996) ......................................................................................8

*Prasad v. Cornell Univ.*,
   2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016) ...............................................4, 14

*Soloviev v. Goldstein*,
   104 F. Supp. 3d 232 (E.D.N.Y. 2015) ..............................................................12

*Staub v. Proctor Hosp.*,
   562 U.S. 411 (2011) ..........................................................................................10

*Yusuf v. Vassar Coll.*,
   35 F.3d 709 (2d. Cir. 1994) ...................................................................... *passim*

**Statutes**

42 U.S.C. § 1981 ....................................................................................................3

N.Y. Exec. Law § 296 ..........................................................................................13

Defendants[1] respectfully submit this reply memorandum of law in further support of their motion to dismiss Plaintiff's Amended Complaint with prejudice.

## PRELIMINARY STATEMENT

Plaintiff's Memorandum in Opposition to Defendants' motion to dismiss (the "Opposition" or "Opp.") does nothing to address the fundamental defects in his Amended Complaint. Plaintiff repeats, sometimes word-for-word, the allegations of his Amended Complaint, but he offers no serious legal explanation for how the Court could possibly sustain his unprecedented claim that he has a valid cause of action even though "no sanctions were ultimately imposed" against him by NYU. AC ¶ 155.

Since an "erroneous outcome" theory is not available to him, Doe makes clear that he is relying exclusively on his contention that he has adequately pled a "selective enforcement" claim. But it is well settled that a selective enforcement claim requires, as an essential element, that Plaintiff allege that a similarly situated female was treated more favorably than he was. The Second Circuit, *en banc*, so held in *Albert v. Carovano*, 851 F.2d 561 (2d Cir. 1988); the Circuit in *Yusuf v. Vassar College*, 35 F.3d 709 (2d. Cir. 1994), applied that holding to Title IX cases; and courts in this Circuit and around the country have routinely dismissed Title IX selective enforcement claims that do not adequately allege this essential element. *See* Mem. at 11-14.

This Court is bound by this controlling precedent. Doe's Opposition relies heavily on two cases, *Doe v. Columbia University*, 831 F.3d 46 (2d Cir. 2016) and *Menaker v. Hofstra University*, 935 F.3d 20 (2d Cir. 2019), but neither was a selective enforcement case and neither has anything to say about the elements of a selective enforcement cause of action. Indeed, Plaintiff essentially admits that he cannot allege that any similarly situated female was treated

---

[1] Capitalized terms have the same meanings they have in Defendants' opening memorandum (Dkt. 37) ("Mem."). Defendants also submit herewith the Reply Declaration of Ira M. Feinberg, dated September 27, 2019, and the exhibit thereto ("Feinberg Reply Decl.").

more favorably, Opp. at 20-21, and argues that he needs discovery to find evidence to support such an allegation, *id*. at 21-22.  But that is not how litigation under the Federal Rules works. His conclusory allegation of "selective enforcement" is not enough to state a cause of action. The "courts have made clear that where a 'plaintiff [is] armed with nothing more than conclusions,' the Federal Rules' pleading requirements 'do[ ] not unlock the doors of discovery.'" *Feliz v. MTA*, 2018 WL 1721765, at *2 (S.D.N.Y. Apr. 6, 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).

Doe's Title IX claim is also deficient because he does not plausibly allege another required element of his claim: that NYU had any intent to discriminate against him on the basis of gender.  Plaintiff claims that his allegations "mirror" the allegations in *Menaker* and *Columbia*, Opp. at 15, but that is not remotely true.  Unlike those cases, there were no "clear procedural irregularities" here; in contrast to *Columbia* and *Menaker*, NYU *followed* its procedures, and they ultimately "exonerated" Doe.  Opp. at 18.  And, while the standard set by *Menaker* is low, in this case there was not even "minimal evidence of pressure on the university," *Menaker*, 935 F.3d at 33.  Plaintiff concedes that the Obama Administration's 2011 "Dear Colleague" letter—the leading source of "pressure" in *Columbia*, *Menaker*, and other cases—had been withdrawn, and unlike those cases, Plaintiff does not allege any government investigation of NYU.  Instead, Doe relies solely on a single social media post that he does not allege any Defendant ever saw and a single newspaper article that did not in any way criticize NYU, both of which were published after the vast majority of the allegedly discriminatory conduct and could not possibly have influenced anyone.

Plaintiff's state-law claims also fail as a matter of law.  Accordingly, the Court should dismiss the Amended Complaint with prejudice.

<u>**ARGUMENT**</u>

**I.     PLAINTIFF'S TITLE IX CLAIM FAILS AS A MATTER OF LAW.**

    **A.     Doe's Opposition Confirms That He Has Not Pleaded, and Cannot Plausibly Allege, a Selective Enforcement Claim.**

Doe's Opposition confirms that his sole theory of Title IX liability is selective enforcement. *See* Opp. at 1-3, 15, 19. It also confirms that Plaintiff has nothing to support that claim other than his conclusory assertions of selectively gendered treatment. Indeed, Doe's Opposition is forthright on this point: he argues that his bare "allegation that he was treated less favorably than Roe in an investigation of an alleged sexual assault *simply because he was male* sufficiently states a sex discrimination claim." Opp. at 20. That contention is flat wrong.

Contrary to Doe's claim, the Second Circuit in *Yusuf* unambiguously held that "wholly conclusory allegations" of selective enforcement in a Title IX case do not "suffice for purposes of Rule 12(b)(6)." 35 F.3d at 715. *Yusuf* relied upon the Second Circuit's *en banc* decision in *Albert*, where the court affirmed the district court's order dismissing a conclusory selective enforcement claim in a case under 42 U.S.C. § 1981. The court in *Albert* was exceptionally clear in setting out the elements of a selective enforcement claim: "To support a claim of selective enforcement, appellants must allege purposeful and systematic discrimination by specifying instances in which they were singled out for unlawful oppression in contrast to others *similarly situated*," 851 F.2d at 573 (emphasis in original), and the facts alleged "must be sufficiently similar to support a finding of facial inconsistency," *id.* at 574. And the *en banc* court explained why this threshold requirement was needed, in terms that are equally applicable here: "Otherwise, every conclusory selective-enforcement claim would lead to discovery concerning the entire disciplinary history of a college and then to a confusing, unmanageable and ultimately incoherent retrial of every disciplinary decision, including decisions not to investigate." *Id.*

As a result, courts in this Circuit and around the country have uniformly interpreted *Yusuf* to require dismissal of Title IX selective enforcement claims "in the absence of allegations that a school treated similarly situated members of the opposite sex—that is, members of the opposite sex facing comparable disciplinary charges—differently."  *Prasad v. Cornell Univ.*, 2016 WL 3212079, at *18 (N.D.N.Y. Feb. 24, 2016); *see* Mem. at 11-13.  Doe's Opposition has nothing at all to say about *Yusuf* or its progeny, and readily admits that his Amended Complaint does not make any allegation about any "similarly situated females."  Opp. at 21.  That failure should be the end of the matter here.

Plaintiff's efforts to excuse his failure to meet the requisite pleading standard all miss the mark.  Doe relies heavily on *Menaker* and *Columbia*, Opp. at 13-15, and argues that they provide relevant guidance.  Not on this point.  Neither was a selective enforcement case; to the contrary, both cases make clear that they were focused on the pleading standard for one particular element of a Title VII or Title IX discrimination claim—the element of discriminatory intent—and not any other element of a Title IX claim.  *See Columbia*, 831 F.3d at 56 ("[A Title IX] complaint . . . is sufficient *with respect to the element of discriminatory intent*, like a complaint under Title VII, if it pleads specific facts that support a minimal plausible inference of such discrimination") (emphasis added); *see also id.* ("Plaintiff's Complaint pleads sufficient specific facts giving at least the necessary minimal support to a plausible inference of sex discrimination to survive a Rule 12(b)(6) motion to dismiss, *if Title IX's other requirements are met*.") (emphasis added); *Menaker*, 935 F.3d at 30-31 ("[T]here is no dispute that Menaker's Amended Complaint satisfies the first three elements of a *prima facie* [Title VII] case," and thus "the only remaining question is whether the complaint [supports] an inference of discriminatory intent.").  Unlike those cases, however, here there *is* a serious question whether "Title IX's other requirements are met"—the

requirement that Plaintiff allege some cognizable selective enforcement, *see* Mem. at 11-14—and neither *Columbia* nor *Menaker* helps Doe on this crucial issue.[2]

Doe's related contention—that it was somehow "misleading" and "improper" for Defendants to rely on *Iqbal*, as opposed to the Supreme Court's *McDonnell Douglas* decision (Opp. at 14)—likewise results from a complete misunderstanding of the law.  *Iqbal* and *Twombly* provide the governing "pleading standard 'in all civil actions.'"  556 U.S. at 684 (quoting Fed. R. Civ. P. 1)).  The "*McDonnell Douglas* temporary presumption" (Opp. at 13), as applied by the Second Circuit at the pleading stage, relates only to the element of discriminatory intent; the other elements of a discrimination claim must still satisfy the usual standards.  *See Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015) (in Title VII cases, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent"); *see also Khanna v. MUFG Union Bank, N.A.*, 2019 WL 1428435, at *4 (S.D.N.Y. Mar. 29, 2019) (Carter, J.) (in discrimination case, noting that "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements") (quoting *Iqbal*, 556 U.S. at 663)).  The Second Circuit did not (and could not) hold that *Iqbal* does not apply generally in Title IX cases.

---

[2]     The district court in *Columbia* found that Plaintiff had failed to plead either selective enforcement or discriminatory intent.  *Doe v. Columbia Univ.*, 101 F. Supp. 3d 356, 374-75 (S.D.N.Y. 2015) ("[T]he Complaint not only fails to establish gender as a plausible motivating factor behind the investigation and ultimate punishment, but it also fails to include any allegations that female students were treated more favorably in similar circumstances.") (internal quotations omitted).  On appeal, the Second Circuit addressed *only* the element of intent, and left the district court's selective enforcement analysis undisturbed.  *See Columbia*, 831 F.3d at 59.

Doe also claims that it would be unfair to dismiss his selective enforcement claim before discovery because NYU's student disciplinary proceedings are confidential, and so he could not possibly know anything about how NYU has treated any female students.  *See* Opp. at 20-22. This complaint rings hollow as a matter of fact and law.  Doe *does* know about at least two other student disciplinary outcomes, via the social media post he uses to support his public pressure allegations, *see id*. at 7,[3] so it is plainly not "impossibl[e]" to gather such information, as he claims, *id*. at 21.  Indeed, "common sense," *Iqbal*, 556 U.S. at 679, teaches that students talk to one another, and word spreads quickly around campus, through social media and other means.  If there really were anything to the notion that females at NYU accused of sexual misconduct were treated any differently than males, Doe would know it and could allege it.[4]

Moreover, as a matter of law, "[a] plaintiff who has failed adequately to state a claim is not entitled to discovery."  *Main St. Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 567 (2d Cir. 2016); *see also Jacobs v. Tannenbaum Helpern Syracuse & Hirschritt*, 2017 WL 432803, at *3 n.2 (S.D.N.Y. Jan. 30, 2017) (rejecting plaintiff's contention that all the evidence of discrimination lay within defendant's control, because the "argument misconstrues the procedural posture of the case").  A Title IX selective enforcement claim is no different.  *See* Mem. at 13.  The bottom line is that Plaintiff has offered *nothing* in support of his selective enforcement theory other than his bare conclusory allegation, and that is simply insufficient to state a cause of action.  *See Yusuf*, 35 F.3d at 715-16.

---

[3]     A copy of the cited social media post was filed under seal by Doe in support of his application for a temporary restraining order and preliminary injunction.  *See* Dkt. 1.

[4]     *Cf.* Zoe Greenberg, "What Happens to #MeToo When a Feminist Is the Accused?," *N.Y. Times*, Aug. 13, 2018, https://www.nytimes.com/2018/08/13/nyregion/sexual-harassment-nyu-female-professor.html (Answer: the female professor was found responsible by NYU after an 11-month Title IX investigation, and suspended).

**B.      Doe Has Not Adequately Alleged Discriminatory Intent by NYU.**

Plaintiff has also failed to allege "particular circumstances suggesting that gender bias was a motivating factor" in any actions taken by NYU, *Yusuf*, 35 F.3d at 715, as *Columbia* and *Menaker* have interpreted that requirement.  *Menaker* reasoned that "when combined with clear procedural irregularities in a university's response to allegations of sexual misconduct, even minimal evidence of pressure on the university to act based on invidious stereotypes will permit a plausible inference of sex discrimination."  *Menaker*, 935 F.3d at 33.  But Doe has not adequately alleged either "clear procedural irregularities" or "minimal evidence of pressure."[5]

**Procedural irregularities**.  *Menaker* took pains to "emphasize that [the] standard requires *clear* irregularities to raise an inference of bias," because "[v]ariations among employers, even among universities, are expected, and minimal irregularities (absent other indicia of bias) do not suffice to suggest discrimination."  *Id.* at 34, n.50.  Viewed in that light, Plaintiff's allegations are insufficient.  *See* Mem. at 20.  For example, Doe points to his claim that NYU's investigators "refused to interview witnesses that could have (and did have) exculpatory evidence."  Opp. at 16.  But that allegation does not create an inference of bias here, for numerous reasons:  (1) NYU's Procedures gave the investigators discretion as to who to interview, *see* Mem. at 29; (2) the investigators similarly declined to interview witnesses that *Roe* asked to be interviewed, *see* AC ¶ 82; and (3) NYU ultimately determined that Doe's proposed witnesses indeed ought to be interviewed, the investigators did so, and the witnesses'

---

[5]      As Doe notes, other circuits have declined to follow the Second Circuit in importing the *McDonnell-Douglas* temporary presumption of discriminatory intent into the pleading standard. *See* Opp. at 19, n. 3; *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1137 (9th Cir. 2019) (*Littlejohn*'s approach "contrary to Supreme Court precedent"); *Doe v. Miami Univ.*, 882 F.3d 579, 589 (6th Cir. 2018) ("[T]o the extent that the decision reduces the pleading standard in Title IX claims, it is contrary to our binding precedent.").  While the Court obviously must follow circuit precedent, Defendants respectfully submit that *Columbia*, *Menaker*, and *Littlejohn* were wrongly decided on this point, and respectfully preserve that position in the event of an appeal.

statements were relied upon in finding Doe not responsible.  *See* Mem. at 22.  This is a vastly different landscape than *Menaker* or any prior Title IX case, and these alleged facts create no reasonable inference of gender-based bias.[6]

Doe also continues to claim, parroting the language of *Columbia*, that NYU "chose to accept the female student's unsupported accusatory version of Doe's sexual encounter with Roe over his account."  Opp. at 16.  But Plaintiff's complaint and the documents incorporated by reference[7] demonstrate that Roe's claims of incapacity were hardly "unsupported."  To the contrary, her claim was buttressed by video evidence and by a friend's testimony that she had "never seen [Roe] like that."  Jolley Op. at 4.  Jolley's decision to consider this evidence at a hearing, along with live statements from Roe, Doe and a witness supporting Doe, was no procedural error, much less a clear one.  And if Doe's real complaint is that Jolley's decision was substantively wrong, it cannot be the case that each close call resolved against a male accused— or every first-instance decision reversed on appeal—creates an inference of gender bias.  *Cf. Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 21 (2d Cir. 1996) (rejecting request by successful appellant to re-assign the case to a new judge because "[t]he district court's reference to the verdict of wilful [sic] misconduct was in error, but does not show bias.").[8]

---

[6]      Doe repeatedly claims that NYU found him to be "guilty" on multiple occasions.  *See*, *e.g.*, Opp. at 16.  Plaintiff is apparently referring to the conclusions of NYU investigators that sufficient evidence existed to require a hearing, but requiring a hearing is not equivalent to a finding of guilt.  *See* Mem. at 4-5.  Doe also persists in pretending that the sole issue to be resolved in the February 2019 hearing was incapacitation, *see* Opp. at 11, 25, but Roe at all times also "alleged that she told [Doe] 'no' twice but that he proceeded to engage in sexual intercourse with her."  *See* Jolley Op. at 4.  Thus, the potential withdrawal of affirmative consent was always an issue in this case and had to be resolved by Justice Greenspan.  *See* Greenspan Op. at 4-6.

[7]      Doe does not dispute that NYU's investigative reports and written decisions are incorporated into the Amended Complaint by reference, and properly considered here.  *See* Mem. at 3, n.2.

[8]      Doe's Opposition again argues that Jolley's written decision shows bias, Opp. at 16-17, but wholly ignores Defendants' showing that the challenged statements were made *after* Jolley

Further, unlike *Columbia* and *Menaker*, Doe's complaint includes no plausible allegations that NYU failed to follow its Procedures. *Compare Columbia*, 831 F.3d at 57; *Menaker*, 935 F.3d at 34 (Hofstra allegedly "completely disregarded the process provided for in its written 'Harassment Policy.'"). Doe listed more than a dozen alleged procedural defects in his Amended Complaint, but Defendants' opening Memorandum carefully demonstrated that none was in fact a violation of NYU's written Procedures. *See* Mem. at 27-31. In his Opposition, Doe tries to resuscitate only two of those allegations, *see* Opp. at 29-30, but what he says about both is plainly wrong. For example, Doe again asserts that NYU supposedly violated Section IV(A)(3) of its Procedures, which requires that, before a hearing, a respondent be given written notice of the charges against her or him. Opp. at 29-30; *see also* Procedures § IV(A)(4) (allowing access to documents pre-hearing). But Plaintiff conflates the question of whether NYU provided Doe with written notice of the charges against him before *his interviews* in March and April 2018 with the separate question of whether NYU provided him with notice before *the disciplinary hearing* in August 2018. Plaintiff alleges only the former (*compare* AC ¶ 81 *with* AC ¶¶ 101-09)—but NYU's Procedures contain no pre-*interview* notice requirement. Rather, they require pre-*hearing* notice, *see* Mem. at 28-29, and there is no allegation that NYU failed to provide that notice. Plaintiff's other allegations of supposed breaches are just as illusory, *see infra* at 13-14, and do not approach the level of "clear" procedural flaws.[9]

More fundamentally, Plaintiff fails to explain how allegedly biased procedural decisions by investigators or Jolley *that were ultimately cured by NYU* (*see* Mem. at 22) could ever result

---

found Doe responsible, and were made in the context of considering a plainly permissible factor, lack of remorse, for purposes of determining the appropriate sanction. *See* Mem. at 18-19.

[9]   Doe's newly-minted claim that he received no notice in advance of the August 2018 hearing that incapacitation would be an issue (Opp. at 30) is not alleged in the Amended Complaint, and in any event is completely contradicted by the investigative reports he reviewed and commented on at the time. *See* AC ¶ 87; Feinberg Decl., Ex. C, at 2-5; *id.*, Ex. D, at 2-4.

in a finding of imputed bias against NYU.  Doe offers no reason why the "same actor" principle (*see* Mem. at 22 n.10) does not undermine any inference of bias here.  And it is black-letter law that the discriminatory intent of lower-level employees may only be imputed to employers where the animus actually affects the ultimate result.  *See Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011); *Lin v. N.Y. State Dep't of Labor*, 2017 WL 435811, at \*9 & n.1 (N.D.N.Y. Feb. 1, 2017) (employer not liable for adverse action, even after receiving biased input, where employer exclusively bases decision "on an independent evaluation"), *aff'd sub nom. Hua Lin v. N.Y. State Dep't of Labor*, 720 F. App'x 89 (2d Cir. 2018).  Plaintiff has not identified any discriminatory animus by anyone at NYU, but even if he had, he has also alleged that the supposedly biased decisions were ultimately reversed.

**Public pressure.**  Plaintiff's claim that his allegations of public pressure exceed those in *Columbia* (Opp. at 18) is absurd.  Doe concedes that the primary source of public pressure in *Menaker*, *Columbia*, and numerous other cases—the 2011 "Dear Colleague" letter—had already been withdrawn by the times at issue here (Mem. at 24 n.13), removing that putative source of pressure.  Nor does Doe defend his vacuous claim of pressure on NYU arising from the #MeToo movement (*id*. at 24-25), identify any "Department of Education investigation" of NYU, *Menaker*, 935 F.3d at 34, or allege any criticism from campus groups, student newspapers, or campus protests, *see Columbia*, 831 F.3d at 51.  In fact, Doe makes only two factual allegations of "pressure," and neither provides the slightest evidence of pressure on NYU to discriminate against males.

*First*, Doe points to a *New York Post* article that quotes an NYU representative as indicating that NYU students are comfortable coming forward to report sexual assaults.  Opp. at 8; *see* Feinberg Reply Decl., Ex. A.  Doe does not explain how that article—which indicates that

NYU's process is working—could reasonably have put any pressure on NYU to act differently. *See* Mem. at 24. And Plaintiff makes no attempt to explain how the timing of the article's publication—*after* the allegedly biased investigation and decision by Jolley—could possibly have "pressured" NYU with regard to those decisions. *Id*.

    *Second*, Doe points to a single August 2018 social media exchange, published a week before his first disciplinary hearing, that purportedly criticized NYU's handling of another sexual assault proceeding. Opp. at 7. But those social media posts were published after NYU's initial investigation and could not have influenced it. *See* Mem. at 24. Moreover, Doe does not allege that any Defendant ever saw these posts, and the limited extent of their alleged distribution—"to at least 1,000 people," AC ¶ 135—creates no reasonable basis from which to infer that this isolated social media post even reached anyone at NYU, much less that it created any pressure on NYU to act.[10] Thus, even if *Menaker*'s low bar for public pressure allegations applied here (and it does not, absent "clear" procedural errors), Plaintiff still has not cleared it.

## II.    PLAINTIFF'S STATE LAW CLAIMS DO NOT STATE A CAUSE OF ACTION AGAINST ANY DEFENDANT.

### A.    Plaintiff Has Not Adequately Pleaded That Any Of The Individual Defendants Engaged In Gender Discrimination.

    Doe again attempts to lump all defendants together as having "participated in the discriminatory conduct," Opp. at 24, but he has failed to put forward sufficient allegations

---

[10]    Plaintiff argues that, because *Menaker* held that "no particular quantum of criticism" is required, it is enough for him to point to a single, obscure social media post. Opp. at 18. Apparently Doe thinks that Defendants should be charged with knowledge of everything on social media involving NYU, but that is a patently unreasonable proposition. *Cf. O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 515 (S.D.N.Y. 2008) ("[T]he mere fact that [plaintiff's] work was posted on the internet prior to the creation of defendants' work is insufficient by itself to demonstrate wide dissemination."). For example (of which the Court can take judicial notice, if necessary), as of this writing, the hashtag #nyu generates *646,000 hits* on Instagram. To contend that NYU is charged with knowledge of everything said in those posts is preposterous; to contend that NYU would be "pressured" to act by everything published on social media, even more so.

against any Defendant.   Mem. at 33-35.   While individuals can be held liable under the NYSHRL, Opp. at 24, Plaintiff has still failed to allege any facts, beyond mere conclusory allegations, that each defendant's conduct was in fact discriminatory.   *See Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 249 (E.D.N.Y. 2015).   With respect to the OEO investigators, Doe's Opposition merely states that they "conduct[ed] a wholly biased investigation," Opp. at 24-25, but fails to allege facts showing that any aspect of the investigation was infected with gender bias, s*ee supra* at 7-9, and provides no allegations as to the role that each investigator allegedly played in the alleged discriminatory activity.   Doe has not offered any "factual basis to distinguish the[ ] conduct" of each of the OEO investigators, as required to state a claim. *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001).

Similarly, Doe groups together Defendants Jolley, Shepard, Signor and Maeder, and repeats his unsupported claim that each "actually participated in the discriminatory conduct." Opp. at 25.   But Maeder is alleged merely to have attended both of Doe's sexual misconduct hearings, and Shepard to have attended *one*.   Mem. at 34.   This does not sufficiently plead discrimination.   *See, e.g.*, *Dasrath v. Stony Brook Univ. Med. Ctr.*, 965 F. Supp. 2d 261, 275 (E.D.N.Y. 2013) (dismissing NYSHRL claim where complaint failed to specify the "conduct by the individual defendant that allegedly constituted aiding and abetting" the NYSHRL violation). Defendants do not merely "dispute each of these individuals' level of participation in the discriminatory conduct," as Doe suggests, Opp. at 26, but instead submit that Doe has failed to allege that the individual Defendants "actually participated" in *any* discriminatory conduct.

This includes Plaintiff's baseless allegations against Metzler, the in-house counsel at NYU.   Doe makes the conclusory, unsupported assertion that Metzler was "directly responsible" for conducting an allegedly-biased hearing, *id.* at 25-26, but provides no specific allegations that

Metzler participated in any discriminatory activity.  Doe also offers no support for his claim (*id.* at 27) that the Court should disregard settled New York law that a lawyer cannot be held liable for advising a client that allegedly engaged in discriminatory conduct. *See* Mem. at 34-35.  Doe argues that Metzler can be held liable under the NYSHRL "whether [he] was acting in his legal capacity or not," but the Amended Complaint clearly alleges that Metzler was acting in a legal capacity with respect to Plaintiff's hearing.  AC ¶¶ 105, 112.  Plaintiff has not alleged any statements made by Metzler that generate any inference of discrimination, nor has he made any plausible allegation that Metzler acted outside the scope of his duties as an in-house lawyer. *See* Mem. at 34-35.  The claims against Metzler fail as a matter of law.[11]

### B.    Plaintiff's Other State Law Claims Fail To State A Claim For Relief.

As to Doe's breach of contract and tort claims, Doe's Opposition merely rehashes the insufficient allegations in the Amended Complaint and fails to engage with the governing law.

**Breach of Contract.**  Plaintiff maintains that he has offered "highly specified allegations of specific sections of NYU's Policy and Procedures that were breached," Opp. at 28, but merely reciting sections of a policy does not allege a breach.  As discussed above, *supra* at 9, Plaintiff's conflation of *pre-hearing* notice and *pre-interview* notice is improper and fails to allege a breach of NYU's policy requiring pre-hearing notice.  The only other "specific section" of NYU's Procedures that Doe addresses is Section III(A), which Doe alleges imposes a requirement that any investigation be "prompt, thorough, and impartial." *Id.* at 29.  But this is precisely the type of broad, indeterminate promise that cannot serve as the basis for a breach of contract claim. *See, e.g.*, *Doe v. Syracuse Univ.*, 2019 WL 2021026, at *11 (N.D.N.Y. May 8, 2019) (holding

---

[11]    Plaintiff's NYSHRL claims are analyzed under the same standard as Title IX claims. *See* Mem. at 26. Accordingly, Doe's NYSHRL claim against NYU under N.Y. Exec. Law § 296(4) fails for the reasons discussed above.  And if the claim against NYU is dismissed, Doe's claims against the individual Defendants under N.Y. Exec. Law § 296(6) for aiding and abetting cannot be maintained. *See Novio v. N.Y. Acad. of Art*, 286 F. Supp. 3d 566, 581 (S.D.N.Y. 2017).

that the "failure to conduct a 'full and fair investigation'" was the type of "general statement[ ] of policy" which "New York law dictates cannot for the basis of a viable contract claim"); *Noakes v. Syracuse Univ.*, 369 F. Supp. 3d 397, 419-20 (N.D.N.Y. 2019) (same).

Doe also relies on *Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81, 93-94 (2d Cir. 2011). But in *Papelino*, the court upheld the plaintiff's breach of contract claim because the university had *completely failed* to investigate *his* claim of sexual assault. 633 F.3d at 93-94. In contrast, Doe makes no claim that he was the victim of a sexual offense or that NYU failed to investigate his claim. Doe argues that "NYU failed to investigate [his] *denial* of sexual misconduct," Opp. at 27-28, but (a) *Papelino* is irrelevant to this argument and (b) this claim is utterly inconsistent with Doe's complaint and the incorporated documents, which demonstrate that NYU investigated Roe's claims and Doe's defenses, and generated the evidence that ultimately "exonerated" Plaintiff, *see, e.g.*, AC ¶¶ 97, 127, 152.

**Negligent and Intentional Infliction of Emotional Distress.** Defendants identified two core failings with Doe's tort claims: (1) any duty owed to Plaintiff by Defendants is premised on his contractual relationship with NYU; and (2) Doe's tort claims are premised on Defendants' alleged investigatory malpractice, a tort that does not exist under New York law. Mem. at 32-33. Doe's Opposition misunderstands the former objection and ignores the latter. Doe claims that he is entitled to plead in the alternative, but that is irrelevant—New York law is clear that in order to state a tort claim, he must still identify an independent legal duty owed to him *"separate from that arising from the alleged contract."* *Prasad*, 2016 WL 3212079, at *23; Mem. at 32. The Amended Complaint alleges only that "[t]he NYU Defendants owed . . . Doe a duty of care as a student of NYU," a relationship that Doe himself defines as "contractual." AC ¶¶ 213, 220; *see also* AC ¶ 204. And to the extent that Plaintiff's tort claims are premised on Defendants' alleged

negligence in conducting its investigation into Roe's allegations, *see* Opp. at 32, his claim is foreclosed by decades of New York precedent.  *See* Mem. at 32.

Finally, Doe's protestations that the conduct he has alleged is "unquestionably extreme and outrageous" is inconsistent with settled case law.  *See id.* at 32-33.[12]

## CONCLUSION

Doe requests that the Court grant him an opportunity to replead in the event the Court dismisses any part of the Amended Complaint.  Opp. at 33.  This request is improper, and should be denied.[13]  For the reasons stated above and in their Memorandum, Defendants respectfully request that the Court dismiss this case with prejudice.

Dated: September 27, 2019
    New York, New York

---

[12]    Doe argues that Roe allegedly called him a "rapist" during the proceedings, Opp. at 32, but this allegation is not sufficiently extreme and outrageous as a matter of law, *see Herlihy v. Metro. Museum of Art*, 214 A.D.2d 250, 262-63 (1st Dep't 1995), and does not describe any tort *by Defendants*.  None of the NYU investigative reports or decisions use that term or anything like it.

[13]    Doe was warned by the Court that he would not have a further opportunity to amend his complaint at the pre-motion conference, Dkt. 34 at 5, and represented that he would not be doing so in the parties' Joint Status Report, filed two weeks later, Dkt. 32 at 2.  Plaintiff has not proffered any proposed amendments, identified how they would cure any deficiencies, or explained how his late-breaking request is remotely proper.  *See Alphas v. City of N.Y. Bus. Integrity Comm'n*, 2017 WL 1929544, at *4 (S.D.N.Y. May 9, 2017) (Carter, J.) ("[D]ismissal is especially appropriate here where Plaintiff has declined to cure pleading deficiencies following pre-motion letters of conference where those pleading deficiencies are set forth."); *In re Ferrellgas Partners, L.P., Sec. Litig.*, 2018 WL 2081859, at *20 (S.D.N.Y. Mar. 30, 2018) ("[T]he Second Circuit has consistently stated that district courts may deny leave to amend when plaintiffs request such leave in a cursory sentence on the last page of an opposition to a motion to dismiss, without any justification or an accompanying suggested amended pleading."), *aff'd*, 764 F. App'x 127 (2d Cir. 2019).

/s/ Ira M. Feinberg

Ira M. Feinberg
Benjamin A. Fleming
Andrew M. Harris
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, New York 10017
Telephone: (212) 918-3000
Fax: (212) 918-3100
ira.feinberg@hoganlovells.com
benjamin.fleming@hoganlovells.com
andrew.harris@hoganlovells.com

*Attorneys for Defendants*